CIRCUIT COURT OF SHELBY COUNTY, TN FILING

1

ELECTRONICALLY FILED
2014 May 20 PM 5:01
CLERK OF COURT - CIRCUIT

### IN THE CIRCUIT COURT OF SHELBY COUNTY, TENNESSEE
### FOR THE THIRTIETH JUDICIAL DISTRICT AT MEMPHIS

**JAYME BOYLE,**

     **Plaintiff,**

**v.**                         **Case No:**_____
                                   **JURY DEMANDED**

**EVOLVE BANK & TRUST, and**
**EVOLVE FINANCIAL GROUP, INC.,**

     **Defendants.**

### COMPLAINT

This is an action for breach of contract, for intentional infliction of emotional distress, and for retaliatory and/or wrongful discharge, including violation of T.C.A. § 50-1-304, the Tennessee Public Protection Act.

### I. **PARTIES**

1.     Plaintiff, Jayme Boyle, is an adult resident citizen of Shelby County, Tennessee.

2.     Defendant Evolve Bank & Trust is a foreign corporation organized in the State of Arkansas and may be reached with service of process by serving its registered agent Corporation Service Company, 2908 Poston Avenue, Nashville, TN 37203-1312.

Defendant Evolve Financial Group, Inc. is a foreign corporation organized in the State of Delaware, doing business in the State of Tennessee and may be reached with service of process by serving its registered agent Corporation Service Company,

2908 Poston Avenue, Nashville, TN 37203-1312.

## II. **FACTS**

3.      Jayme Boyle (hereinafter "Boyle") was hired in August 2005 to handle alternative broker business, managed by Evolve Mortgage Services, a corporation owned by Evolve Financial Group, Inc. Evolve Mortgage Services later became a part of Evolve Bank & Trust, which is wholly owned by Evolve Financial Group, Inc. He served in that capacity until March 18, 2008, when he resigned to take a job elsewhere. Boyle had worked in the mortgage business since 2000. Boyle was initially given a contract which has since been replaced from time to time by other contracts. Boyle is not in possession of any of said contracts. However, Boyle entered into said employment relationship in good faith, and understood that Evolve had an implied duty of good faith and fair dealing. As stated below, Evolve by and through its manages and officers has breached its contractual relationship with Boyle.

4.      In April 2009, Boyle was contacted by Jeff Kuehn and Jim Martin, who recruited Boyle to return to Evolve to serve as a loan originator. Boyle considered this to be a great business opportunity, with potential for significant growth and earnings capacity.

5.      Boyle accepted the offer, and began work on or about April 15, 2009. He was to work on straight commission, with a guarantee of $5,000.00 per month for the first three months.

6.      By early 2010, Boyle was the loan compliance manager for all Evolve branches (about 14 or 15 at that time). He trained and "on-boarded" branches to

2

become Evolve entities. He was put on salary of $48,000.00 plus bonuses based upon his production. He was being paid off the bottom line.

7.      Boyle soon learned the commissions, overages and bonuses at Evolve Bank were being withheld, awarded and/or manipulated contrary to law. Boyle did not like the situation.

8.      Tommy Taylor, CEO of the Evolve Mortgage Division, a division of Evolve Bank, decided upon a plan to manipulate the commissions, overages and bonuses such as to hide the illegal payments, to deprive their employees of money being earned on overages charged to customers, and to hide the money trail on a per transaction basis.

9.      Boyle informed Brent Bousson (head of HR) and Jason Brown (in-house legal counsel for Evolve Financial) that they needed to straighten out how commissions, overages and bonuses were being paid, that this situation was illegal. They took no action at that time to correct the situation. Then upper management, believed to include Tommy Taylor, Jason Brown, Scott Stafford, Scott Lenoir and John Chandler, changed how overages were to be paid, by taking the previous quarter's overages and paying them over a three-month period as salary. Said plan again was in violation of Fair Lending laws, and the Dodd-Frank Act, which amended (Reg. "Z").

10.      Boyle again complained, this time to Jeff Kuehn, President of Evolve Mortgage. Kuehn did nothing. Neither did Evolve Mortgage, Evolve Financial, Evolve Bank & Trust or Evolve Financial Group, Inc.

11.      During the course of the last 12 months of his employment at Evolve,

3

Boyle learned that Evolve was requiring branch managers to make personal contributions of capital into Evolve's reserve account in violation of Housing and Urban Development law. Boyle was not such a manager. But he became well aware that Evolve was intentionally finding ways to thwart legal requirements, and to place the economic burdens of the mortgage business on its employees.

12.   By the end of January 2013, Boyle was demoted to a loan officer position. He was "invited" to stay with the company. But when Boyle got back to his office, his access to his computer had already been cut off. Boyle accepted the demotion, in part because he had family issues and personal problems.

13.   Said demotion was retaliatory, because Boyle had complained to his supervisors about illegal activities. Boyle had made it clear to Evolve that he would not remain silent about illegal activities.

14.   The very next week Boyle was told he had to testify at a deposition on behalf of Evolve regarding a lawsuit pending in the State of Colorado. He was "prepped" by Evolve attorneys on how to give a deposition.

15.   Boyle gave his deposition and answered truthfully.

16.   Thereafter he worked as a loan officer under the supervision of Chad Irwin, the branch manager. Boyle had recruited Irwin, and had trained Irwin in Evolve business practices. Reporting to Irwin was difficult, and embarrassing to Boyle.

17.   From the time that Boyle complained initially to Kuehn and later to Bousson and Brown, and later to Kuehn. He was working in a hostile work environment. The demotion was demeaning and embarrassing. As an example, he

4

was encountered by Kuehn, Bousson and Taylor on October 3, 2013, and asked why he did not just work as a loan originator – they tried to talk Boyle out of being a manager.

18.    Throughout the fall of 2013 until his demotion in late January, 2014, Boyle was required to discipline employees, including to terminate them.  Boyle was doing so at the express direction of Taylor.  Boyle complained to Taylor and Bousson about the lack of clear objective guidelines, such as when performance/loan volume had shrunk to a certain level for an employee.  Instead, persons were being fired based on the subjective decisions of Taylor.

19.    Taylor (CEO of Evolve Mortgage Division) was not allowed by law to originate loans.  But he would attribute loans to originators, then would receive partial commissions in the form of bonuses.  This practice was illegal under Dodd-Frank.  Taylor knew better.  It was no secret at Evolve that Taylor was originating loans and being paid as a result.

20.    Evolve had Boyle originate some Twenty Million Dollars in loans, but Boyle was paid only a partial commission on these loans.  On sum he received nothing.  The monies which should have been paid to Boyle were given to the branches.  At the time the branches were not yet able legally to originate loans.  This practice was developed by Taylor, who well knew that only was supposed to be paid not less than 1% of all loans on which he served as originator.

21.    By the time of Boyle's demotion, other employees avoided any contact with him.  It was like he had a target on his back.

20.    At the same time Taylor started promising Boyle that he was going to

5

make him manager, but needed Boyle's help to get rid of Jeff Kuehn. Boyle knew he was being manipulated, but did not yet understand why.

22.    Throughout the winter and spring of 2012-2013, Boyle was feeling increasingly threatened. He understood that Evolve could and would blemish his reputation, which would make it difficult for him to get a good job in the mortgage industry.

23.    The actions taken by Taylor, Bousson, Stafford, Lenoir, Brown, Chandler and others were continuing over a long period of time. Their actions were intentional and malicious, sufficient to cause a reasonable person to explain outrage.

24.    Pressure was building for Boyle. In May 2013, he learned that Evolve's attorney in the Colorado case had deposed Virginia Green, and that a lot of the questions were about Jayme Boyle.

25.    Based on what he had been going through at work on a daily basis, based upon his knowledge of the mortgage industry, and based upon his growing knowledge of Evolve's shady business practices, Boyle decided to resign. His resignation was not voluntary. He could take no more. He resigned by email, sent to Evolve on May 21, 2013 at 1:00 a.m.

26.    Boyle has sustained significant wage losses due to said constructive discharge, including loss of commissions, loss of stock options, salary, benefits and overtime. He has incurred pain and suffering emotional pain and suffering and other injuries to his reputation.

27.    The acts and omissions of Evolve's principals and agents have been

6

malicious, and intentional.  Hence an award of punitive damages is merited.

### III.  CAUSES OF ACTION

28.    Plaintiff incorporates paragraphs 1 through 27 as if set forth fully herein.

29.    Based on the foregoing, Plaintiff states a claim for:

(a)    Breach of employment contract;

(b)    Intentional infliction of emotional distress; and

(c)    Retaliatory or wrongful discharge, in violation of T.C.A. § 50-1-304, which prohibits discharge or termination solely for refusing to participate in, or for refusing to remain silent about, illegal activities.

### IV.  PRAYER FOR RELIEF

Plaintiff hereby demands relief as follows:

1.    Issue process as prayed for.

2.    Judgment for compensatory damages, including loss of wages, commissions, and other monetary damages and for physical and emotional pain and suffering post, present and future in the sum of $2.5 Million Dollars.

3.    Punitive damages in the sum of $2.5 Million Dollars.

4.    Jury demanded.

5.    Other relief as may be deemed appropriate.

7

Respectfully submitted,

KATHLEEN CALDWELL, PLLC

By: _____

Kathleen L. Caldwell, #9916
2670 Union Avenue Ext., Suite 110
Memphis, TN 38112
Telephone:  (901) 458-4035
Facsimile:   (901) 458-4037

CIRCUIT COURT OF SHELBY COUNTY, TN FILING

2

ELECTRONICALLY FILED
2014 May 20 PM 5:01
CLERK OF COURT - CIRCUIT

**(CIRCUIT/CHANCERY) COURT OF TENNESSEE**
**140 ADAMS AVENUE, MEMPHIS, TENNESSEE 38103**
**FOR THE THIRTIETH JUDICIAL DISTRICT AT MEMPHIS**

## SUMMONS IN CIVIL ACTION

Docket No. _____

☑ Lawsuit
◯ Divorce

Ad Damnum $ _____

| JAYME BOYLE | | EVOLVE BANK & TRUST and EVOLVE FINANCIAL GROUP, INC. |
|---|---|---|
| | VS | |
| Plaintiff(s) | | Defendant(s) |

**TO: (Name and Address of Defendant (One defendant per summons))**

EVOLVE BANK & TRUST
By Serving Its Registered Agent:
Corporation Service Company
2908 Poston Avenue
Nashville, TN 37203-1312

**Method of Service:**

☑ Certified Mail
◯ Shelby County Sheriff
◯ Commissioner of Insurance ($)
◯ Secretary of State ($)
◯ Other TN County Sheriff ($)
◯ Private Process Server
◯ Other

($) Attach Required Fees

You are hereby summoned and required to defend a civil action by filing your answer with the Clerk of the Court and serving a copy of your answer to the Complaint on  Kathleen L. Caldwell                                          Plaintiff's attorney, whose address is  2670 Union Avenue Ext., Suite 110, Memphis, TN 38112          , telephone          9014584035 within THIRTY (30) DAYS after this summons has been served upon you, not including the day of service. If you fail to do so, a judgment by default may be taken against you for the relief demanded in the Complaint.

TESTED AND ISSUED  _____   By _____, D.C.

### TO THE DEFENDANT:

NOTICE; Pursuant to Chapter 919 of the Public Acts of 1980, you are hereby given the following notice:
Tennessee law provides a four thousand dollar ($4,000) personal property exemption from execution or seizure to satisfy a judgment. If a judgment should be entered against you in this action and you wish to claim property as exempt, you must file a written list, under oath, of the items you wish to claim as exempt with the Clerk of the Court. The list may be filed at any time and may be changed by you thereafter as necessary; however, unless it is filed before the judgment becomes final, it will not be effective as to any execution or garnishment issued prior to the filing of the list. Certain items are automatically exempt by law and do not need to be listed. These include items of necessary wearing apparel (clothing) for yourself and your family and trunks or other receptacles necessary to contain such apparel, family portraits, the family Bible and school books. Should any of these items be seized, you would have the right to recover them. If you do not understand your exemption right or how to exercise it, you may wish to seek the counsel of a lawyer.

FOR AMERICANS WITH DISABILITIES ACT (ADA) ASSISTANCE ONLY, CALL (901) 222-2341

I, JIMMY MOORE / DONNA RUSSELL , Clerk of the Court,
Shelby County, Tennessee, certify this to be a true and
accurate copy as filed this

_____

JIMMY MOORE , Clerk / DONNA RUSSELL, Clerk and Master

By: _____, D.C.

### RETURN OF SERVICE OF SUMMONS

I HEREBY CERTIFY THAT I **HAVE** SERVED THE WITHIN SUMMONS:

By delivering on the _____ day of _____, 20_____ at _____ M. a copy of the summons

and a copy of the Complaint to the following Defendant _____

at _____

_____          By: _____
Signature of person accepting service                                         Sheriff or other authorized person to serve process

### RETURN OF NON-SERVICE OF SUMMONS

I HEREBY CERTIFY THAT I **HAVE NOT** SERVED THE WITHIN SUMMONS:

To the named Defendant _____

because _____ is (are) not to be found in this County after diligent search and inquiry for the following

reason(s): _____

This _____ day of _____, 20_____.

                                                                    By: _____
                                                                          Sheriff or other authorized person to serve process



**The Shelby County, Tennessee Circuit Court**

**Case Style:**          JAYME BOYLE VS EVOLVE BANK AND TRUST

**Case Number:**       CT-002249-14

**Type:**                    SUMMONS ISSD TO MISC

Sharon Smith, DC

Electronically signed on 05/21/2014 08:29:52 AM

CIRCUIT COURT OF SHELBY COUNTY, TN FILING

3

ELECTRONICALLY FILED
2014 May 20 PM 5:01
CLERK OF COURT - CIRCUIT

**(CIRCUIT/CHANCERY) COURT OF TENNESSEE**
**140 ADAMS AVENUE, MEMPHIS, TENNESSEE 38103**
**FOR THE THIRTIETH JUDICIAL DISTRICT AT MEMPHIS**

## SUMMONS IN CIVIL ACTION

Docket No. _____

☉ Lawsuit
○ Divorce

Ad Damnum $ _____

| JAYME BOYLE | | EVOLVE BANK & TRUST and EVOLVE FINANCIAL GROUP, INC. |
|---|---|---|
| | VS | |
| **Plaintiff(s)** | | **Defendant(s)** |

TO: (Name and Address of Defendant (One defendant per summons))

| EVOLVE FINANCIAL GROUP, INC. By Serving Its Registered Agent: Corporation Service Company 2908 Poston Avenue Nashville, TN 37203-1312 | Method of Service: ☑ Certified Mail ○ Shelby County Sheriff ○ Commissioner of Insurance ($) ○ Secretary of State ($) ○ Other TN County Sheriff ($) ○ Private Process Server ○ Other |
|---|---|

($) Attach Required Fees

You are hereby summoned and required to defend a civil action by filing your answer with the Clerk of the Court and serving a copy of your answer to the Complaint on _Kathleen L. Caldwell_ Plaintiff's attorney, whose address is _2670 Union Avenue Ext., Suite 110, Memphis, TN 38112_, telephone _9014584035_ within THIRTY (30) DAYS after this summons has been served upon you, not including the day of service. If you fail to do so, a judgment by default may be taken against you for the relief demanded in the Complaint.

TESTED AND ISSUED _____   By _____, D.C.

### TO THE DEFENDANT:

NOTICE; Pursuant to Chapter 919 of the Public Acts of 1980, you are hereby given the following notice:
Tennessee law provides a four thousand dollar ($4,000) personal property exemption from execution or seizure to satisfy a judgment. If a judgment should be entered against you in this action and you wish to claim property as exempt, you must file a written list, under oath, of the items you wish to claim as exempt with the Clerk of the Court. The list may be filed at any time and may be changed by you thereafter as necessary; however, unless it is filed before the judgment becomes final, it will not be effective as to any execution or garnishment issued prior to the filing of the list. Certain items are automatically exempt by law and do not need to be listed. These include items of necessary wearing apparel (clothing) for yourself and your family and trunks or other receptacles necessary to contain such apparel, family portraits, the family Bible and school books. Should any of these items be seized, you would have the right to recover them. If you do not understand your exemption right or how to exercise it, you may wish to seek the counsel of a lawyer.

### FOR AMERICANS WITH DISABILITIES ACT (ADA) ASSISTANCE ONLY, CALL (901) 222-2341

I, _JIMMY MOORE / DONNA RUSSELL_, Clerk of the Court, Shelby County, Tennessee, certify this to be a true and accurate copy as filed this

_____

JIMMY MOORE, Clerk / DONNA RUSSELL, Clerk and Master

By: _____, D.C.

---

### RETURN OF SERVICE OF SUMMONS

I HEREBY CERTIFY THAT I **HAVE** SERVED THE WITHIN SUMMONS:

By delivering on the _____ day of _____, 20_____ at _____ M. a copy of the summons

and a copy of the Complaint to the following Defendant _____

at _____

_____           By: _____
Signature of person accepting service                          Sheriff or other authorized person to serve process

---

### RETURN OF NON-SERVICE OF SUMMONS

I HEREBY CERTIFY THAT I **HAVE NOT** SERVED THE WITHIN SUMMONS:

To the named Defendant _____

because _____ is (are) not to be found in this County after diligent search and inquiry for the following

reason(s): _____

This _____ day of _____, 20_____.

By: _____
Sheriff or other authorized person to serve process



**The Shelby County, Tennessee Circuit Court**

**Case Style:**        JAYME BOYLE VS EVOLVE BANK AND TRUST

**Case Number:**    CT-002249-14

**Type:**                   SUMMONS ISSD TO MISC

Sharon Smith, DC

Electronically signed on 05/21/2014 08:29:52 AM

CIRCUIT COURT OF SHELBY COUNTY, TN FILING

4

ELECTRONICALLY FILED
2014 May 28 AM 9:31
CLERK OF COURT - CIRCUIT

ELECTRONICALLY FILED
2014 May 20 PM 5:01
CLERK OF COURT - CIRCUIT

**(CIRCUIT/CHANCERY) COURT OF TENNESSEE
140 ADAMS AVENUE, MEMPHIS, TENNESSEE 38103
FOR THE THIRTIETH JUDICIAL DISTRICT AT MEMPHIS**

## SUMMONS IN CIVIL ACTION

Docket No. _CT-002249-14_

- ◉ Lawsuit
- ○ Divorce

Ad Damnum $ _____

| JAYME BOYLE | VS | EVOLVE BANK & TRUST and EVOLVE FINANCIAL GROUP, INC. |
|---|---|---|
| Plaintiff(s) | | Defendant(s) |

TO: (Name and Address of Defendant (One defendant per summons))

EVOLVE FINANCIAL GROUP, INC.
By Serving Its Registered Agent:
Corporation Service Company
2908 Poston Avenue
Nashville, TN 37203-1312

**Method of Service:**
- ◉ Certified Mail
- ○ Shelby County Sheriff
- ○ Commissioner of Insurance ($)
- ○ Secretary of State ($)
- ○ Other TN County Sheriff ($)
- ○ Private Process Server
- ○ Other

($) Attach Required Fees

You are hereby summoned and required to defend a civil action by filing your answer with the Clerk of the Court and serving a copy of your answer to the Complaint on  Kathleen L. Caldwell                       Plaintiff's attorney, whose address is  2670 Union Avenue Ext., Suite 110, Memphis, TN 38112 , telephone        9014584035 within THIRTY (30) DAYS after this summons has been served upon you, not including the day of service. If you fail to do so, a judgment by default may be taken against you for the relief demanded in the Complaint.

TESTED AND ISSUED _____   By _____ , D.C.

### TO THE DEFENDANT:

NOTICE; Pursuant to Chapter 919 of the Public Acts of 1980, you are hereby given the following notice:
Tennessee law provides a four thousand dollar ($4,000) personal property exemption from execution or seizure to satisfy a judgment. If a judgment should be entered against you in this action and you wish to claim property as exempt, you must file a written list, under oath, of the items you wish to claim as exempt with the Clerk of the Court. The list may be filed at any time and may be changed by you thereafter as necessary; however, unless it is filed before the judgment becomes final, it will not be effective as to any execution or garnishment issued prior to the filing of the list. Certain items are automatically exempt by law and do not need to be listed. These include items of necessary wearing apparel (clothing) for yourself and your family and trunks or other receptacles necessary to contain such apparel, family portraits, the family Bible and school books. Should any of these items be seized, you would have the right to recover them. If you do not understand your exemption right or how to exercise it, you may wish to seek the counsel of a lawyer.

**FOR AMERICANS WITH DISABILITIES ACT (ADA) ASSISTANCE ONLY, CALL (901) 222-2341**

I,  JIMMY MOORE / DONNA RUSSELL , Clerk of the Court,
Shelby County, Tennessee, certify this to be a true and
accurate copy as filed this

_____

JIMMY MOORE , Clerk / DONNA RUSSELL, Clerk and Master

By: _____ , D.C.

**SENDER: COMPLETE THIS SECTION**

- ■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- ■ Print your name and address on the reverse so that we can return the card to you.
- ■ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

EVOLVE FINANCIAL GROUP, INC.
By Serving Its Registered Agent:
Corporation Service Company
2908 Poston Avenue
Nashville, TN 37203-1312

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X GINO MARCHETTI   ☐ Agent
                   ☐ Addressee

B. Received by ( Printed Name)      C. Date of Delivery

D. Is delivery address different from item 1?   ☐ Yes
   If YES, enter delivery address below:        ☐ No

3. Service Type
   ☒ Certified Mail      ☐ Express Mail
   ☐ Registered          ☐ Return Receipt for Merchandise
   ☐ Insured Mail        ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)             ☐ Yes

2. Article Number
   (Transfer from service label)      7008 1140 0003 7602 6876

PS Form 3811, February 2004          Domestic Return Receipt          102595-02-M-1540

RETURN OF SERVICE OF SUMMONS

I HEREBY CERTIFY THAT I **HAVE** SERVED THE WITHIN SUMMONS:

By delivering on the _____ day of _____, 20_____ at _____ M. a copy of the summons

and a copy of the Complaint to the following Defendant _____

at _____

By: _____

_____          Sheriff or other authorized person to serve process
Signature of person accepting service

RETURN OF NON-SERVICE OF SUMMONS

I HEREBY CERTIFY THAT I **HAVE NOT** SERVED THE WITHIN SUMMONS:

To the named Defendant _____

because _____ is (are) not to be found in this County after diligent search and inquiry for the following

reason(s): _____

This _____ day of _____, 20 _____.

By: _____

Sheriff or other authorized person to serve process



**The Shelby County, Tennessee Circuit Court**

**Case Style:**       JAYME BOYLE VS EVOLVE BANK AND TRUST

**Case Number:**    CT-002249-14

**Type:**              SUMMONS ISSD TO MISC

Sharon Smith, DC

Electronically signed on 05/21/2014 08:29:52 AM

CIRCUIT COURT OF SHELBY COUNTY, TN FILING

5

ELECTRONICALLY FILED
2014 May 28 AM 9:32
CLERK OF COURT - CIRCUIT

ELECTRONICALLY FILED
2014 May 20 PM 5:01
CLERK OF COURT - CIRCUIT

**(CIRCUIT/CHANCERY) COURT OF TENNESSEE**
**140 ADAMS AVENUE, MEMPHIS, TENNESSEE 38103**
**FOR THE THIRTIETH JUDICIAL DISTRICT AT MEMPHIS**

## SUMMONS IN CIVIL ACTION

Docket No. _CT-002249-14_

- ☑ Lawsuit
- ☐ Divorce

Ad Damnum $ _____

| JAYME BOYLE | VS | EVOLVE BANK & TRUST and EVOLVE FINANCIAL GROUP, INC. |
|---|---|---|
| Plaintiff(s) | | Defendant(s) |

TO: (Name and Address of Defendant (One defendant per summons))

EVOLVE BANK & TRUST
By Serving Its Registered Agent:
Corporation Service Company
2908 Poston Avenue
Nashville, TN 37203-1312

**Method of Service:**
- ☑ Certified Mail
- ☐ Shelby County Sheriff
- ☐ Commissioner of Insurance ($)
- ☐ Secretary of State ($)
- ☐ Other TN County Sheriff ($)
- ☐ Private Process Server
- ☐ Other

(S) Attach Required Fees

You are hereby summoned and required to defend a civil action by filing your answer with the Clerk of the Court and serving a copy of your answer to the Complaint on _Kathleen L. Caldwell_ Plaintiff's attorney, whose address is _2670 Union Avenue Ext., Suite 110, Memphis, TN 38112_ , telephone _9014584035_ within THIRTY (30) DAYS after this summons has been served upon you, not including the day of service. If you fail to do so, a judgment by default may be taken against you for the relief demanded in the Complaint.

TESTED AND ISSUED _____   By _____, D.C.

### TO THE DEFENDANT:

NOTICE: Pursuant to Chapter 919 of the Public Acts of 1980, you are hereby given the following notice:
Tennessee law provides a four thousand dollar ($4,000) personal property exemption from execution or seizure to satisfy a judgment. If a judgment should be entered against you in this action and you wish to claim property as exempt, you must file a written list, under oath, of the items you wish to claim as exempt with the Clerk of the Court. The list may be filed at any time and may be changed by you thereafter as necessary; however, unless it is filed before the judgment becomes final, it will not be effective as to any execution or garnishment issued prior to the filing of the list. Certain items are automatically exempt by law and do not need to be listed. These include items of necessary wearing apparel (clothing) for yourself and your family and trunks or other receptacles necessary to contain such apparel, family portraits, the family Bible and school books. Should any of these items be seized, you would have the right to recover them. If you do not understand your exemption right or how to exercise it, you may wish to seek the counsel of a lawyer.

### FOR AMERICANS WITH DISABILITIES ACT (ADA) ASSISTANCE ONLY, CALL (901) 222-2341

I, JIMMY MOORE / DONNA RUSSELL , Clerk of the Court,
Shelby County, Tennessee, certify this to be a true and
accurate copy as filed this

_____

JIMMY MOORE , Clerk / DONNA RUSSELL, Clerk and Master

By: _____, D.C.

**SENDER:** *COMPLETE THIS SECTION*

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

EVOLVE BANK & TRUST
By Serving Its Registered Agent:
Corporation Service Company
2908 Poston Avenue
Nashville, TN 37203-1312

*COMPLETE THIS SECTION ON DELIVERY*

A. Signature

X  GINO MARCHETTI   ☐ Agent
                    ☐ Addressee

B. Received by ( *Printed Name* )   C. Date of Delivery

D. Is delivery address different from item 1?   ☐ Yes
   If YES, enter delivery address below:          ☐ No

3. Service Type
   ☑ Certified Mail      ☐ Express Mail
   ☐ Registered          ☐ Return Receipt for Merchandise
   ☐ Insured Mail        ☐ C.O.D.

4. Restricted Delivery? *(Extra Fee)*   ☐ Yes

2. Article Number
   *(Transfer from service label)*
   7008 1140 0003 7602 6869

PS Form 3811, February 2004      Domestic Return Receipt      102595-02-M-1540

RETURN OF SERVICE OF SUMMONS

I HEREBY CERTIFY THAT I **HAVE** SERVED THE WITHIN SUMMONS:

By delivering on the _____ day of _____, 20_____ at _____ M. a copy of the summons

and a copy of the Complaint to the following Defendant _____. _____

at _____

_____          By: _____
Signature of person accepting service                              Sheriff or other authorized person to serve process

RETURN OF NON-SERVICE OF SUMMONS

I HEREBY CERTIFY THAT I **HAVE NOT** SERVED THE WITHIN SUMMONS:

To the named Defendant _____

because _____ is (are) not to be found in this County after diligent search and inquiry for the following

reason(s): _____

This _____ day of _____, 20_____.

                                                   By: _____
                                                         Sheriff or other authorized person to serve process



**The Shelby County, Tennessee Circuit Court**

**Case Style:**       JAYME BOYLE VS EVOLVE BANK AND TRUST

**Case Number:**     CT-002249-14

**Type:**             SUMMONS ISSD TO MISC

Sharon Smith, DC

Electronically signed on 05/21/2014 08:29:52 AM

CIRCUIT COURT OF SHELBY COUNTY, TN FILING

6

ELECTRONICALLY FILED
2014 Jun 23 AM 11:27
CLERK OF COURT - CIRCUIT

## IN THE CIRCUIT COURT OF SHELBY COUNTY, TENNESSEE
## FOR THE THIRTIETH JUDICIAL DISTRICT AT MEMPHIS

**JAYME BOYLE,**

      **Plaintiff,**

**v.**                                     **No. CT-002249 -14**

**EVOLVE BANK & TRUST, and
EVOLVE FINANCIAL GROUP, INC.,**

      **Defendants.**

## DEFENDANTS' MOTION TO DISMISS

Pursuant to Tennessee Rule of Civil Procedure 12.02(6), Defendants, Evolve Bank & Trust and Evolve Financial Group, Inc. ("Evolve") move the Court to dismiss Plaintiff's Complaint for failure to state a claim upon which relief can be granted.

Plaintiff's claim under the Tennessee Public Protection Act ("TPPA") fails as a matter of law because he resigned from Evolve and was not constructively discharged for refusing to remain silent about "illegal activities." Specifically, Plaintiff's Complaint fails to adequately demonstrate 1) that he was terminated or constructively discharged, 2) the existence of any "illegal activities," and 3) that there was an exclusive causal relationship between his resignation and his complaints, all of which are required elements for claims under the TPPA. Likewise, Plaintiff's claim for breach of contract fails as a matter of law because he failed to comply with the terms of his employment agreement, and ultimately, because he resigned. Lastly, Plaintiff's claim for intentional infliction of emotional distress fails as a matter of law because the conduct complained of does not rise to the level of "outrageous" and because he has not provided

sufficient allegations of mental distress. Accordingly, Plaintiff's deficient Complaint should be

dismissed with prejudice, with costs assessed against Plaintiff.

Respectfully submitted,

Robert L. Crawford (#7216)
Odell Horton, Jr. (#12426)
Kathryn K. Van Namen (#31322)
Wyatt Tarrant & Combs, LLP
1715 Aaron Brenner Drive, Suite 800
Memphis, Tennessee  38120-4367
(901) 537-1000 telephone
(901) 537-1010 facsimile
lcrawford@wyattfirm.com
ohorton@wyattfirm.com
kvannamen@wyattfirm.com

*Counsel for Evolve Bank & Trust and*
*Evolve Financial Group, Inc.*

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing has been served upon the

following, via U.S. Mail, postage prepaid, on this the 23rd day of June, 2014:

Kathleen L. Caldwell
KATHLEEN CALDWELL, PLLC
2670 Union Avenue Ext., Suite 110
Memphis, TN  38112

Kathryn K. Van Namen

61184181.1

CIRCUIT COURT OF SHELBY COUNTY, TN FILING

7

ELECTRONICALLY FILED
2014 Jun 23 AM 11:27
CLERK OF COURT - CIRCUIT

## IN THE CIRCUIT COURT OF SHELBY COUNTY, TENNESSEE
## FOR THE THIRTIETH JUDICIAL DISTRICT AT MEMPHIS

JAYME BOYLE,

      **Plaintiff,**

v.                                         **No. CT-002249 -14**

EVOLVE BANK & TRUST, and
EVOLVE FINANCIAL GROUP, INC.,

      **Defendants.**

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

Defendants, Evolve Bank & Trust and Evolve Financial Group, Inc. ("Evolve"), submit the following Memorandum of Law in Support of its Motion to Dismiss.

### I.    Introduction

Evolve respectfully submits that Plaintiff's complaint fails to state a cause of action upon which relief may be granted. Plaintiff's claim under the Tennessee Public Protection Act ("TPPA") fails as a matter of law because he resigned from Evolve and was not constructively discharged for refusing to remain silent about "illegal activities." Specifically, Plaintiff's Complaint fails to adequately demonstrate 1) that he was terminated or constructively discharged, 2) the existence of any "illegal activities," and 3) that there was an exclusive causal relationship between his resignation and his complaints, all of which are required elements for claims under the TPPA. Likewise, Plaintiff's claim for breach of contract fails as a matter of law because he failed to comply with the terms of his employment agreement as described in the Complaint, and ultimately, because he resigned. Lastly, Plaintiff's claim for intentional infliction

of emotional distress fails as a matter of law because the conduct complained of does not rise to the level of "outrageous" and because he has not provided any sufficient allegations of mental distress. Accordingly, Plaintiff's deficient Complaint should be dismissed with prejudice, with costs assessed against Plaintiff.

## II.      Factual Background

This case arises out of Plaintiff's employment at Evolve.   Jamie Boyle ("Boyle or Plaintiff") was first employed with Evolve from August 2005 until March 2008 as a loan originator.   [See Plaintiff's Complaint, attached hereto as Exhibit A ("Complaint"), ¶ 3].   He briefly left Evolve to work elsewhere.   [Complaint, ¶ 3].   In April 2009, Evolve offered employment to Boyle as a loan originator at its Loan Production Office.  [Complaint, ¶ 4].  Boyle willingly returned to enter into an employment relationship with Evolve.  [Complaint, ¶ 5].  The terms of the offer detailed a commission-based compensation, with a $5,000 recoverable draw for three (3) months to be applied against the commissions.   [Complaint, ¶ 5].   In 2010, Boyle served as the internet lending manager and loan originator at Evolve's Memphis Loan Production Office with Jeff Kuehn ("Kuehn").  [Complaint, ¶ 6].

As part of his employment as the internet lending manager and loan originator, Boyle was primarily responsible for his personal loan origination and the direct supervision of other loan originators in the internet lending department.   However, during the course of his employment, Boyle consistently failed to perform to Evolve's standards and put forth very poor effort.

Boyle was warned during the last quarter of 2012, that if his efforts did not improve, certain changes would be implemented in early 2013.  When Boyle failed to make the necessary improvements, Evolve's executives offered Boyle an opportunity to continue employment as a loan originator.   Boyle was heavily involved with loan origination, and this position offered a

natural transition to substantially similar employment that would free him from supervisory duties and allow him to concentrate solely on his own personal production. Thereafter, Boyle still failed to produce the necessary loans and failed to meet the origination requirements. Ultimately, Boyle tendered his resignation on Monday, May 21, 2013, via email, at approximately one o'clock in the morning. [See Complaint, ¶ 25].

On May 20, 2014, Boyle filed his Complaint for breach of contract, intentional infliction of emotional distress, and retaliatory and/or wrongful discharge, including violation of the TPPA. [See Complaint generally].

## III.   APPLICABLE STANDARD OF LAW

Plaintiff's claims against Evolve should be dismissed, because they cannot survive the standard for a motion to dismiss. In Tennessee, courts will dismiss a complaint that fails to state a viable claim even if all factual allegations therein are accepted as true. Tenn. R. Civ. P. 12.02(6); Trau-Med of Am., Inc. v. Allstate Ins. Co., 71 S.W. 3d 691, 696 (Tenn. 2002). While "great specificity is not ordinarily required to survive a motion to dismiss," a complaint must state the facts upon which a claim for relief is founded. Smith v. Lincoln Brass Works, Inc., 712 S.W.2d 470, 471 (Tenn. 1986). While the pleading standard in Tennessee is liberal, "minimal requirements are not tantamount to non-existent requirements. The threshold may be low, but it is real – and it is the plaintiff's burden to take the step which brings his case safely into the next phase of the litigation." Demers v. Whittenburg, No. M2003-00184-COA-R3-CV, 2004 WL 1196109, at *12 (Tenn. Ct. App. May 27, 2004).

A complaint must "do more than simply parrot the legal elements of the cause[s] of action, but must plead facts that, if true, would support each required element" of the causes of action. Morris Props., Inc. v. Johnson, No. M2007-00797-COA-R3-CV, 2008 WL 1891434, at

*1 (Tenn. Ct. App. Apr. 29, 2008).   While courts must construe factual allegations in the Plaintiff's favor when reviewing a motion to dismiss, courts are not required "to give the same deference to conclusory allegations . . . [nor are they] required to accept as true the inferences to be drawn from conclusory allegations." Kincaid v. Southtrust Bank, 221 S.W.3d 32, 40 (Tenn. Ct. App. 2006).

Here,  Boyle failed to plead any particular facts in his Complaint sufficient to maintain an actionable claim against Evolve.   Instead, Plaintiff's Complaint is merely a string of conclusory allegations that attempt to mirror the legal elements of the alleged causes of action.   As a result, Plaintiff's claims against Evolve should be dismissed.

## IV.   Law and Argument

A.   Boyle's claim under the Tennessee Public Protection Act Fails as a Matter of Law Because He Resigned from Evolve and was not Constructively Discharged for Refusing to Remain Silent about "Illegal Activities."

In his complaint, Boyle makes bare allegations that Evolve violated the TPPA by retaliating against him for complaints that the commissions, overages, and bonus structures at Evolve were contrary to law, as well as claims of constructive discharge.   As evidenced by his email dated May 21, 2013, however, Boyle resigned from Evolve.   In fact, he resigned after being provided with Evolve's employment as a loan originator, a substantially similar position, which was offered for legitimate, non-retaliatory reasons and a position in which Boyle served for four months before submitting his resignation.

Evolve respectfully submits that Evolve made the decision to offer Boyle the employment option of a loan originator based upon his subpar performance as the internet lending manager and  loan originator.   Thus, Boyle cannot demonstrate that he was terminated *solely* for refusing

to participate in or remain silent about illegal activities, and his claim under the TPPA should be dismissed.

The TPPA is codified at Tennessee Code Annotated §50-1-304 and provides in pertinent part:

(a)(3) "Illegal activities" means activities that are in violation of the criminal or civil code of this state or the United States or any regulation intended to protect the public health, safety or welfare.

[. . .]

(b) No employee shall be **_discharged_** or **_terminated_** solely for refusing to participate in, or for refusing to remain silent about, illegal activities.

[. . .]

(d)(1) Any employee terminated in violation of subsection (b) shall have a cause of action against the employer for retaliatory discharge and any other damages to which the employee may be entitled.

Tenn. Code Ann. §50-1-304 (West 2014) (emphasis added).

Both Tennessee and federal courts have determined that a plaintiff bringing a cause of action under Tennessee Code Annotated §50-1-304 must prove the following four (4) elements:

(1) the plaintiff's status as an employee of the defendant;

(2) the plaintiff's refusal to participate in, or to remain silent about, illegal activities;

(3) the employer's discharge of the employee;

(4) an exclusive causal relationship between the plaintiff's refusal to participate in or remain silent about illegal activities and the employer's termination of the employee. <u>Voss v. Shelter Mut. Ins. Co.</u>, 958 S.W.2d 342, 344 (Tenn. Ct. App. 1997); <u>Griggs v. Coca-Cola</u>

5

Employees' Credit Union, 909 F.Supp. 1059, 1063 (E.D. Tenn. 1995). Although Evolve employed Boyle, which satisfies the first element, he cannot demonstrate the remaining three elements necessary to bring a cause of action under the TPPA. Boyle has not plead sufficient facts to show that he was discharged or terminated, or that he refused to participate in or remain silent about illegal activities, both of which are necessary elements under the Public Protection Act. The failure to establish either is fatal to Boyle's case. Finally, even if Boyle could prove the first two elements, he has failed to show a causal relationship between his complaints of alleged illegal activities and his resignation, and the Complaint should be dismissed.

1.      *Boyle cannot demonstrate that he was terminated or constructively discharged.*

Simply put, Evolve did not discharge Boyle. To the contrary, Boyle resigned after being offered a substantially equivalent job as a loan originator. He cannot establish that he was terminated or constructively discharged, and his claim under the TPPA is fatally flawed.

a.      *Evolve did not terminate Boyle.*

In Harman v. University of Tennessee, the Tennessee Supreme Court held that removal of a university employee from his position as department head, when he remained employed as a professor, was neither a termination nor a discharge under the Public Protection Act. 353 S.W.3d 734, 738 (Tenn. 2011). In evaluating whether the TPPA applies to an employee whose employment relationship is completely severed or only modified, the Court looked to the language of the TPPA, which expressly applies to an employee who is "discharged" or "terminated." Id.

Because these terms are unambiguous, the Harman court looked to "the natural and ordinary meaning of the statutory language within the context of the entire statute without any forced or subtle construction that would extend or limit the statute's meaning" to determine the

legislature's intent. Id. (citing State v. Flemming, 19 S.W.3d 195, 197 (Tenn. 2000); In re Adoption of A.M.H., 215 S.W.3d 793, 808 (Tenn. 2007) ("Where the statutory language is not ambiguous, . . . the plain and ordinary meaning of the statute must be given effect.")). "Termination of employment" is defined as "[t]he complete severance of an employer-employee relationship." Id. (citing Black's Law Dictionary 1482 (7th ed. 1999)). "Discharge," when used in the context of an employment relationship, is defined as "[t]he firing of an employee." Id.

Similarly, in Howard v. Life Care Centers of America, Inc., when a medical facility did not renew its medical director's employment contract upon its expiration, the medical director filed suit for retaliatory discharge related to complaints about the facility's failure to follow Medicare guidelines. No. E2004-00212-COA-R3-CV, 2004 WL 1870067, at *1 (Tenn. Ct. App. Aug. 20, 2004). After the trial court granted the employer's motion for summary judgment on the basis that the employee was not discharged or terminated, on appeal, the Court of Appeals affirmed and held that the employee was neither discharged nor terminated from his employment within the meaning of the Public Protection Act. Id. at *4.

The Harman Court stated: "Tennessee Code Annotated §50-1-304 requires that the employee be 'terminated.' This would clearly require an act on the part of the employer to end the employment relationship." Id. Thus, the plain and ordinary meaning of the words "discharged" and "terminated" is a complete severance of the employment relationship. Harman, 353 S.W.3d at 738.

Likewise, although Boyle was removed from his position as  internet lending manager and loan originator, he still remained employed as a loan originator for Evolve. This does not constitute a complete severance of the employment relationship as described by the Tennessee Supreme Court in Harman. The employment relationship between Boyle and Evolve ended

because Boyle resigned, not by an affirmative act by the employer.  Further, there was no official "end [to] the employment relationship" and no "firing of the employee" to constitute termination under the terms of the statute.

      b.    *Boyle was not constructively discharged.*

Boyle was neither terminated nor constructively discharged by Evolve.  It is axiomatic that a "constructive discharge exists 'if working conditions would have been so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign.'"  Campbell v. Fla. Steel Corp., 919 S.W.2d 26, 34 (Tenn. 1996) (quoting Bruhwiler v. Univ. of Tenn., 859 F.2d 419, 421 (6th Cir. 1988)).  A plaintiff wishing to demonstrate the existence of a constructive discharge "need only show that the employer knowingly permitted conditions of discrimination in employment so intolerable that a reasonable person subject to them would resign."  Campbell, 919 S.W.2d at 34.  Here, Boyle has failed to allege either the existence of difficult or unpleasant working conditions or that Evolve knowingly permitted such conditions to exist.  Indeed, the allegations in the Complaint are directly contrary to such a required showing.

In recognition of the length of time Boyle had been employed, Evolve offered him the opportunity to stay and work as a loan originator for Evolve, even though he failed to properly perform as the internet lending manager.  This position was substantially similar to Boyle's prior position, requiring the same work schedule, and offering the same benefits, such as 401k and the like.  No reasonable person would have felt compelled to resign to avoid such conditions, especially when the conditions were the same as Boyle's prior position.  Offering these accommodations is not the action of an employer knowingly permitting an intolerable work environment in order to run off an employee.  Rather, these are the actions of a banking

institution attempting to help an employee: an employee who had been informed that failure to improve prior poor performance would result in changes.

Instead of automatically terminating Boyle, Evolve attempted to continue employing him. Boyle nevertheless deemed the job to be a demotion and quit. However, the Sixth Circuit Court of Appeals has held that "a change in working conditions must be more disruptive than a mere inconvenience or an alteration of job responsibilities" to arise to a materially adverse action for purposes of constructive discharge. Rushton v. City of Warren, 90 Fed. Appx. 912, 916 (6th Cir. 2004). "An employee's subjective impressions as to the desirability of one position over another are not relevant." Id. at 917. Whether Boyle was unhappy reporting to a branch manager he initially recruited is thus irrelevant. [See Complaint, ¶ 16]. Boyle's claim of constructive discharge fails as a matter of law as no reasonable person would feel compelled to resign to avoid continued employment in a substantially similar position. Accordingly, Boyle has failed to demonstrate in his Complaint that he was terminated or discharged -- a necessary element and a fatal omission from his claim under the TPPA.

2.   *Boyle cannot demonstrate the existence of "illegal activities."*

As to another element necessary for his claim under Tennessee Code Annotated §50-1-304, Boyle has not proffered specific allegations that the commission, overage, and bonus structures at Evolve of which he complained violate any "criminal or civil code of this state or the United States or any regulation intended to protect the public health, safety or welfare." Tenn. Code Ann. §50-1-304(c). Boyle simply alleged that certain activities were "in violation of Fair Lending laws, and the Dodd-Frank Act." [See Complaint, ¶ 9]. Even taking Boyle's alleged version of the commission and bonus structures to be true, such veiled assertions do not demonstrate the existence of illegal activities, especially given the numerous changes in the Fair

Lending laws over the course of the last several years.  As such, Boyle has not made a showing of "illegal activities" to sustain a cause of action under the TPPA.

3.    *Boyle cannot demonstrate an exclusive causal relationship between his resignation and his complaints.*

As set forth above, Evolve respectfully asserts that Boyle resigned from Evolve on May 21, 2013, and Evolve was not involved in any "illegal activities."  Assuming arguendo, and for the purposes of dismissal only, that Boyle appropriately plead allegations of "constructive discharged," he has still failed to demonstrate that the alleged constructive discharge was solely the result of his complaints about Evolve's commission, overage, and bonus structure.

Boyle had been previously warned that poor performance would result in significant changes, potentially including termination.   Evolve had legitimate non-retaliatory reasons for taking its employment actions, and Boyle hence has failed to demonstrate that he was allegedly constructively discharged solely for refusing to participate in or remain silent about illegal activities—the last essential element under the TPPA.

For instance, in Griggs v. Coca-Cola Employees' Credit Union, Judge Collier of the District Court for the Eastern District of Tennessee found that Tennessee Code Annotated §50-1-304 clearly requires a plaintiff to demonstrate that an employer "discharged her *solely* for refusing to participate in, or for refusing to remain silent about, illegal activities." 909 F. Supp. 1059, 1065 (E.D. Tenn. 1995) (emphasis added). The plaintiff in Griggs complained to her employer about alleged illegal irregularities and caused a special data processing system audit to be conducted by the Tennessee Department of Financial Institutions. Id. at 1061.  Nevertheless, the Griggs court found that the plaintiff could not show that she was discharged solely for refusing to participate in, or for refusing to remain silent, about illegal activities and hence could

not establish the fourth element of retaliatory discharge. In that regard, the employer had asserted that it discharged the plaintiff for failure to perform required duties and refusal to cooperate in the conversion of a new computer system and its reasons were supported by the record. Id. at 1065-66.

In the present case, Boyle's dissatisfaction with compensation, overage, and bonus structures played no part whatsoever in Evolve's decision to offer Boyle other employment options. Rather, Boyle experienced issues reaching the required objectives and had been expressly warned that failure to improve would result in his possible termination.

Evolve, like the employer in Griggs, took remedial action with respect to Boyle for legitimate, non-retaliatory reasons. Quite simply, Boyle failed to perform to the requisite standards despite a previous express warning to improve. Evolve made a legitimate business decision when it offered Boyle employment as a loan originator. Boyle thus has made no showing that Evolve constructively discharged him "solely for refusing to participate in, or for refusing to remain silent about, 'illegal activities,'" and his TPPA claim should be dismissed. Because Boyle fails to satisfy three critical elements necessary to maintain an action under the TPPA, his claim should be dismissed as a matter of law.

**B.**     Boyle's Claim for Breach of Contract Fails as a Matter of Law Because of His Failure to Comply with the Terms of His Employment Agreement, and Ultimately, Because He Resigned.

Plaintiff's complaint fails to plead with requisite specificity as to how Evolve breached its contractual relationship with Boyle. Even though Evolve neither terminated nor constructively discharged Boyle from his employment relationship, Plaintiff's Complaint makes conclusory statements regarding Evolve's alleged breach of contractual obligations and fails to put Evolve on notice of what actions constitute the alleged breach. The terms of the employment contracts

described in paragraph 1 of Plaintiff's Complaint reiterate that Boyle was an at-will employee, and even if Evolve terminated Boyle in some capacity by offering him employment as a loan originator, there were reasonable grounds supported by the employment agreement. [Complaint, ¶1].

Tennessee has long adhered to the doctrine of employment-at-will, which recognizes the right of either the employer or the employee to terminate the employment relationship at any time, for good cause, bad cause, or no cause at all, without being guilty of a legal wrong.[1] Guy v. Mut. of Omaha Ins. Co., 79 S.W.3d 528, 534–35 (Tenn. 2002). In Tennessee, employees are presumed to be employed at will in the absence of an agreement for employment for a term certain. King v. TFE, Inc., 15 S.W.3d 457, 460 (Tenn. Ct. App. 1999).

Consequently, the court must interpret Plaintiff's employment contract to determine whether it reflects intent to employ Boyle for a term certain. As described in the Complaint, Boyle's employment contract does not include language reflecting a term. Generally, a contract of employment for an indefinite term is a contract at will and may be terminated by either party. Cummings, Inc. v. Dorgan, 320 S.W.3d 316, 336 (Tenn. Ct. App. 2009). Therefore, in Tennessee, unless there is a contract of employment for a definite term, a discharged employee may not recover against an employer because there is no right to continued employment. Bennett v. Steiner-Liff Iron & Metal Co., 826 S.W.2d 119, 121 (Tenn. 1992). As such, Boyle had no right to continued employment as a loan originator at Evolve since his contract had no definite term, and both Boyle and Evolve had the right to terminate the agreement.

---

[1]   Although there are exceptions to the employment-at-will doctrine, none of those exceptions are relevant here. See Guy, 79 S.W.3d at 535.

Although Evolve reiterates that Boyle resigned and Evolve did not breach Boyle's employment contract, assuming arguendo that Evolve terminated Boyle by offering him employment as a loan originator, Boyle has not shown that Evolve did not have a justifiable reason for doing so.  Tennessee law states that while an employer may discharge at will one employed for no definite term without incurring liability, the employer, in order to justify dismissal of one employed for a specific period, must be able to show a breach on the part of the employee of some express or implied provision of the contract of service.  <u>Little v. Fed. Container Corp.</u>, 452 S.W.2d 875, 877-78 (Tenn. 1969).

Boyle's poor performance and failure to comply with the terms of his employment agreement could satisfy any reasonable cause for termination by Evolve.  As a result, Boyle has failed to show that Evolve did not have reasonable cause for termination or that Evolve breached its contract with Boyle for offering employment as a loan originator.

Ultimately, Plaintiff's claims for breach of contract fail to meet the standards required by Tennessee law and should be dismissed.

**C.** <u>Boyle's claim for Intentional Infliction of Emotional Distress Fails as a Matter of Law Because the Conduct Complained of Does Not Rise to the Level of Outrageous and Because Boyle has not Provided Sufficient Allegations of Mental Distress.</u>

There are three essential elements to a cause of action for outrageous conduct or intentional infliction of emotional distress.  These elements are: "(1) the conduct complained of must be intentional or reckless; (2) the conduct must be so outrageous that it is not tolerated by civilized society; and (3) the conduct complained of must result in serious mental injury."  <u>Bain v. Wells</u>, 936 S.W.2d 618, 622 (Tenn. 1997).

As discussed by the Court in <u>Bain</u>, this is not an easy burden to meet.  For Boyle to recover on this claim, he must show intentional or reckless conduct that is intolerable by a civilized society and that resulted in serious mental injury.  <u>Id.</u> at 622.  The nature of the conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all bounds of decency, and to be regarded as *atrocious* and *utterly intolerable* in a civilized community."  <u>Id.</u> at 623 (quoting <u>Medlin v. Allied Inv. Co.</u>, 398 S.W.2d 270, 274 (Tenn. 1966) (emphasis added)).  Further, to survive a motion to dismiss, the actionable conduct must be set out in the complaint describing the substance and severity of the conduct that is alleged to be outrageous.  <u>Braswell v. Carothers</u>, 863 S.W.2d 722 (Tenn. Ct. App. 1993).  Accordingly, courts routinely dismiss complaints at the 12.02(6) stage where the conduct alleged cannot reasonably be found to be outrageous.  In the present case, Boyle has failed to sufficiently allege facts related to his claim of intentional infliction of emotional distress that rise to this level to satisfy these requirements.

Tennessee courts have held that conduct that is merely offensive such as minor insults, indignities, threats, annoyances, petty oppression, or other trivialities, will not support a claim for intentional infliction of emotional distress.  <u>Sasser v. Quebecor Printing (USA) Corp.</u>, 159 S.W.3d 579 (Tenn. Ct. App. 2004); <u>see also Nijem v. Alsco, Inc.</u>, 796 F. Supp. 2d 883 (M.D. Tenn. 2011) (noting where employer took some corrective actions, name-calling by coworkers based on national origin of plaintiff, absent any physical touching or hostile threats in conjunction with the name-calling, did not constitute outrageous conduct).

Additionally, Boyle has presented no statements or evidence of treatment for such "distress."  For example, in <u>Oates v. Chattanooga Publishing Company</u>, 205 S.W.3d 418 (Tenn. Ct. App. 2006), the court granted summary judgment to the defendant employer in an employee's action for intentional and/or negligent infliction of emotional distress caused by a hostile work

environment and malicious harassment.  The plaintiff never sought or received any counseling or treatment for her alleged emotional distress and did not allege any way in which her emotional distress manifests itself.  Id.  The court found that the record was completely devoid of evidence of emotional distress or of counseling or treatment for emotional distress and the employee failed to create a genuine issue of material fact as to whether she suffered severe emotional injury.  Id.

Boyle's Complaint only alleges that his new position was "demeaning" and "embarrassing," a far cry from the atrocious and utterly intolerable conditions described in Bain.  Bain, 936 S.W.2d at 623; [Complaint, ¶ 17].  Even assuming Boyle had shown that any particular demeaning occurrence was directed at him, no incident, taken together or separately, amount to more than  "insults, indignities, threats, annoyances, petty oppression, or other trivialities," none of which are recoverable under the tort.  Id. at 622 (quoting Medlin, 398 S.W.2d at 274).  As such, Boyle's claim for intentional infliction of emotional distress fails and must be dismissed.

## V.      Conclusion

Ultimately, Boyle's Complaint fails to state a claim upon which relief can be granted with respect to his claims for breach of contract, intentional infliction of emotional distress, and retaliatory and/or wrongful discharge, including violation of the TPPA.  Because his claims fail to amount to anything more than conclusory allegations, the Complaint should be dismissed.

15

Respectfully submitted,

*Kathryn K. Van Namen*

Robert L. Crawford (#7216)
Odell Horton, Jr. (#12426)
Kathryn K. Van Namen (#31322)
Wyatt Tarrant & Combs, LLP
1715 Aaron Brenner Drive, Suite 800
Memphis, Tennessee  38120-4367
(901) 537-1000 telephone
(901) 537-1010 facsimile
lcrawford@wyattfirm.com
ohorton@wyattfirm.com
kvannamen@wyattfirm.com

*Counsel for Evolve Bank & Trust and
Evolve Financial Group, Inc.*

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing has been served upon the

following, via U.S. Mail, postage prepaid, on this the 25d day of June, 2014:

Kathleen L. Caldwell
KATHLEEN CALDWELL, PLLC
2670 Union Avenue Ext., Suite 110
Memphis, TN  38112

*Kathryn K. Van Namen*

Kathryn K. Van Namen

61181310.5

16

ELECTRONICALLY FILED
2014 May 20 PM 5:01
CLERK OF COURT - CIRCUIT

**IN THE CIRCUIT COURT OF SHELBY COUNTY, TENNESSEE
FOR THE THIRTIETH JUDICIAL DISTRICT AT MEMPHIS**

---

**JAYME BOYLE,**

     **Plaintiff,**

**v.**                     **Case No:**_____
                               **JURY DEMANDED**

**EVOLVE BANK & TRUST, and
EVOLVE FINANCIAL GROUP, INC.,**

     **Defendants.**

---

**COMPLAINT**

---

     This is an action for breach of contract, for intentional infliction of emotional distress, and for retaliatory and/or wrongful discharge, including violation of T.C.A. § 50-1-304, the Tennessee Public Protection Act.

**I. PARTIES**

     1.    Plaintiff, Jayme Boyle, is an adult resident citizen of Shelby County, Tennessee.

     2.    Defendant Evolve Bank & Trust is a foreign corporation organized in the State of Arkansas and may be reached with service of process by serving its registered agent Corporation Service Company, 2908 Poston Avenue, Nashville, TN 37203-1312.

     Defendant Evolve Financial Group, Inc. is a foreign corporation organized in the State of Delaware, doing business in the State of Tennessee and may be reached with service of process by serving its registered agent Corporation Service Company,

1



2908 Poston Avenue, Nashville, TN 37203-1312.

## II. **FACTS**

3.     Jayme Boyle (hereinafter "Boyle") was hired in August 2005 to handle alternative broker business, managed by Evolve Mortgage Services, a corporation owned by Evolve Financial Group, Inc. Evolve Mortgage Services later became a part of Evolve Bank & Trust, which is wholly owned by Evolve Financial Group, Inc. He served in that capacity until March 18, 2008, when he resigned to take a job elsewhere. Boyle had worked in the mortgage business since 2000. Boyle was initially given a contract which has since been replaced from time to time by other contracts. Boyle is not in possession of any of said contracts. However, Boyle entered into said employment relationship in good faith, and understood that Evolve had an implied duty of good faith and fair dealing. As stated below, Evolve by and through its manages and officers has breached its contractual relationship with Boyle.

4.     In April 2009, Boyle was contacted by Jeff Kuehn and Jim Martin, who recruited Boyle to return to Evolve to serve as a loan originator. Boyle considered this to be a great business opportunity, with potential for significant growth and earnings capacity.

5.     Boyle accepted the offer, and began work on or about April 15, 2009. He was to work on straight commission, with a guarantee of $5,000.00 per month for the first three months.

6.     By early 2010, Boyle was the loan compliance manager for all Evolve branches (about 14 or 15 at that time). He trained and "on-boarded" branches to

2

become Evolve entities. He was put on salary of $48,000.00 plus bonuses based upon his production. He was being paid off the bottom line.

7.    Boyle soon learned the commissions, overages and bonuses at Evolve Bank were being withheld, awarded and/or manipulated contrary to law. Boyle did not like the situation.

8.    Tommy Taylor, CEO of the Evolve Mortgage Division, a division of Evolve Bank, decided upon a plan to manipulate the commissions, overages and bonuses such as to hide the illegal payments, to deprive their employees of money being earned on overages charged to customers, and to hide the money trail on a per transaction basis.

9.    Boyle informed Brent Bousson (head of HR) and Jason Brown (in-house legal counsel for Evolve Financial) that they needed to straighten out how commissions, overages and bonuses were being paid, that this situation was illegal. They took no action at that time to correct the situation. Then upper management, believed to include Tommy Taylor, Jason Brown, Scott Stafford, Scott Lenoir and John Chandler, changed how overages were to be paid, by taking the previous quarter's overages and paying them over a three-month period as salary. Said plan again was in violation of Fair Lending laws, and the Dodd-Frank Act, which amended (Reg. "Z").

10.    Boyle again complained, this time to Jeff Kuehn, President of Evolve Mortgage. Kuehn did nothing. Neither did Evolve Mortgage, Evolve Financial, Evolve Bank & Trust or Evolve Financial Group, Inc.

11.    During the course of the last 12 months of his employment at Evolve,

3

Boyle learned that Evolve was requiring branch managers to make personal contributions of capital into Evolve's reserve account in violation of Housing and Urban Development law. Boyle was not such a manager. But he became well aware that Evolve was intentionally finding ways to thwart legal requirements, and to place the economic burdens of the mortgage business on its employees.

12.   By the end of January 2013, Boyle was demoted to a loan officer position. He was "invited" to stay with the company. But when Boyle got back to his office, his access to his computer had already been cut off. Boyle accepted the demotion, in part because he had family issues and personal problems.

13.   Said demotion was retaliatory, because Boyle had complained to his supervisors about illegal activities. Boyle had made it clear to Evolve that he would not remain silent about illegal activities.

14.   The very next week Boyle was told he had to testify at a deposition on behalf of Evolve regarding a lawsuit pending in the State of Colorado. He was "prepped" by Evolve attorneys on how to give a deposition.

15.   Boyle gave his deposition and answered truthfully.

16.   Thereafter he worked as a loan officer under the supervision of Chad Irwin, the branch manager. Boyle had recruited Irwin, and had trained Irwin in Evolve business practices. Reporting to Irwin was difficult, and embarrassing to Boyle.

17.   From the time that Boyle complained initially to Kuehn and later to Bousson and Brown, and later to Kuehn. He was working in a hostile work environment. The demotion was demeaning and embarrassing. As an example, he

4

was encountered by Kuehn, Bousson and Taylor on October 3, 2013, and asked why he did not just work as a loan originator – they tried to talk Boyle out of being a manager.

18.    Throughout the fall of 2013 until his demotion in late January, 2014, Boyle was required to discipline employees, including to terminate them. Boyle was doing so at the express direction of Taylor. Boyle complained to Taylor and Bousson about the lack of clear objective guidelines, such as when performance/loan volume had shrunk to a certain level for an employee. Instead, persons were being fired based on the subjective decisions of Taylor.

19.    Taylor (CEO of Evolve Mortgage Division) was not allowed by law to originate loans. But he would attribute loans to originators, then would receive partial commissions in the form of bonuses. This practice was illegal under Dodd-Frank. Taylor knew better. It was no secret at Evolve that Taylor was originating loans and being paid as a result.

20.    Evolve had Boyle originate some Twenty Million Dollars in loans, but Boyle was paid only a partial commission on these loans. On sum he received nothing. The monies which should have been paid to Boyle were given to the branches. At the time the branches were not yet able legally to originate loans. This practice was developed by Taylor, who well knew that only was supposed to be paid not less than 1% of all loans on which he served as originator.

21.    By the time of Boyle's demotion, other employees avoided any contact with him. It was like he had a target on his back.

20.    At the same time Taylor started promising Boyle that he was going to

5

make him manager, but needed Boyle's help to get rid of Jeff Kuehn. Boyle knew he was being manipulated, but did not yet understand why.

22.   Throughout the winter and spring of 2012-2013, Boyle was feeling increasingly threatened. He understood that Evolve could and would blemish his reputation, which would make it difficult for him to get a good job in the mortgage industry.

23.   The actions taken by Taylor, Bousson, Stafford, Lenoir, Brown, Chandler and others were continuing over a long period of time. Their actions were intentional and malicious, sufficient to cause a reasonable person to explain outrage.

24.   Pressure was building for Boyle. In May 2013, he learned that Evolve's attorney in the Colorado case had deposed Virginia Green, and that a lot of the questions were about Jayme Boyle.

25.   Based on what he had been going through at work on a daily basis, based upon his knowledge of the mortgage industry, and based upon his growing knowledge of Evolve's shady business practices, Boyle decided to resign. His resignation was not voluntary. He could take no more. He resigned by email, sent to Evolve on May 21, 2013 at 1:00 a.m.

26.   Boyle has sustained significant wage losses due to said constructive discharge, including loss of commissions, loss of stock options, salary, benefits and overtime. He has incurred pain and suffering emotional pain and suffering and other injuries to his reputation.

27.   The acts and omissions of Evolve's principals and agents have been

6

malicious, and intentional.  Hence an award of punitive damages is merited.

### III.  **CAUSES OF ACTION**

28.     Plaintiff incorporates paragraphs 1 through 27 as if set forth fully herein.

29.     Based on the foregoing, Plaintiff states a claim for:

    (a)     Breach of employment contract;

    (b)     Intentional infliction of emotional distress; and

    (c)     Retaliatory or wrongful discharge, in violation of T.C.A. § 50-1-304, which prohibits discharge or termination solely for refusing to participate in, or for refusing to remain silent about, illegal activities.

### IV.  **PRAYER FOR RELIEF**

Plaintiff hereby demands relief as follows:

1.     Issue process as prayed for.

2.     Judgment for compensatory damages, including loss of wages, commissions, and other monetary damages and for physical and emotional pain and suffering post, present and future in the sum of $2.5 Million Dollars.

3.     Punitive damages in the sum of $2.5 Million Dollars.

4.     Jury demanded.

5.     Other relief as may be deemed appropriate.

7

Respectfully submitted,

KATHLEEN CALDWELL, PLLC

By:_____

Kathleen L. Caldwell, #9916
2670 Union Avenue Ext., Suite 110
Memphis, TN 38112
Telephone:  (901) 458-4035
Facsimile:   (901) 458-4037

CIRCUIT COURT OF SHELBY COUNTY, TN FILING

8

ELECTRONICALLY FILED
2014 Aug 21 AM 10:58
CLERK OF COURT - CIRCUIT

# IN THE CIRCUIT COURT OF SHELBY COUNTY, TENNESSEE
## FOR THE THIRTIETH JUDICIAL DISTRICT AT MEMPHIS

**JAYME BOYLE,**

      **Plaintiff,**

**v.**                       **DOCKET NO:  CT-002249-14**
                                        **Division IV**

**EVOLVE BANK & TRUST, and**
**EVOLVE FINANCIAL GROUP, INC.,**

      **Defendants.**

---

## PLAINTIFF'S MOTION FOR LEAVE TO AMEND COMPLAINT

---

Comes now Jayme Boyle, by and through his attorney, Kathleen L. Caldwell, and moves the Court for leave to amend his Complaint and in support states as follows:

1.     Plaintiff filed his original Complaint May 20, 2014.

2.     Plaintiff in responding to Defendants' Motion to Dismiss, pursuant to Tennessee Rules Civil Procedure, Rule 12.02(b) has become aware that his original Complaint as submitted needs corrections and amendments.   Certain of the corrections involve typographical errors, or date errors.   Correction is needed to clarify the allegations.

3.     In addition, Plaintiff desires to add additional allegations needed to support his causes of action.   Further, Plaintiff desires to amend to add the common-law action for retaliatory discharge.   Plaintiff has already pleaded the statutory action for retaliatory discharge, Tenn. Code Ann. §50-1-304.   The

1

common-law action requires no additional allegations.  Plaintiff's original Complaint states a claim under the common-law action.

4.     Plaintiff relies on Tennessee Rules Civil Procedure, Rule 15.01, which provides in relevant part as follows:

> [After a responsive pleading is served] a party may amend the party's pleadings only by written consent of the adverse party or by leave of court; and leave shall be freely given when justice so requires.

5.     Justice does indeed require permission to amend, as Plaintiff seeks.

6.     Plaintiff attaches hereto a Proposed Amended Complaint.

7.     Leave to amend is in the interests of justice.  Defendants will not be prejudiced.

Respectfully submitted,

KATHLEEN CALDWELL, PLLC

By: _____
Kathleen L. Caldwell, #9916
2670 Union Avenue Ext., Suite 110
Memphis, TN 38112
Telephone:  (901) 458-4035
Facsimile:   (901) 458-4037
kathleencaldwell.attorney@gmail.com
*Attorney for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been electronically filed and electronically available to the following:

> **Robert L. Crawford, Esq.**
> **Odell Horton, Jr., Esq.**
> **Kathryn K. Van Namen, Esq.**
> **Wyatt Tarrant & Combs, LLP**
> **1715 Aaron Brenner Drive, Suite 800**
> **Memphis, TN 38120-4367**

This 21st day of August, 2014.

_____
Certifying Attorney

3

CIRCUIT COURT OF SHELBY COUNTY, TN FILING

9

ELECTRONICALLY FILED
2014 Aug 21 AM 10:58
CLERK OF COURT - CIRCUIT

## §IN THE CIRCUIT COURT OF SHELBY COUNTY, TENNESSEE
## FOR THE THIRTIETH JUDICIAL DISTRICT AT MEMPHIS

---

**JAYME BOYLE,**

     **Plaintiff,**

**v.**              **DOCKET NO:  CT-002249-14**
                   **Division IV**

**EVOLVE BANK & TRUST, and**
**EVOLVE FINANCIAL GROUP, INC.,**

     **Defendants.**

---

### PROPOSED AMENDED COMPLAINT

---

This is an action for breach of contract, for intentional infliction of emotional distress, and for retaliatory and/or wrongful discharge, including violation of T.C.A. §50-1-304, the Tennessee Public Protection Act.

### I. PARTIES

1.    Plaintiff, Jayme Boyle, is an adult resident citizen of Shelby County, Tennessee.

2.    Defendant Evolve Bank & Trust is a foreign corporation organized in the State of Arkansas and may be reached with service of process by serving its registered agent Corporation Service Company, 2908 Poston Avenue, Nashville, TN 37203-1312.

Defendant Evolve Financial Group, Inc., is a foreign corporation organized in the State of Delaware, doing business in the State of Tennessee and may be reached with service of process by serving its registered agent Corporation Service Company,

2908 Poston Avenue, Nashville, TN 37203-1312.

## II.  **FACTS**

3.     Jayme Boyle (hereinafter "Boyle") was hired in August 2005 to handle alternative broker business, managed by Evolve Mortgage Services, a corporation owned by Evolve Financial Group, Inc.  Evolve Mortgage Services later became a part of Evolve Bank & Trust, which is wholly owned by Evolve Financial Group, Inc. (hereinafter "Evolve").  He served in that capacity until March 18, 2008, when he resigned to take a job elsewhere.  Boyle had worked in the mortgage business since 2000.

4.     In April 2009, Boyle was contacted by Jeff Kuehn and Jim Martin, who recruited Boyle to return to Evolve to serve as a loan originator.  Boyle considered this to be a great business opportunity, with potential for significant growth and earnings capacity.   Boyle was initially given a contract which has since been replaced from time to time by other contracts.  Boyle is not in possession of any of said contracts, but incorporates them by reference as if copied in words and figures.  Said contracts provided for at the very least:  establishing an employer-employee relationship between Evolve and Boyle; defining the scope of Boyle's duties and job title; and setting out the terms of Boyle's salary and/or commissions, bonuses and benefits.   Boyle entered into said employment relationship in good faith, and understood that Evolve had an implied duty of good faith and fair dealing.  As stated below, Evolve by and through its managers and officers has breached its contractual relationship with Boyle.

5.     Boyle accepted the initial offer to return, and began work on or about

April 15, 2009.  He was initially to work on straight commission, with a guarantee of $5,000.00 per month for the first three months.

6.     By early 2010, Boyle was the loan compliance manager for all Evolve branches (about 14 or 15 at that time).  He trained and "on-boarded" branches to become Evolve entities.  He was put on salary of $48,000.00 plus bonuses, based upon his production and other duties.  He was being paid off the bottom line.

7.     Boyle soon learned the commissions, overages and bonuses at Evolve Bank were being withheld, awarded and/or manipulated contrary to law.  Boyle did not like the situation.

8.     Tommy Taylor, CEO of the Evolve Mortgage Division, a division of Evolve Bank, decided upon a plan to manipulate the commissions, overages and bonuses such as to hide the illegal payments, from regulators, namely the money being paid on overages charged to customers, and to hide the money trail on a per transaction basis, contrary to law.

9.     On or about December 19, 2012, Boyle informed Brent Bousson (head of HR) and Jason Brown (in-house legal counsel for Evolve Financial) that they needed to straighten out how commissions, overages and bonuses were being paid, that this situation was illegal.  They took no action at that time to correct the situation.  Then on or about December 28, 2012, upper management, believed to include Tommy Taylor, Jason Brown, Scott Stafford, Scott Lenoir and John Chandler, changed how overages were to be paid, by taking the previous quarter's overages and paying them over a three-month period as salary.  Said plan again was in violation of Fair Lending laws, the Consumer Financial Protection Act of 2010 ("CFPA") 12 U.S.C.

3

§5536, and the Dodd-Frank Act, (the Wall Street Reform and Consumer Protection Act of 2010), H.R. 4173, especially Title XIV, which amended (Reg. "Z") (Truth in Lending Act).   See Mortgage Reform and Anti-Predatory Lending Act, §1403 (Prohibition on Steering Incentive) from Dodd-Frank.   Regulation "Z" governs how compensation of loan originators and managers can be paid, 12 U.S.C. Part 226; 12 C.F.R. 1026.36.  Said regulation was in effect by April, 2011.

10.   Boyle again complained, this time to Jeff Kuehn, President of Evolve Mortgage.   Kuehn did nothing.   Neither did Evolve Mortgage, Evolve Financial, Evolve Bank & Trust or Evolve Financial Group, Inc.

11.   During the course of the last 12 months of his employment at Evolve, Boyle learned that Evolve was requiring branch managers to make personal contributions of capital into Evolve's reserve account in violation of FHA and net branch guidelines, thus violating HUD guidelines.   Boyle was not such a manager because he was assigned to the "home" office.   But he became well aware that Evolve was intentionally finding ways to thwart legal requirements, and to place the economic burdens of expanding Evolve's mortgage business on its employees.

12.   Within thirty (30) days of learning how Evolve had violated loan originators' pay, and telling the management at Evolve of the illegal transactions, on or about January 31, 2013, Boyle was demoted to a loan officer position.   He was "invited" to stay with the company.   But when Boyle got back to his office, his access to his computer had already been cut off.   Boyle accepted the demotion, in part because he had family issues and personal problems.   The demotion was in retaliation for his persistent refusal to remain silent about illegal activities.   Said

4

demotion is a breach of contract, and a violation of the implied duty of good faith and fair dealing.

13.     At all relevant times Boyle had been an excellent employee of Evolve.  He was producing more volume than the average loan originator, even while he served as manager, having other duties.  In 2011, his volume of sale was approximately Forty Million ($40,000,000.00) Dollars.

14.     Said demotion was retaliatory, solely because Boyle had complained to his supervisors about illegal activities and his refusal to remain silent.  Boyle had made it clear to Evolve that he would not remain silent about illegal activities.  Boyle had told Tommy Taylor repeatedly that he needed to do the right thing.  But Taylor made no changes.

15.     By the Monday following demotion, Boyle was told he had to testify at a deposition on behalf of Evolve regarding a lawsuit pending in the federal district court in Memphis, Civil Action No. 12-02384.  He was "prepped" by Evolve attorneys on how to give a deposition.

16.     Boyle gave his deposition and answered truthfully.

17.     Thereafter he worked as a loan officer (originator) under the supervision of Chad Irwin, Branch Manager.  Boyle had recruited Irwin, and had trained Irwin in Evolve business practices.   Reporting to Irwin was difficult, and embarrassing to Boyle.   Boyle's loans had to be approved by Irwin, even to go to underwriting.  Tommy Taylor had been manipulating underwriting to expedite loans as he wished, and forcing other loans to expire or become stale.  The effect was devastating on loan originators, including Boyle, and ultimately on the consumers.

18.    From the time that Boyle complained initially to Bousson and Brown, and later to Kuehn, he had been working in a severe and pervasive hostile work environment.   The demotion was demeaning and embarrassing.   Boyle had been encountered by Kuehn, Bousson and Taylor repeatedly.   On October 3, 2012, he was asked why he did not just work as a loan originator – they tried to talk Boyle out of being a manager.   Boyle told them he did not wish to be demoted, but after his repeated complaints of illegal activities, he was demoted on January 31, 2013.

19.    Throughout the fall of 2012, until his demotion in late January, 2013, Boyle was required to discipline employees, including to terminate them.   Boyle was doing so at the express direction of Taylor.   Boyle complained to Taylor and Bousson about the lack of clear objective guidelines, such as when performance/loan volume had shrunk to a certain level for an employee.   Instead, persons were being fired based on the subjective decisions of Taylor and Bousson.

20.    Taylor (CEO of Evolve Mortgage Division) was not allowed by law to originate loans.   But he would attribute loans to originators, then would receive partial commissions in the form of bonuses.   This practice was illegal under Dodd-Frank.   Taylor knew better.   It was no secret at Evolve that Taylor was originating loans and being paid as a result.

21.    Evolve provided no continuing education for its loan originators.   By 2010, the regulations governing mortgages in general, especially government-backed loans, were changing.   There were several different Acts which directly impacted the mortgage banking business, and especially loan originating.   Plaintiff alleges that failure to keep its loan originators informed and adequately trained allowed Evolve to

6

persist in violating said laws, which were intended to provide fair lending practices to American consumers, for truth in lending, and for prohibiting unfair payment practices for loan originators and managers.  Regulation "Z" of the Truth in Lending Act came into effect as of April, 2011.  The Dodd-Frank Act, H.R. 4173, a mammoth revision of many laws, including SEC (Wall Street Reform) and consumer lending, included Title XIV, entitled "the Mortgage Reform and Anti-Predatory Lending Act," of which Section 1403 dealt with "Prohibition on Steering Incentives" was enacted. The Home Mortgage Disclosure Act ("HMDA"), which seeks to protect unfair and discriminatory practices based on race, sex, and marital status, etc., and which require record-keeping and reporting to the government agency, even as to conventional loans not backed by the government impacted Evolve and its originators.

22.    Before the recent mortgage crisis, loan originators often steered their "clients" (consumers) into mortgages with terms that were less favorable to the consumer but more profitable for the loan originator.  To stop this practice, the Federal Reserve Board amended Regulation Z, 12 U.S.C. Part 226, to prohibit certain compensation schemes for loan originators.  Its implementation date was April 6, 2011. See 12 C.F.R. §1026.36 (a)(l)(i).  A violation of the compensation rule under Regulation Z is a violation of Section 1036 of the Consumer Financial Protection Act of 2010 ("CFPA"), 12 U.S.C. §5536(a)(1)(A).

23.    It is a violation of Regulation Z and thus the CFPA for a mortgage company to pay its loan officers guarterly bonuses in amounts based on terms or conditions of the loans they close, or to otherwise incentivize loan officers to steer

consumers into mortgages with less favorable terms; these practices are prohibited by the "Compensation Rule" under Regulation Z.

24.   The various statutes and regulations relied on by Plaintiff cited herein, evidence a clear public policy which is unambiguous, and intended to protect the public, i.e. consumers, from predatory mortgage practices such as steering of mortgages.   The importance of these Acts (including Dodd-Frank Act, Truth in Lending Act, the Home Mortgage Disclosure Act (HMDA) and the Mortgage Reform and Anti-Predatory Lending Act) cannot be overstated.   The stated purpose was to prevent further collapse of the American financial system, which had been devastated by the 2009-2010 economic collapse attributed to the mortgage industry and its abuses.

25.   Evolve directed Boyle to originate some Twenty Million Dollars in loans, but Boyle was paid only a partial commission on these loans.   On some he received nothing.   The monies which should have been paid to Boyle were given to the branches.   At the time the branches were not yet able legally to originate loans.   This practice was planned and developed by Taylor, and Jason Brown, who well knew that Boyle was supposed to be paid not less than 1% of all loans on which he served as originator.   Said miss-payment was intentional and was a breach of contract.

26.   By the time of Boyle's demotion, other employees avoided any contact with him.   It was like he had a target on his back.   Brent Bousson, head of Human Relations, told Boyle he was being demoted because he "made too much money." Bousson was insulting to Boyle, as were Taylor and Brown.   The hostile environment was intensifying.

27.   At the same time Taylor started promising Boyle that he was purportedly going to make him manager, but needed Boyle's help to get rid of Jeff Kuehn.  Boyle knew he was being manipulated, but did not yet understand why.

28.   Throughout the winter and spring of 2012-2013, Boyle was feeling increasingly threatened.  He understood that Evolve could and would blemish his reputation, which would make it difficult for him to get a good job in the mortgage industry.  Despite the actions taken by management against him, Boyle kept complaining about the illegal activities.

29.   The actions taken by Taylor, Bousson, Stafford, Lenoir, Brown, Chandler, and others thus were continuing over a long period of time, and on a daily basis.  Their actions were intentional and malicious, sufficient to cause a reasonable person to exclaim outrage.  Boyle had stayed in the pressure cooker at the offices of Evolve for well over three years, enduring numerous acts of harassment, overt and some not so overt.   The effects of the stress and harassment on Boyle are tremendous.  He has trouble sleeping at night.  He has suffered a recurrence of severe sleep apnea.  He found himself gaining weight.  He now suffers from grinding of teeth, which has been diagnosed as  "TMJ" (tempero mandibular joint syndrome).  Food became his source of solace.  He now suffers from gastric reflux.  He has stayed upset, and angry.  He feels he has lost control over his life and his career, and his financial security has evaporated.  The acts taken against Boyle were not minor trivialities or annoyances.  The emotional and physical changes to Boyle have been devastating and profound.  His very life was threatened.  His ability to support his family was totally at risk.

9

30.   Pressure was building for Boyle.  On the morning of May 21, 2013, he learned that the previous day Evolve and the plaintiff's attorney in the Memphis case had deposed Virginia Green, former head of Evolve Mortgage, and that a lot of the questions were about Jayme Boyle and his plans for future employment.  Boyle felt exposed and betrayed.  He resigned that night.

31.   Evolve knew of the hostile environment being experienced by Boyle and failed to take steps to stop it.  Evolve knew that Boyle was refusing to remain silent about illegal violations of statutes and regulations governing the mortgage industry.  Evolve knowingly permitted the difficult or unpleasant working conditions to exist.  Said conditions became so intolerable to Boyle that a reasonable person subject to such conditions would resign.

32.   Based on the intolerable working conditions, based upon his knowledge of the mortgage industry, and based upon his growing knowledge of Evolve's shady business practices, Boyle reasonably decided he had no choice but to resign.  His resignation was not voluntary, it was exclusively and solely due to his failure to remain silent about the continuing and overt violations of federal laws governing the mortgage business, especially steering of mortgages, illegal bonusing to managers and loan originators, and manipulating minimum reserves by branch managers by unwarranted salary increases.  He could take no more.  The working conditions were utterly intolerable.  He resigned by email, sent to Evolve on May 21, 2013 at 1:00 a.m.

33.   Thus Jayme Boyle, an employee of Evolve, was forced to resign solely on account of his unwillingness to remain silent about the illegal practices and policies

at Evolve which violated the Consumer Protection Act, the Home Disclosure Mortgage Act, especially HMDA, Regulation Z, and the Dodd-Frank Act, as set forth herein.   Said Acts evidence a strong public policy intended to protect American consumers from avaricious lending practices, including steering of loans and improper bonuses and overages, as in the instant case.

34.   Boyle has sustained significant wage losses due to said constructive discharge, including loss of commissions, loss of stock options, salary, benefits and overtime; also due to the breach of contract.   He has incurred physical pain and suffering, emotional pain and suffering and other injuries, including damage to his reputation.

35.   The acts and omissions of Evolve's principals and agents have been malicious, knowing and intentional.   Hence an award of punitive damages is merited.

### III.  <u>CAUSES OF ACTION</u>

36.   Plaintiff incorporates paragraphs 1 through 35 as if set forth fully herein.

37.   Based on the foregoing, Plaintiff states a claim for:

(a)   Breach of employment contract;

(b)   Intentional infliction of emotional distress;

(c)   Retaliatory or wrongful discharge, in violation of T.C.A. §50-1-304, which prohibits discharge or termination solely for refusing to participate in, or for refusing to remain silent about, illegal activities; and

(d)   retaliatory discharge:  common-law cause of action.

## IV.  **PRAYER FOR RELIEF**

Plaintiff hereby demands relief as follows:

1. Issue process as prayed for;

2. Judgment for compensatory damages including loss of wages, commissions, and other monetary damages and for physical and emotional pain and suffering post, present and future in the sum of $2.5 Million Dollars;

3. Punitive damages in the sum of $2.5 Million Dollars;

4. Jury demanded; and

5. Other relief as may be deemed appropriate.

Respectfully submitted,

KATHLEEN CALDWELL, PLLC

By:_____
        Kathleen L. Caldwell, #9916
        2670 Union Avenue Ext., Site 110
        Memphis, TN 38112
        Telephone:  (901) 458-4035
        Facsimile:   (901) 458-4037
        kathleencaldwell.attorney@gmail.com
        *Attorney for Plaintiff*

12

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been electronically filed and served electronically to the following:

**Robert L. Crawford, Esq.**
**Odell Horton, Jr., Esq.**
**Kathryn K. Van Namen, Esq.**
**Wyatt Tarrant & Combs, LLP**
**1715 Aaron Brenner Drive, Suite 800**
**Memphis, TN 38120-4367**

This _____ day of August, 2014.

_____
Certifying Attorney

13

CIRCUIT COURT OF SHELBY COUNTY, TN FILING

# 10

ELECTRONICALLY FILED
2014 Aug 21 AM 11:00
CLERK OF COURT - CIRCUIT

**IN THE CIRCUIT COURT OF SHELBY COUNTY, TENNESSEE**
**FOR THE THIRTIETH JUDICIAL DISTRICT AT MEMPHIS**

**JAYME BOYLE,**

     **Plaintiff,**

**v.**                              **DOCKET NO:  CT-002249-14**
                                          **Division IV**

**EVOLVE BANK & TRUST, and**
**EVOLVE FINANCIAL GROUP, INC.,**

     **Defendants.**

---

**PLAINTIFF'S MEMORANDUM OF LAW IN**
**OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

---

Plaintiff submits his Memorandum of Law in Opposition to Defendants' Motion to Dismiss and states as follows:

## I.  INTRODUCTION

Plaintiff filed his original Complaint against Evolve Bank & Trust, and Evolve Financial Group, Inc., on May 20, 2014.  The Complaint alleges causes of action as follows:

    a)     Breach of employment contract;

    b)     Intentional infliction of emotional distress; and

    c)     Retaliatory or wrongful discharge in violation of T.C.A. §50-1-304 (the Tennessee Public Protection Act).

Defendants maintain that said Complaint fails to state a cause of action upon which relief can be granted.  For the reasons set forth below, the Amended

1

Complaint as filed survives Defendants' Motion to Dismiss, and states claims as set forth above.

Plaintiff has filed a Motion for Leave to Amend his Complaint.  A proposed Amended Complaint has been submitted, attached to his motion.  This Memorandum is based upon the Amended Complaint.

Most of Defendants' arguments are based on allegations that Plaintiff resigned, and therefore has no claim against Defendants.  As the Amended Complaint clearly states, Plaintiff's resignation was "not voluntary." He "could take no more."  ¶¶32, 33.  Hence this is a constructive discharge.

## II.  <u>FACTUAL BACKGROUND</u>

Plaintiff relies on his allegations, clearly set forth in his Amended Complaint.

Defendants insert into their argument for dismissal certain impermissible allegations, including allegations that Plaintiff "failed to perform to Evolve's standards and put forth very poor effort."  As will be established below, a motion to dismiss requires the court to examine only the plaintiff's complaint.  There is no examination of the defendant's responsive pleadings.  It would be a substantial error of law to consider the allegations set forth by Defendants herein.

Plaintiff's Amended Complaint sets forth sufficient allegations of fact, not merely conclusory allegations, as to each required element of his causes of action. Moreover, Plaintiff's original Complaint is sufficient as a matter of law to survive Defendants' Motion to Dismiss under Rule 12.02(6).

### III. <u>APPLICABLE STANDARD OF LAW ON MOTIONS TO DISMISS</u>

Tennessee Rules of Civil Procedure, Rule 12.02(6) provides in relevant part as follows:

> ...the following defenses may at the option of the pleader be made by motion in writing: ...(6) failure to state a claim upon which relief can be granted...

In 2011, the Tennessee Supreme Court issued its leading decision concerning motions to dismiss, and the proper standard for Tennessee courts to apply in ruling on a Rule 12.02(6) motion, namely <u>Webb v. Nashville Area Habitat for Humanity, Inc.</u>, 346 S.W.3d 422 (Tenn. 2011).

The <u>Webb</u> decision decisively rejected the "plausibility" standard which has now been adopted by the federal courts.   <u>Webb</u>, 346 S.W.3d at 425, 430; <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 127 S. Ct. 155, 167 L.Ed 2d 929 (2007); and <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 129 S. Ct. 1937, 173 L.Ed. 2d 868 (2009).

The Tennessee Supreme Court relied in part on Tennessee Rules of Civil Procedure, Rule 8.01, which requires that a pleading for relief "shall contain (1) a short and plain statement of the claim showing that the pleader is entitled to relief, and (2) a demand for judgment for the relief the pleader seeks."  And the court relied on Rule 8.05(1), which provides in relevant part as follows:  "Each averment of a pleading shall be simple, concise and direct.   No technical forms of pleadings or motions are required..."

There are numerous relevant findings from <u>Webb</u>, including:

> "A Rule 12.02(6) motion challenges only the legal sufficiency of the complaint, not the strength of the plaintiff's proof or evidence." <u>Webb</u> at 426.

3

"The resolution of a 12.02(6) motion to dismiss is determined by an examination of the pleadings alone." Id.

"A defendant who files a motion to dismiss 'admits the truth of all of the relevant and material allegations contained in the complaint, but...asserts that the allegations fail to establish a cause of action.'" Id, quoting Brown v. Tenn. Title Loans, Inc., 328 S.W.3d 850, 854 (Tenn. 2010) and others.

"In considering a motion to dismiss, courts 'must construe the complaint literally, presuming all factual allegations to be true and giving the plaintiff the benefit of all reasonable inferences.'" Id., quoting Tigg v. Pirelli Tire Corp., 232 S.W.3d 28, 31-32 (Tenn. 2007) and others.

"A trial court should grant a motion to dismiss 'only when it appears that the plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to relief.'" Id., quoting Crews v. Buckman Labs, Int'l, Inc., 78 S.W.3d 852, 857 (Tenn. 2002); Trau-Med of America v. Allstate Ins. Co., 71 S.W.3d 691, 696 (Tenn. 2002).

"A complaint 'need not contain detailed allegations of all the facts giving rise to the claim,' but it 'must contain sufficient factual allegations to articulate a claim for relief.'" Id., quoting Abshure v. Methodist Healthcare-Memphis Hosps., 325 S.W.3d 98, 103-04 (Tenn. 2010). "The facts pleaded...must raise the pleader's right to relief beyond the speculative level." Id.

The new federal standard is a heightened standard, which in essence reads "plausible" into the rules: "failure to state a [plausible] claim upon which relief can be granted." Webb, 346 S.W.3d at 432. It therefore "incorporates an evaluation and

determination of likelihood of success on the merits – a judicial weighing of the facts." Id., at 431-432.

In Webb the Tennessee Supreme Court rejected the Twombly/Iqbal plausibility standard for several reasons, including that it "conflicts with the strong preference embodied in the Tennessee Rules of Civil Procedure that cases stating a valid legal claim brought by Tennessee citizens be decided on their merits." Id., at 432.   The Webb court was also concerned that such a rule raises concerns "implicating the Tennessee constitutional mandate that 'the right of trial by jury shall remain inviolate.'" Id., quoting Tenn. Const. art. I, §6.

In Webb the Court was also concerned that the distinction between a "fact" and a "conclusion" is fine, blurry, and hard to detect.   Id.   Thus the arguments arising from a Twombly/Iqbal analysis often focus on whether the complaint contains conclusory allegations. Webb, 346 S.W.3d at 434.

Lastly, Webb reflects concern from the Tennessee Supreme Court that the Twombly/Iqbal approach will disproportionately impact civil rights and employment discrimination cases. Id., at 435.

Webb is the leading case on point.  It remains good law.  It has recently been followed in other decisions:   Cullum v. McCool, 2013 Tenn. LEXIS 1006 (Tenn. December 18, 2013) copy attached hereto; Tennison Bros. v. Thomas, 2014 Tenn. App. LEXIS 479 (Tenn. App. August 6, 2014), copy attached hereto; Ostendorf v. Fox, 2014 Tenn. App. LEXIS 410 (Tenn. App. July 16, 2014), copy attached); and Davis v. Covenant Presbyterian Church, 2014 Tenn. App. LEXIS 361 (Tenn. App. June 23, 2014), copy attached.

## LAW AND ARGUMENT

A.  Boyle's Claim Under the Tennessee Public Protection Act Does Not Fail as a Matter of Law Because He Resigned From Evolve and Was Constructively Discharged for Refusing to Remain Silent About Illegal Activities.

Plaintiff asserts that Defendant' arguments concerning reasons why Evolve made decisions is entirely improper under a Rule 12.02(6) analysis.  As set forth herein, a defendant who files a motion to dismiss is admitting (for the purposes of the motion) the truth of all of the relevant and material allegations in the complaint. The issue then becomes whether the complainant's allegations establish a cause of action.  Webb, 346 S.W.3d at 426.  Thus this court should refuse to consider any arguments proffered by Defendants about legitimate, non-retaliatory reasons given by Evolve for its actions, or whether Boyle's performance was sub-par.

There are two types of retaliatory discharge involved in the instant case.  One is statutory, pursuant to the Tennessee Public Protection Act ("TPPA"), Tenn. Code Ann. §50-1-304 et seq.  The other is a claim of common-law retaliatory discharge. Plaintiff Jayme Boyle asserts both causes of action.

To prevail under the TPPA, a plaintiff must show the following:

1) Plaintiff is an employee of the defendant employer;

2) Plaintiff has refused to participate in, or remain silent about "illegal activities" as defined by the Act;

3) Plaintiff was terminated; and

4) An exclusive causal relationship between his refusal to participate or remain silent and his termination.  Tenn. Code Ann. §50-1-304; Franklin v. Swift Transp. Co., 210 S.W.3d 525, 528 (Tenn. App.

6

2006); <u>Webb</u>, 346 S.W.3d at 437-38.

An "illegal activity" under the TPPA is defined as follows:  "activities that are in violation of the criminal or civil code of this state or the United States or any regulation intended to protect the public health, safety or welfare."  Tenn. Code Ann. §50-1-304(a)(3).

Under the common-law claim of retaliatory discharge, a plaintiff must show:

1)   Plaintiff is an at-will employee of the Defendant employer;

2)   That Plaintiff was discharged;

3)   That the reason for his discharge was that he attempted to exercise a statutory or constitutional right, or for any other reason which violates a clear public policy evidenced by an unambiguous constitutional, statutory, or regulatory provision; and

4)   And that a substantial factor in the employer's decision to terminate him was his exercise of protected rights or his compliance with clear public policy.  <u>Franklin</u>, 210 S.W.3d at 528; <u>Crews v. Buckman Laboratories Int'l, Inc.</u>, 78 S.W.3d 852, 862 (Tenn. 2002); <u>Webb</u>, 346 S.W.3d at 438.

In the <u>Franklin</u> case, the Court of Appeals held further that "under both the Tennessee Public Protection Act and the common-law," there must be a fundamental public policy concern or an important public policy interest embodied in the law. <u>Franklin</u>, 210 S.W.3d at 533; <u>Vancleave v. Reelfoot Bank</u>, 2009 Tenn. App. LEXIS 724 (Tenn. App. October 30, 2009), copy attached, p. 26.

As several decisions have explained the main difference between the statutory cause of action and the common-law cause of action is that under the TPPA, the plaintiff must show an <u>exclusive</u> causal relationship.  Under the common-law, a plaintiff need only show that his refusal to remain silent was a "substantial factor"

7

in the termination.  Vancleave, 2009 Tenn. App. LEXIS 724, p. 27.

To apply this law to the instant case:

1.     Plaintiff was an employee of Evolve Mortgage Services/Evolve Banking Group, Inc./Evolve Bank & Trust.   He was re-employed in April, 2009.   See Amended Complaint, ¶¶3-6.

2.     Plaintiff refused to remain silent about illegal activities involving steering of mortgages and improper commissions, overages and bonus practices of his employer, and its management.  See Amended Complaint, ¶¶9, 10, 14.

3.     Plaintiff was terminated – here Plaintiff asserts he was constructively discharged solely on account of his complaints to his supervisors about illegal activities.  See Amended Complaint, ¶¶12, 14, 18, 32, 33.

4.     The exclusive cause of his constructive discharge was:  the intolerable working conditions which resulted from his refusing to remain silent about illegal activities – or in the alternative, that his refusal to remain silent about illegal activities was a substantial factor in his constructive discharge.   See Amended Complaint, ¶¶32, 33.  Certainly Plaintiff asserts that his refusal to remain silent was a "substantial factor" in his constructive discharge.

Plaintiff asserts that his Amended Complaint fully satisfies the pleading requirements under Tennessee law and state claims for retaliatory discharge under TPPA and under common-law.

Defendants suggest that Boyle was not discharged, and cannot meet elements 2/3, as set forth above.  This issue was resolved in the case of Crews v. Buckman Labs, Int'l, Inc., 78 S.W.3d 852, 865-866 (Tenn. 2002), in which the Tennessee

8

Supreme Court held that "allegations of a constructive discharge are generally sufficient to establish the element of termination under a common-law action for retaliatory discharge."

In Webb, the leading case on Rule 12.02(6) motions to dismiss, the Tennessee Supreme Court was dealing with a case factually on point to the instant case. The appellee/plaintiff had filed a retaliatory discharge action against her employer under TPPA and the common-law. After an extensive discussion on Tennessee law involving motions to dismiss, and after rejecting the federal "plausible" standard, the Webb Court looked to the plaintiff's complaint, which summarily alleged only: "...that she was an employee of Habitat who was terminated for her complaints regarding, and unwillingness to implement, participate in or remain silent about discriminatory and illegal policies that Habitat's management requested staff members to implement." The complaint made specific reference to Tenn. Code Ann. §50-1-304 (TPPA). The Court then found that the complaint (as amended) was sufficiently plead to state a legal cause of action, "while not a model of pleading." In the instant case, Jayme Boyle's complaint is far more specific, and this Court should find he has stated causes of action for retaliatory discharge.

The Harman case relied on by Defendants is not on point. It concerns a university department head who lost his department position but remained employed as a professor. Harman v. University of Tenn, 353 S.W.3d 734 (Tenn. 2011). This is not the same as the constructive discharge of Jayme Boyle, which was a complete severance of the employment relationship and which was occasioned by the wrongful acts of hostility and oppression due to Boyle's refusal to remain

9

silent about illegal activities.  For the very same reasons, the case of <u>Howard v. Life Care Centers of America, Inc</u>., No. E2004-00212-COA-R3-CV, 2004 WL 1870067 (Tenn. App. August 20, 2004) is not factually on point.  In the <u>Howard</u> case, the plaintiff was neither discharged nor terminated.

Lastly, Evolve now argues about "accommodations" offered to Boyle, "even though he failed to properly perform as the internet lending manager."  Such arguments must be ignored by this Court under a proper Rule 12.02(6) analysis.  The proper issue is what does the complaint allege.  Defendants admit the truth of Plaintiff's allegations for the purpose of the instant motion.  Their defenses are immaterial.

Defendants next argue that Boyle cannot demonstrate the existence of illegal activities.  Such is not the case.  Boyle has set forth in detail the statutes, and regulations being violated by Evolve, and has alleged the violations concerning steering of mortgages, and paying quarterly bonuses based on overages, both practices being violations of Regulation Z, and the Dodd-Frank Act.  See Amended Complaint, ¶¶7, 8, 9, 11, 17, 20, 21, 32, 33.

Plaintiff's allegations are not "veiled."  They are highly specific, and certainly adequate to put the Defendants on notice, which is all that Tennessee law requires of a plaintiff.

Boyle moreover has alleged that the sole and exclusive cause for his constructive discharge was Evolve's treatment of him because he refused to remain silent about illegal practices.  See Amended Complaint ¶¶32, 33.  This is not the time for Boyle to prove his case.  He has met the pleading standards.

This court should disregard Evolve's argument about warnings to Boyle of poor performance, or legitimate, non-retaliatory reasons for its actions.  All of those things are irrelevant at the motion to dismiss stage.  It is likewise premature to require a plaintiff to "demonstrate" the elements of his claims.  The question for the court is whether the complaint, on its face, states a claim.  Boyle's Amended Complaint does state its claims, and this court should deny the instant motion.

Finally, Evolve relies on <u>Griggs v. Coco-Cola Employees' Credit Union</u>, 909 F. Supp. 1059 (E.D. Tenn. 1995).  <u>Griggs</u> is not helpful to the court, because it is a summary judgment case.  Said case holds that a violation of Tenn. Code Ann. §50-1-304 requires a plaintiff to demonstrate that the discharge was solely for refusing to participate in or for refusing to remain silent about illegal activities.  But that is not true regarding a motion to dismiss under 12.02(6).  There is no burden of proof or persuasion for Boyle at this time.  His allegations are sufficient.  Whether Boyle's dissatisfaction with his employment played a part in Evolve's decisions is irrelevant at this point in time.  This court cannot listen to any argument about legitimate, non-retaliatory reasons for Evolve's actions.

Based on the foregoing, this court should deny Evolve's Motion to Dismiss based upon retaliatory discharge, under the TPPA and under common-law.

B.   <u>Boyle's Claim for Breach of Contract Survives</u>.

This case is very different from most actions, based on contract, because Boyle does not have copies of the several contracts he entered into with Evolve.  See Amended Complaint, ¶4.

Boyle has asserted that the contractual relationship between Evolve and Boyle

11

has an implied duty of good faith and fair dealing.  See Amended Complaint, ¶4.

The Complaint alleges that Evolve breached the contract(s) with Boyle.  See Amended Complaint, ¶¶12, 25, 34.

Boyle agrees that his contract(s) were for an indefinite period.  He was an at-will employee.  But an employer of an at-will employee has the affirmative duty to its employee, and must act in good faith and in a spirit of fair dealing.  Evolve did not.  It breached its contract with Boyle in many ways, including the illegal activities, the improper payment of money due to Boyle, the withholding of earnings to Boyle, the wrongful demotion, and the eventual constructive discharge, exclusively and solely a result of Evolve's wrongful conduct in violation of the duty of good faith and fair dealing.  Dick Broad Co. v. Oak Ridge FM, Inc., 395 S.W.3d 653 (Tenn. 2013).

Again, Evolve wants this Court to listen to its allegations of poor performance by Boyle, a wholly improper argument.

For the above reasons, the breach of contract cause of action should not be dismissed.

C.    Boyle's Claim for Intentional Infliction of Emotional Distress Survives.

Defendants have recited correctly the three essential elements of a cause of action for intentional infliction of emotional distress.

Defendants' argument principally fails because it once again argues about what statements or evidence Boyle produces to support his claim.

The Amended Complaint is adequate to allege the fact.  The conduct alleged was indeed atrocious.  No reasonable person in the shoes of Boyle would have failed to exclaim outrage over the misconduct of Evolve, and its managers.  The injuries,

physical and emotional, to Boyle are profound.

In sum, there is no basis in law to dismiss the claim for intentional infliction of emotional distress under a roper Rule 12.02(6) inquiry.

## **CONCLUSION**

For all the above reasons, Defendants' Motion to Dismiss should be denied in its entirety.

Respectfully submitted,

KATHLEEN CALDWELL, PLLC

By:_____

Kathleen L. Caldwell, #9916
2670 Union Avenue Ext., Suite 110
Memphis, TN 38112
Telephone:  (901) 458-4035
Facsimile:   (901) 458-4037
kathleencaldwell.attorney@gmail.com
*Attorney for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been
electronically filed and electronically available to the following:

**Robert L. Crawford, Esq.**
**Odell  Horton, Jr., Esq.**
**Kathryn K. Van Namen, Esq.**
**Wyatt Tarrant & Combs, LLP**
**1715 Aaron Brenner Drive, Suite 800**
**Memphis, TN 38120-4367**

This_____ day of August, 2014.    _____

Certifying Attorney

13

CIRCUIT COURT OF SHELBY COUNTY, TN FILING

# 11

ELECTRONICALLY FILED
2014 Sep 02 PM 4:37
CLERK OF COURT - CIRCUIT

## IN THE CIRCUIT COURT OF SHELBY COUNTY, TENNESSEE
## FOR THE THIRTIETH JUDICIAL DISTRICT AT MEMPHIS

JAYME BOYLE,

      **Plaintiff,**

**v.**                                                                      No. CT-002249 -14

EVOLVE BANK & TRUST, and
EVOLVE FINANCIAL GROUP, INC.,

      **Defendants.**

### DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION TO AMEND AND REPLY TO PLAINTIFF'S RESPONSE IN OPPOSITION TO MOTION TO DISMISS

Defendants, Evolve Bank & Trust and Evolve Financial Group, Inc. ("Evolve"), submit the following Memorandum of Law in Opposition to Plaintiff's Motion to Amend and in Reply to Plaintiff's Response in Opposition to Evolve's Motion to Dismiss. Evolve adopts by reference and reiterates its arguments set forth in its Memorandum of Law in Support of its Motion to Dismiss.

### I.     INTRODUCTION

Evolve objects to Plaintiff's belated attempt to rewrite and reconstruct his lawsuit against Evolve. Despite Plaintiff's attempt to amend his Complaint to avoid Evolve's Motion to Dismiss, the claims asserted in Plaintiff's proposed Amended Complaint still fail to state a cause of action upon which relief can be granted, and should therefore be dismissed.

Plaintiff's Motion to Amend should be denied because both the original Complaint and the proposed Amended Complaint fail to show Jamie Boyle ("Boyle" or "Plaintiff") was

terminated or constructively discharged under Tennessee statutory and common law.  Plaintiff was an employee-at-will and thus, was not entitled to continued employment.  Accordingly, Evolve did not breach any employment contract with Plaintiff.  Plaintiff's proposed Amended Complaint also fails to adequately demonstrate appropriate claims for intentional infliction of emotional distress.  Plaintiff's Motion to Amend should be denied, and as previously set forth in Evolve's Memorandum of Law in Support of its Motion to Dismiss, Plaintiff's deficient Complaint should be dismissed with prejudice, with costs assessed against Plaintiff.

## II.    FACTUAL BACKGROUND

Evolve adopts and incorporates by reference the facts as set forth in the Memorandum of Law in Support of its Motion to Dismiss.    For the Court's convenience, they are summarized and reiterated herein.

Boyle was first employed with Evolve from August 2005 until March 2008 as a loan originator.  [See Complaint, ¶ 3.]  He briefly left Evolve to work elsewhere.  [Id. at ¶ 3.]  In April 2009, Evolve offered employment to Boyle as a loan originator at its Loan Production Office.  [Id. at ¶ 4.]  Boyle willingly returned to enter into an employment relationship with Evolve.  [Id. at ¶ 5.]  The terms of the offer detailed a commission-based compensation, with a $5,000 recoverable draw for three (3) months to be applied against the commissions.  [Id.]  The employment contract(s) between Boyle and Evolve did not set out a definite term for employment.  [Id. at ¶ 4.]  Boyle was an at-will employee of Evolve.  [Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Dismiss, p. 12.]

In 2010, Boyle served as a loan compliance manager for Evolve's Memphis Loan Production Office with Jeff Kuehn ("Kuehn").  [Complaint, at ¶ 6.]

In January 2013, for various legitimate reasons, Evolve's executives offered Boyle an opportunity to continue employment as a loan originator. [Id. at ¶ 12.] Ultimately, Boyle tendered his resignation on Monday, May 21, 2013, via email, at approximately one o'clock in the morning. [Id. at ¶ 25].

On May 20, 2014, Boyle filed his Complaint for breach of contract, intentional infliction of emotional distress, and retaliatory and/or wrongful discharge, including violation of the TPPA. [See Complaint generally]. Evolve filed a Motion to Dismiss pursuant to Rule 12.06 of the Tennessee Rules of Civil Procedure on June 23, 2014. Two months later, Plaintiff now seeks to amend his Complaint, alleging the same facts and only adding a common law retaliatory discharge claim, which requires the same elements as a statutory retaliatory discharge claim. Despite filing his Motion to Amend with the Court, Plaintiff has failed to properly serve Evolve with a copy of his Motion to Amend.[1]

### III.    LAW AND ANALYSIS

Tennessee Rule of Civil Procedure 15.01 permits litigants to amend their pleadings "when justice so requires." Tenn. R. Civ. P. 15.01 (2014). Although permission to amend may be liberally granted, the decision of whether to permit an amendment to a pleading is not without qualification and is entirely within the sound discretion of the trial court. Welch v. Thuan, 882 S.W.2d 792, 793 (Tenn. Ct. App. 1994) (citing Wilson v. Ricciardi, 778 S.W.2d 450, 453 (Tenn. Ct. App. 1989)). Rule 15.01 should be interpreted in a way that mitigates any prejudice that the other parties to a lawsuit may suffer as a result of granting the amendment. Gardiner v. Word,

---

[1]    For purposes of a timely response, and without waiving the right to object based on improper service, Evolve obtained copies of Plaintiff's Response and Motion from the Court.

731 S.W.2d 889, 891 (Tenn. 1987). For this purpose, when deciding whether to grant a motion to amend, a court should consider the following factors:

(1)    undue delay in seeking the amendment;

(2)    lack of notice to the opposing party;

(3)    bad faith or dilatory motive of the moving party;

(4)    repeated failure by the moving party to cure deficiencies in earlier amendments;

(5)    futility of the proposed amendment; and

(6)    undue prejudice to the opposing party.

Foman v. Davis, 371 U.S. 178, 182 (1962); Merriman v. Smith, 599 S.W.2d 548, 559 (Tenn. Ct. App. 1979). The most important factor at issue in the present case is the futility of the proposed amendment. Evolve previously demonstrated substantial grounds for dismissal. Plaintiff's proposed Amended Complaint likewise fails to demonstrate sufficient facts to survive Evolve's Motion to Dismiss, and as such, is futile. Furthermore, allowing Plaintiff to amend would cause undue prejudice to Evolve.

As set forth in Evolve's Memorandum of Law in Support of its Motion to Dismiss, while courts must construe factual allegations in the Plaintiff's favor when reviewing a motion to dismiss, courts are not required "to give the same deference to conclusory allegations . . . [nor are they] required to accept as true the inferences to be drawn from conclusory allegations." Kincaid v. Southtrust Bank, 221 S.W.3d 32, 40 (Tenn. Ct. App. 2006). Both the original Complaint and proposed Amended Complaint are replete with sheer speculation and conclusory allegations. Accordingly, Plaintiff's Motion to Amend should be denied, and his Complaint should be dismissed.

**A.**   **Boyle's Claims Should be Dismissed and his Motion to Amend Should be Denied.**

Plaintiff's claims against Evolve should be dismissed, because they cannot survive the standard for a motion to dismiss.  In Tennessee, courts will dismiss a complaint that fails to state a viable claim even if all factual allegations therein are accepted as true.  Tenn. R. Civ. P. 12.02(6); Trau-Med of Am., Inc. v. Allstate Ins. Co., 71 S.W. 3d 691, 696 (Tenn. 2002).  While "great specificity is not ordinarily required to survive a motion to dismiss," a complaint must state the facts upon which a claim for relief is founded.  Smith v. Lincoln Brass Works, Inc., 712 S.W.2d 470, 471 (Tenn. 1986).  While the pleading standard in Tennessee is liberal, "minimal requirements are not tantamount to non-existent requirements.  The threshold may be low, but it is real – and it is the plaintiff's burden to take the step which brings his case safely into the next phase of the litigation."   Demers v. Whittenburg, No. M2003-00184-COA-R3-CV, 2004 WL 1196109, at *12 (Tenn. Ct. App. May 27, 2004).

A complaint must "do more than simply parrot the legal elements of the cause[s] of action, but must plead facts that, if true, would support each required element" of the causes of action.  Morris Props., Inc. v. Johnson, No. M2007-00797-COA-R3-CV, 2008 WL 1891434, at *1 (Tenn. Ct. App. Apr. 29, 2008).  Here,  Boyle failed to plead any particular facts in either the Complaint or proposed Amended Complaint sufficient to maintain an actionable claim against Evolve.  Instead, Plaintiff's Complaint and proposed Amended Complaint are merely a string of conclusory allegations that attempt to mirror the legal elements of the alleged causes of action.  As a result, Plaintiff's claims against Evolve should be dismissed and his Motion to Amend denied.

**B.**   **Plaintiff's Proposed Amended Complaint is Futile.**

In his proposed Amended Complaint, Plaintiff merely attempts to assert the same causes

of action against Evolve as previously alleged in his original Complaint. These claims are based on the same facts as the original statutory retaliatory discharge claim, and the facts are still insufficient to state a proper claim, since Plaintiff voluntarily resigned. Likewise, the breach of employment contract and intentional infliction of emotional distress claims would require the same basic showing of facts that were lacking in the original Complaint.

Plaintiff does not assert any new claims which were not known or should have been known at least by the time of the filing of the original Complaint. <u>Stratienko v. Chattanooga-Hamilton Cnty. Hosp. Auth.</u>, No. E2011-01699-COA-R3CV, 2013 WL 6155879 (Tenn. Ct. App. Nov. 21, 2013). The only additional cause of action is a common law retaliatory discharge claim, which contains the same elements as a statutory retaliatory discharge claim.

Thus, Boyle cannot recover against Evolve under any of the new allegations asserted in Plaintiff's proposed Amended Complaint. As a general rule, an amendment should be denied when granting the motion would be futile. <u>B & B Enter.</u>, 2007 WL 1062216, at *1 (citing <u>Forsythe v. Gibbs</u>, No. M2001-02055-COA-R3-CV at *5, 2002 WL 1869415 (Tenn. Ct. App. Aug. 15, 2002)). The Court should deny Plaintiff's Motion to Amend as futile, because the amendments will only prolong the litigation and will not lead to a contrary ultimate result.

1. **<u>Plaintiff's statutory and common law claims for retaliatory or wrongful discharge still fail as a matter of law.</u>**

Evolve adopts by reference and incorporates the arguments set forth in its Memorandum of Law in Support of its Motion to Dismiss.

a.   <u>Plaintiff has made no showing of a discharge.</u>

Boyle's original Complaint and proposed Amended Complaint fail to adequately demonstrate claims for either statutory or common law retaliatory discharge, because Plaintiff

has not alleged that he was, in fact, discharged from employment with Evolve. Both the original Complaint and proposed Amended Complaint clearly admit that Boyle *resigned*. [See Complaint, ¶ 25; proposed Amended Complaint, ¶ 30 (emphasis added).]

Boyle's retaliatory discharge claims under the Tennessee Public Protection Act (the "TPPA") and Tennessee common law fail as a matter of law because he was not discharged or terminated. The TPPA expressly provides that "no employee shall be *discharged* or *terminated* solely for refusing to participate in, or for refusing to remain silent about, illegal activities." Tenn. Code Ann. § 50-1-304(b) (West 2014) (emphasis added). Similarly, a claim for retaliatory discharge under the common law requires a showing that the plaintiff was *discharged*. Webb, 346 S.W.3d 422, 438 (Tenn. 2011).

The basic definitions of the words "discharge" and "terminate" are vastly different than the definition of the word "resign." As defined by Black's Law Dictionary, "resign" connotes to surrender or relinquish an office, right, claim, or position. See Black's Law Dictionary 618 (3rd ed. 2006). On the other hand, "discharge" means "the firing of an employee" and "termination" signifies "the act of ending something" or "the end of something." See Black's Law Dictionary 211, 712 (3rd ed. 2006). Plaintiff's Complaint and proposed Amended Complaint fail to state that Evolve made any overt act of ending the employment relationship with Boyle, as evidenced by Plaintiff's allegations that Evolve offered him alternative employment as a loan originator. [Complaint, ¶ 12.] Similarly, Evolve did not fire Boyle, as is required by the very definition of "discharge." According to the allegations of the Complaint, because Boyle resigned, he cannot establish the requisite elements for a claim of retaliatory discharge under either the TPPA or common law.

In his Response to the Motion to Dismiss, Plaintiff tries to argue that "Plaintiff was terminated" and "constructively discharged," which directly contradicts the facts alleged in the Complaint and proposed Amended Complaint.   The facts as alleged in the Complaint do not show constructive discharge solely for refusing to remain silent about illegal activities, as required under both statutory and common law claims for retaliatory discharge.

Moreover, Plaintiff inaccurately relies on Crews v. Buckman Labs International, Inc., 78 S.W.3d 852 (Tenn. 2002), as support for the notion that allegations of a constructive discharge are generally sufficient to establish the element of termination under a common-law action for retaliatory discharge.   However, the Crews case itself was factually distinct from the case at issue.   Even the Crews Court acknowledged the unique circumstances of the case and noted, "this case does not present the typical retaliatory discharge claim." 78 S.W.3d at 862.   The Crews case involved an in-house associate general counsel's claims for retaliatory discharge against her employer in the specific context of application of disciplinary rules in the practice of law.   Id. at 857.   Ultimately, the Tennessee Supreme Court ruled that because the complaint contained allegations that the corporation immediately placed the plaintiff on temporary leave and gave the plaintiff a notice of termination, the complaint fairly raised an allegation that the plaintiff did not voluntarily leave her employment. 78 S.W.3d at 865.   Quite the opposite, in the present case, Boyle's Complaint shows he *resigned* from his employment, without any such notice of termination from Evolve.   [Complaint, ¶ 25 (emphasis added).]

Likewise, the plaintiff in Webb v. Nashville Area Habitat for Humanity, Inc., 346 S.W.3d 422 (Tenn. 2011), was actually terminated by her employer after making complaints of illegal activities.   Although the Tennessee Supreme Court acknowledged the short and simple complaint, "while not a model complaint," the facts as alleged were sufficient to support the

claims.  Id. at 438.   Boyle simply cannot benefit from the same standard where the facts are not the same.  His Complaint clearly shows he resigned.

        b.      Plaintiff has made no showing of a hostile work environment.

Additionally, Plaintiff fails to describe the "intolerable working conditions" sufficient for a proper constructive discharge claim, instead opting for mere conjecture and conclusory allegations regarding Boyle's weight gain and sleep habits.  [Complaint, ¶ 29.]

Tennessee courts have acknowledged that a claim for constructive discharge only exists upon a showing that the employer knowingly permitted working conditions that would have been so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign.   Campbell v. Florida Steel Corp., 919 S.W.2d 26, 34 (Tenn. 1996) (evaluating a discrimination claim) (citing Bruhwiler v. University of Tenn., 859 F.2d 419, 421 (6th Cir. 1988)).   However, Plaintiff's Complaint and proposed Amended Complaint fail to allege adequate facts related to the working conditions at Evolve or Evolve's knowledge of such "intolerable" working conditions.

Similarly, Boyle fails to appropriately allege claims of a hostile work environment. To prove a hostile work environment, the employee must show conduct that is "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Harris v. Forklift Sys., Inc., 510 U.S. 17, 21, (1993) (quoting Meritor Savings Bank, FSB v. Vinson, 477 U.S. 57, 67, (1986)).  Conduct that is "merely offensive" does not rise to the level of that which will support a claim of hostile work environment.  Id.

        c.      Plaintiff has made no showing of illegal activities.

Lastly, Plaintiff has not demonstrated sufficient allegations of illegal activities for a proper retaliatory discharge claim.  Plaintiff has no basis in fact to support the allegations of

violation of Fair Lending laws and the Dodd-Frank Act in the Complaint and merely makes conclusory, speculative statements aimed at showing some sort of illegal activity.   In short, the Complaint makes no such allegations, nor states any facts which could reasonably support such a claim.   See Chism v. Mid-S. Milling Co., Inc., 762 S.W.2d 552, 555 (Tenn. 1988).   Because Boyle's Complaint fails to properly demonstrate illegal activity for a retaliatory discharge claim, his common law and statutory claims that he was terminated for refusing to remain silent about illegal activities fail as a matter of law.

**2.      Plaintiff's allegations of breach of employment contract against Evolve fail as a matter of law.**

      a.      Boyle was an at-will employee.

It is apparent from the face of Plaintiff's proposed Amended Complaint that Plaintiff cannot establish a proper breach of employment contract claim against Evolve because Plaintiff was an at-will employee.   Further, in his Response in Opposition to Evolve's Motion to Dismiss, Boyle admits that "[h]e was an at-will employee," and "agrees that the contract(s) were for an indefinite period." [Response, p. 12.]

The employment-at-will doctrine has been an integral part of the common law of Tennessee for more than a century.   Forrester v. Stockstill, 869 S.W.2d 328, 330 (Tenn. 1994). Tennessee courts have expressly held, "a contract for employment for an indefinite term is a contract at will and can be terminated by either party at any time without cause."   Bringle v. Methodist Hosp., 701 S.W.2d 622, 625 (Tenn. Ct. App. 1985).   This relationship recognizes that employers should be free to make their own business judgments without undue court interferences.   See Mason v. Seaton, 942 S.W.2d 470, 474 (Tenn. 1997).   Indeed, the Tennessee Supreme Court has noted that an employer's "ability to make and act upon independent

assessments of an employer's abilities and job performance as well as business needs is essential to the free-enterprise system." Mason, 942 S.W.2d at 474 (quoting Clifford v. Cactus Drilling Corp., 353 N.W.2d 469, 474 (Mich. 1984)).  Therefore, unless there is a contract of employment for a definite term, a discharged employee may not recover against an employer for breach of contract because there is no contractual right to continued employment.  Forrester, 869 S.W.2d at 330.

The Tennessee Supreme Court has expressly stated, "We know of no court decision, nor have we been referred to one, which holds that an employee has a contractual right [to continued employment] under the employment at-will doctrine." Id. (quoting Bennett v. Steiner–Liff Iron and Metal, 826 S.W.2d 119, 121 (Tenn. 1992)).

Plaintiff's original Complaint and proposed Amended Complaint both fail to adequately allege a legal contract for a designated term.  [See generally Complaint and proposed Amended Complaint.]  The contracts described in paragraph 4 of Plaintiff's proposed Amended Complaint reiterate that Boyle was an at-will employee.  [Proposed Amended Complaint, ¶ 4.]  As described by Plaintiffs, Boyle's employment contract does not include language reflecting a term.  Id. Further, Tennessee continues to adhere to the "employee-at-will" rule, and a presumption arises in this state that an employee is an employee-at-will.  Davis v. Conn. Gen. Life Ins. Co., 743 F. Supp. 1273, 1280 (M.D. Tenn. 1990).

As an at-will employee, Boyle was not entitled to continued employment with Evolve, and Evolve had the right to terminate any employment relationship.  See Bennett, 826 S.W.2d at 121.  Therefore, Boyle has no valid claim for breach of employment contract.

      b.     <u>Tennessee courts do not recognize an implied duty of good faith and fair dealing in an employment contract.</u>

Plaintiff's allegations that Evolve owed him a duty of good faith and fair dealing are misplaced.   [Complaint, ¶ 4.]   In his Response to the Motion to Dismiss, Plaintiff cites <u>Dick Broadcasting Company, Inc. of Tennessee v. Oak Ridge FM, Inc.</u>, 395 S.W.3d 653 (Tenn. 2013), as support for the notion that the duties of good faith and fair dealing are implied in a contract. However, reliance on this case is misplaced.   <u>Dick Broadcasting Company</u> involved a suit by the holder of a right of first refusal against the owner of a radio station alleging breach of contract and violation of the implied covenant of good faith and fair dealing after the owner refused to consent to an assignment of the right of first refusal.   <u>Id.</u>

Instead, the Court should look to precedent from the Tennessee Court of Appeals, which clearly shows that Plaintiff's claims fail.   The Tennessee Court of Appeals for the Western District has expressly stated that there is no implied duty of good faith and fair dealing in an employment contract.   <u>McGee v. Best</u>, 106 S.W.3d 48, 67 (Tenn. Ct. App. 2002).

Even assuming, *arguendo*, that Tennessee recognizes that the duty of good faith and fair dealing in employment at-will situations, <u>see</u> <u>Goot v. Metro. Gov't of Nashville</u>, No. M2003–02013–COA–R3–CV, 2005 WL 3031638 (Tenn. Ct. App. Nov. 9, 2005), this principle applies only to "contracting parties."   <u>Sudberry v. Royal & Sun Alliance</u>, 344 S.W.3d 904, 915 (Tenn. Ct. App. 2008).   At any rate, "the covenant of good faith and fair dealing does not, *ipso facto*, negate the at-will employment relationship."   <u>Id.</u> (citing <u>Goot</u>, 2005 WL 3031638 at *26) ("the implied duty of good faith and fair dealing cannot modify the employment at-will doctrine"). Simply put, "an employer does not breach its implied duty of good faith and fair dealing when it discharges an at-will employee for any reason."   <u>Id.</u>

Boyle was an employee at-will and had no written contract for a definite term, and Tennessee courts do not recognize claims of implied breach of the duty of good faith and fair dealing in employment contracts. Even without the arguments set forth in Evolve's Memorandum of Law in Support of its Motion to Dismiss, Plaintiff's Complaint alone is insufficient. As such, Plaintiff's claims for breach of employment contract fail as a matter of law.

### 3. Plaintiff's claims for intentional infliction of emotional distress fail as a matter of law.

Evolve adopts and incorporates by reference the arguments set forth in its Memorandum of Law in Support of its Motion to Dismiss.

To survive a motion to dismiss a claim for intentional infliction of emotional distress, the actionable conduct must be set out in the complaint describing the substance and severity of the conduct that is alleged to be outrageous. Braswell v. Carothers, 863 S.W.2d 722 (Tenn. Ct. App. 1993). Accordingly, courts routinely dismiss complaints at the 12.02(6) stage where the alleged conduct cannot reasonably be found to be outrageous. In the present case, Boyle has failed to sufficiently allege facts related to his claim of intentional infliction of emotional distress that rise to this level. His proposed Amended Complaint would likewise be futile, in that the added allegations still fail to show intentional action on the part of Evolve.

Tennessee courts have held that conduct that is merely offensive such as minor insults, indignities, threats, annoyances, petty oppression, or other trivialities, will not support a claim for intentional infliction of emotional distress. Sasser v. Quebecor Printing (USA) Corp., 159 S.W.3d 579 (Tenn. Ct. App. 2004); see also Nijem v. Alsco, Inc., 796 F. Supp. 2d 883 (M.D. Tenn. 2011) (noting where employer took some corrective actions, name-calling by coworkers

based on national origin of plaintiff, absent any physical touching or hostile threats in conjunction with the name-calling, did not constitute outrageous conduct).

Plaintiff's proposed Amended Complaint only alleges behavior that was "insulting" and attempts to show "distress," i.e., weight gain, sleep apnea, etc., to address the deficiencies of the Complaint as described in Evolve's Motion to Dismiss.  [Proposed Amended Complaint,  ¶ 26.] However, simply adding Boyle's "symptoms" of "distress" are insufficient to support an adequate claim for intentional infliction, especially where he has failed to allege intent on the part of Evolve.

Additionally, Boyle has presented no statements or evidence of treatment for such "distress."  For example, in Oates v. Chattanooga Publishing Company, 205 S.W.3d 418 (Tenn. Ct. App. 2006), the court granted summary judgment to the defendant employer in an employee's action for intentional and/or negligent infliction of emotional distress caused by a hostile work environment and malicious harassment.  The plaintiff never sought or received any counseling or treatment for her alleged emotional distress and did not allege any way in which her emotional distress manifests itself.  Id.  The court found that the record was completely devoid of evidence of emotional distress or of counseling or treatment for emotional distress and the employee failed to create a genuine issue of material fact as to whether she suffered severe emotional injury.  Id. Although the Oates case involved a summary judgment motion, the same law applies, because Plaintiff's Complaint and proposed Amended Complaint equally fail to demonstrate any evidence of treatment for the alleged distress.

Boyle's Complaint only alleges that his new position was "demeaning" and "embarrassing," a far cry from the atrocious and utterly intolerable conditions described in Bain v. Wells, 936 S.W.2d 618, 623 (Tenn. 1997).  [Complaint, ¶ 17].  Even assuming Boyle had

shown that any particular demeaning occurrence was directed at him, no incident, taken together or separately, amount to more than "insults, indignities, threats, annoyances, petty oppression, or other trivialities," none of which are recoverable under the tort. Id. at 622 (quoting Medlin, 398 S.W.2d at 274). As such, Boyle's claim for intentional infliction of emotional distress fails and must be dismissed.

**C.**   **Plaintiff's Proposed Amendment Would Cause Undue Prejudice to Evolve.**

Evolve would be prejudiced if Plaintiff is allowed to amend his Complaint. Analyzing the prejudicial effect of a proposed amendment requires a careful examination of the facts of the case. Hardcastle v. Harris, 170 S.W.3d 67, 81 (Tenn. Ct. App. 2004). Tennessee courts must consider the position of both parties and the effect that granting or denying the request will have on each of them. Id. This entails inquiring into: (1) the hardship on the moving party if the amendment is denied; (2) the reasons for the moving party's failure to include the claim, defense, or other matter in its earlier pleading; and (3) the injustice to the opposing party should the motion to amend be granted. Id.

Boyle should not be allowed to amend his complaint because he was aware of the facts underlying the alleged claims before the action was filed. See, e.g., March v. Levine, 115 S.W.3d 892, 909 (Tenn. Ct. App. 2003); Wimm v. Jack Eckerd Corp., 3 F.3d 137, 140 (5th Cir.1993); Windsor Card Shops, Inc. v. Hallmark Cards, Inc., 957 F. Supp. 562, 571 (D.N.J. 1997) (denying the plaintiff's motion to amend because the plaintiff could have included the claim in its original complaint but did not do so for strategic reasons). Accordingly, courts usually deny amendments when it will (1) cause additional expense and the burden of a more complicated and lengthy trial, (2) require the opposing party to engage in significant additional pre-trial preparation, (3) unduly increase discovery, or (4) unduly delay the trial. Hardcastle, 170

S.W.3d at 81 (citing <u>Morongo Band of Mission Indians v. Rose</u>, 893 F.2d 1074, 1079 (9th Cir. 1990); <u>Troxel Mfg. Co. v. Schwinn Bicycle Co.</u>, 489 F.2d 968, 971 (6th Cir. 1973)).  Were this Court to grant Plaintiff's Motion to Amend, Evolve would be forced to incur unnecessary expenses and fees, given the fact that the proposed Amended Complaint still fails to state proper claims as a matter of law.

## V.     Conclusion

Ultimately, Boyle's Complaint fails to state a claim upon which relief can be granted with respect to his claims for breach of contract, intentional infliction of emotional distress, and retaliatory and/or wrongful discharge under the TPPA and common law.  Because his claims in both the original Complaint and the proposed Amended Complaint fail to amount to anything more than conclusory allegations, any amendment would be futile and unduly prejudicial to Evolve.  Accordingly, the Motion to Amend should be denied and the Complaint should be dismissed.

Respectfully submitted,

Robert L. Crawford (#7218)
Odell Horton, Jr. (#12426)
Kathryn K. Van Namen (#31322)
Wyatt Tarrant & Combs, LLP
1715 Aaron Brenner Drive, Suite 800
Memphis, Tennessee  38120-4367
(901) 537-1000 telephone
(901) 537-1010 facsimile
lcrawford@wyattfirm.com
ohorton@wyattfirm.com
kvannamen@wyattfirm.com

*Counsel for Evolve Bank & Trust and*
*Evolve Financial Group, Inc.*

## **CERTIFICATE OF SERVICE**

This is to certify that a true and correct copy of the foregoing has been served upon the

following, via email and U.S. Mail, postage prepaid, on this the 2nd day of September, 2014:

Kathleen L. Caldwell
KATHLEEN CALDWELL, PLLC
2670 Union Avenue Ext., Suite 110
Memphis, TN  38112
kathleencaldwell.attorney@gmail.com

Kathryn K. Van Namen

61222094.4

17

CIRCUIT COURT OF SHELBY COUNTY, TN FILING

# 12

ELECTRONICALLY FILED
2014 Sep 05 PM 3:51
CLERK OF COURT - CIRCUIT

## IN THE CIRCUIT COURT OF SHELBY COUNTY, TENNESSEE
## FOR THE THIRTIETH JUDICIAL DISTRICT AT MEMPHIS

**JAYME BOYLE,**

    **Plaintiff,**

**v.**                 **DOCKET NO:  CT-002249-14**
                        **Division IV**

**EVOLVE BANK & TRUST, and**
**EVOLVE FINANCIAL GROUP, INC.,**

    **Defendants.**

## AMENDED COMPLAINT

This is an action for breach of contract, for intentional infliction of emotional distress, and for retaliatory and/or wrongful discharge, including violation of T.C.A. §50-1-304, the Tennessee Public Protection Act.

### I. **PARTIES**

1.    Plaintiff, Jayme Boyle, is an adult resident citizen of Shelby County, Tennessee.

2.    Defendant Evolve Bank & Trust is a foreign corporation organized in the State of Arkansas and may be reached with service of process by serving its registered agent Corporation Service Company, 2908 Poston Avenue, Nashville, TN 37203-1312.

Defendant Evolve Financial Group, Inc., is a foreign corporation organized in the State of Delaware, doing business in the State of Tennessee and may be reached with service of process by serving its registered agent Corporation Service Company,

2908 Poston Avenue, Nashville, TN 37203-1312.

## II. **FACTS**

3.      Jayme Boyle (hereinafter "Boyle") was hired in August 2005 to handle alternative broker business, managed by Evolve Mortgage Services, a corporation owned by Evolve Financial Group, Inc. Evolve Mortgage Services later became a part of Evolve Bank & Trust, which is wholly owned by Evolve Financial Group, Inc. (hereinafter "Evolve"). He served in that capacity until March 18, 2008, when he resigned to take a job elsewhere. Boyle had worked in the mortgage business since 2000.

4.      In April 2009, Boyle was contacted by Jeff Kuehn and Jim Martin, who recruited Boyle to return to Evolve to serve as a loan originator. Boyle considered this to be a great business opportunity, with potential for significant growth and earnings capacity. Boyle was initially given a contract which has since been replaced from time to time by other contracts. Boyle is not in possession of any of said contracts, but incorporates them by reference as if copied in words and figures. Said contracts provided for at the very least: establishing an employer-employee relationship between Evolve and Boyle; defining the scope of Boyle's duties and job title; and setting out the terms of Boyle's salary and/or commissions, bonuses and benefits. Boyle entered into said employment relationship in good faith, and understood that Evolve had an implied duty of good faith and fair dealing. As stated below, Evolve by and through its managers and officers has breached its contractual relationship with Boyle.

5.      Boyle accepted the initial offer to return, and began work on or about

April 15, 2009.  He was initially to work on straight commission, with a guarantee of $5,000.00 per month for the first three months.

6.     By early 2010, Boyle was the loan compliance manager for all Evolve branches (about 14 or 15 at that time).  He trained and "on-boarded" branches to become Evolve entities.  He was put on salary of $48,000.00 plus bonuses, based upon his production and other duties.  He was being paid off the bottom line.

7.     Boyle soon learned the commissions, overages and bonuses at Evolve Bank were being withheld, awarded and/or manipulated contrary to law.  Boyle did not like the situation.

8.     Tommy Taylor, CEO of the Evolve Mortgage Division, a division of Evolve Bank, decided upon a plan to manipulate the commissions, overages and bonuses such as to hide the illegal payments, from regulators, namely the money being paid on overages charged to customers, and to hide the money trail on a per transaction basis, contrary to law.

9.     On or about December 19, 2012, Boyle informed Brent Bousson (head of HR) and Jason Brown (in-house legal counsel for Evolve Financial) that they needed to straighten out how commissions, overages and bonuses were being paid, that this situation was illegal.  They took no action at that time to correct the situation.  Then on or about December 28, 2012, upper management, believed to include Tommy Taylor, Jason Brown, Scott Stafford, Scott Lenoir and John Chandler, changed how overages were to be paid, by taking the previous quarter's overages and paying them over a three-month period as salary.  Said plan again was in violation of Fair Lending laws, the Consumer Financial Protection Act of 2010 ("CFPA") 12 U.S.C.

3

§5536, and the Dodd-Frank Act, (the Wall Street Reform and Consumer Protection Act of 2010), H.R. 4173, especially Title XIV, which amended (Reg. "Z") (Truth in Lending Act).   See Mortgage Reform and Anti-Predatory Lending Act, §1403 (Prohibition on Steering Incentive) from Dodd-Frank.   Regulation "Z" governs how compensation of loan originators and managers can be paid, 12 U.S.C. Part 226; 12 C.F.R. 1026.36.  Said regulation was in effect by April, 2011.

10.    Boyle again complained, this time to Jeff Kuehn, President of Evolve Mortgage.   Kuehn did nothing.   Neither did Evolve Mortgage, Evolve Financial, Evolve Bank & Trust or Evolve Financial Group, Inc.

11.    During the course of the last 12 months of his employment at Evolve, Boyle learned that Evolve was requiring branch managers to make personal contributions of capital into Evolve's reserve account in violation of FHA and net branch guidelines, thus violating HUD guidelines.  Boyle was not such a manager because he was assigned to the "home" office.  But he became well aware that Evolve was intentionally finding ways to thwart legal requirements, and to place the economic burdens of expanding Evolve's mortgage business on its employees.

12.    Within thirty (30) days of learning how Evolve had violated loan originators' pay, and telling the management at Evolve of the illegal transactions, on or about January 31, 2013, Boyle was demoted to a loan officer position.  He was "invited" to stay with the company.  But when Boyle got back to his office, his access to his computer had already been cut off.  Boyle accepted the demotion, in part because he had family issues and personal problems.   The demotion was in retaliation for his persistent refusal to remain silent about illegal activities.  Said

4

demotion is a breach of contract, and a violation of the implied duty of good faith and fair dealing.

13.    At all relevant times Boyle had been an excellent employee of Evolve. He was producing more volume than the average loan originator, even while he served as manager, having other duties.   In 2011, his volume of sale was approximately Forty Million ($40,000,000.00) Dollars.

14.    Said demotion was retaliatory, solely because Boyle had complained to his supervisors about illegal activities and his refusal to remain silent.   Boyle had made it clear to Evolve that he would not remain silent about illegal activities.   Boyle had told Tommy Taylor repeatedly that he needed to do the right thing.   But Taylor made no changes.

15.    By the Monday following demotion, Boyle was told he had to testify at a deposition on behalf of Evolve regarding a lawsuit pending in the federal district court in Memphis, Civil Action No. 12-02384.   He was "prepped" by Evolve attorneys on how to give a deposition.

16.    Boyle gave his deposition and answered truthfully.

17.    Thereafter he worked as a loan officer (originator) under the supervision of Chad Irwin, Branch Manager.   Boyle had recruited Irwin, and had trained Irwin in Evolve business practices.     Reporting to Irwin was difficult, and embarrassing to Boyle.   Boyle's loans had to be approved by Irwin, even to go to underwriting. Tommy Taylor had been manipulating underwriting to expedite loans as he wished, and forcing other loans to expire or become stale.   The effect was devastating on loan originators, including Boyle, and ultimately on the consumers.

18.   From the time that Boyle complained initially to Bousson and Brown, and later to Kuehn, he had been working in a severe and pervasive hostile work environment.   The demotion was demeaning and embarrassing.   Boyle had been encountered by Kuehn, Bousson and Taylor repeatedly.   On October 3, 2012, he was asked why he did not just work as a loan originator – they tried to talk Boyle out of being a manager.   Boyle told them he did not wish to be demoted, but after his repeated complaints of illegal activities, he was demoted on January 31, 2013.

19.   Throughout the fall of 2012, until his demotion in late January, 2013, Boyle was required to discipline employees, including to terminate them.   Boyle was doing so at the express direction of Taylor.   Boyle complained to Taylor and Bousson about the lack of clear objective guidelines, such as when performance/loan volume had shrunk to a certain level for an employee.   Instead, persons were being fired based on the subjective decisions of Taylor and Bousson.

20.   Taylor (CEO of Evolve Mortgage Division) was not allowed by law to originate loans.   But he would attribute loans to originators, then would receive partial commissions in the form of bonuses.   This practice was illegal under Dodd-Frank.   Taylor knew better.   It was no secret at Evolve that Taylor was originating loans and being paid as a result.

21.   Evolve provided no continuing education for its loan originators.   By 2010, the regulations governing mortgages in general, especially government-backed loans, were changing.   There were several different Acts which directly impacted the mortgage banking business, and especially loan originating.   Plaintiff alleges that failure to keep its loan originators informed and adequately trained allowed Evolve to

6

persist in violating said laws, which were intended to provide fair lending practices to American consumers, for truth in lending, and for prohibiting unfair payment practices for loan originators and managers. Regulation "Z" of the Truth in Lending Act came into effect as of April, 2011. The Dodd-Frank Act, H.R. 4173, a mammoth revision of many laws, including SEC (Wall Street Reform) and consumer lending, included Title XIV, entitled "the Mortgage Reform and Anti-Predatory Lending Act," of which Section 1403 dealt with "Prohibition on Steering Incentives" was enacted. The Home Mortgage Disclosure Act ("HMDA"), which seeks to protect unfair and discriminatory practices based on race, sex, and marital status, etc., and which require record-keeping and reporting to the government agency, even as to conventional loans not backed by the government impacted Evolve and its originators.

22.    Before the recent mortgage crisis, loan originators often steered their "clients" (consumers) into mortgages with terms that were less favorable to the consumer but more profitable for the loan originator.  To stop this practice, the Federal Reserve Board amended Regulation Z, 12 U.S.C. Part 226, to prohibit certain compensation schemes for loan originators.  Its implementation date was April 6, 2011. See 12 C.F.R. §1026.36 (a)(l)(i).  A violation of the compensation rule under Regulation Z is a violation of Section 1036 of the Consumer Financial Protection Act of 2010 ("CFPA"), 12 U.S.C. §5536(a)(1)(A).

23.    It is a violation of Regulation Z and thus the CFPA for a mortgage company to pay its loan officers guarterly bonuses in amounts based on terms or conditions of the loans they close, or to otherwise incentivize loan officers to steer

consumers into mortgages with less favorable terms; these practices are prohibited by the "Compensation Rule" under Regulation Z.

24.     The various statutes and regulations relied on by Plaintiff cited herein, evidence a clear public policy which is unambiguous, and intended to protect the public, i.e. consumers, from predatory mortgage practices such as steering of mortgages.   The importance of these Acts (including Dodd-Frank Act, Truth in Lending Act, the Home Mortgage Disclosure Act (HMDA) and the Mortgage Reform and Anti-Predatory Lending Act) cannot be overstated.   The stated purpose was to prevent further collapse of the American financial system, which had been devastated by the 2009-2010 economic collapse attributed to the mortgage industry and its abuses.

25.     Evolve directed Boyle to originate some Twenty Million Dollars in loans, but Boyle was paid only a partial commission on these loans.   On some he received nothing.   The monies which should have been paid to Boyle were given to the branches.   At the time the branches were not yet able legally to originate loans.   This practice was planned and developed by Taylor, and Jason Brown, who well knew that Boyle was supposed to be paid not less than 1% of all loans on which he served as originator.   Said miss-payment was intentional and was a breach of contract.

26.     By the time of Boyle's demotion, other employees avoided any contact with him.   It was like he had a target on his back.   Brent Bousson, head of Human Relations, told Boyle he was being demoted because he "made too much money." Bousson was insulting to Boyle, as were Taylor and Brown.   The hostile environment was intensifying.

27.     At the same time Taylor started promising Boyle that he was purportedly going to make him manager, but needed Boyle's help to get rid of Jeff Kuehn.  Boyle knew he was being manipulated, but did not yet understand why.

28.     Throughout the winter and spring of 2012-2013, Boyle was feeling increasingly threatened.  He understood that Evolve could and would blemish his reputation, which would make it difficult for him to get a good job in the mortgage industry.   Despite the actions taken by management against him, Boyle kept complaining about the illegal activities.

29.     The actions taken by Taylor, Bousson, Stafford, Lenoir, Brown, Chandler, and others thus were continuing over a long period of time, and on a daily basis.  Their actions were intentional and malicious, sufficient to cause a reasonable person to exclaim outrage.  Boyle had stayed in the pressure cooker at the offices of Evolve for well over three years, enduring numerous acts of harassment, overt and some not so overt.   The effects of the stress and harassment on Boyle are tremendous.  He has trouble sleeping at night.  He has suffered a recurrence of severe sleep apnea.  He found himself gaining weight.  He now suffers from grinding of teeth, which has been diagnosed as  "TMJ" (tempero mandibular joint syndrome).  Food became his source of solace.  He now suffers from gastric reflux.  He has stayed upset, and angry.  He feels he has lost control over his life and his career, and his financial security has evaporated.  The acts taken against Boyle were not minor trivialities or annoyances.  The emotional and physical changes to Boyle have been devastating and profound.  His very life was threatened.  His ability to support his family was totally at risk.

9

30.     Pressure was building for Boyle.  On the morning of May 21, 2013, he learned that the previous day Evolve and the plaintiff's attorney in the Memphis case had deposed Virginia Green, former head of Evolve Mortgage, and that a lot of the questions were about Jayme Boyle and his plans for future employment.  Boyle felt exposed and betrayed.  He resigned that night.

31.     Evolve knew of the hostile environment being experienced by Boyle and failed to take steps to stop it.  Evolve knew that Boyle was refusing to remain silent about illegal violations of statutes and regulations governing the mortgage industry. Evolve knowingly permitted the difficult or unpleasant working conditions to exist. Said conditions became so intolerable to Boyle that a reasonable person subject to such conditions would resign.

32.     Based on the intolerable working conditions, based upon his knowledge of the mortgage industry, and based upon his growing knowledge of Evolve's shady business practices, Boyle reasonably decided he had no choice but to resign.  His resignation was not voluntary, it was exclusively and solely due to his failure to remain silent about the continuing and overt violations of federal laws governing the mortgage business, especially steering of mortgages, illegal bonusing to managers and loan originators, and manipulating minimum reserves by branch managers by unwarranted salary increases. He could take no more.  The working conditions were utterly intolerable.  He resigned by email, sent to Evolve on May 21, 2013 at 1:00 a.m.

33.     Thus Jayme Boyle, an employee of Evolve, was forced to resign solely on account of his unwillingness to remain silent about the illegal practices and policies

10

at Evolve which violated the Consumer Protection Act, the Home Disclosure Mortgage Act, especially HMDA, Regulation Z, and the Dodd-Frank Act, as set forth herein. Said Acts evidence a strong public policy intended to protect American consumers from avaricious lending practices, including steering of loans and improper bonuses and overages, as in the instant case.

34.     Boyle has sustained significant wage losses due to said constructive discharge, including loss of commissions, loss of stock options, salary, benefits and overtime; also due to the breach of contract. He has incurred physical pain and suffering, emotional pain and suffering and other injuries, including damage to his reputation.

35.     The acts and omissions of Evolve's principals and agents have been malicious, knowing and intentional. Hence an award of punitive damages is merited.

## III.  **CAUSES OF ACTION**

36.     Plaintiff incorporates paragraphs 1 through 35 as if set forth fully herein.

37.     Based on the foregoing, Plaintiff states a claim for:

   (a)     Breach of employment contract;

   (b)     Intentional infliction of emotional distress;

   (c)     Retaliatory or wrongful discharge, in violation of T.C.A. §50-1-304, which prohibits discharge or termination solely for refusing to participate in, or for refusing to remain silent about, illegal activities; and

   (d)     retaliatory discharge: common-law cause of action.

11

## IV.  **PRAYER FOR RELIEF**

Plaintiff hereby demands relief as follows:

1.   Issue process as prayed for;

2.   Judgment for compensatory damages including loss of wages, commissions, and other monetary damages and for physical and emotional pain and suffering post, present and future in the sum of $2.5 Million Dollars;

3.   Punitive damages in the sum of $2.5 Million Dollars;

4.   Jury demanded; and

5.   Other relief as may be deemed appropriate.

Respectfully submitted,

KATHLEEN CALDWELL, PLLC

By: _____

Kathleen L. Caldwell, #9916
2670 Union Avenue Ext., Site 110
Memphis, TN 38112
Telephone:  (901) 458-4035
Facsimile:  (901) 458-4037
kathleencaldwell.attorney@gmail.com
*Attorney for Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing has been electronically filed and served electronically to the following:

> **Robert L. Crawford, Esq.**
> **Odell Horton, Jr., Esq.**
> **Kathryn K. Van Namen, Esq.**
> **Wyatt Tarrant & Combs, LLP**
> **1715 Aaron Brenner Drive, Suite 800**
> **Memphis, TN 38120-4367**

This _____ day of September, 2014.

Certifying Attorney

13

CIRCUIT COURT OF SHELBY COUNTY, TN FILING

# 13

ELECTRONICALLY FILED
2014 Sep 16 PM 2:29
CLERK OF COURT - CIRCUIT

| SUBPOENA | | |
|---|---|---|
| ☐ to testify | ☒ duces tecum | |
| ☐ to take deposition | ☐ for medical records* | |
| | *(see HIPAA requirement below) | |

**STATE OF TENNESSEE
SHELBY COUNTY
CIRCUIT COURT**

Docket Number

CT-002249-14

You are hereby commanded to summon:

Perl Mortgage, Custodian of Records
6750 Poplar Avenue, Suite 202
Memphis, TN 38138

See attached Exhibit A.

Method of Service:

○ Shelby County Sheriff
○ Commissioner of Insurance ($)
○ Secretary of State ($)
○ Other TN County Sheriff ($)
☑ Private Process Server
○ Other

($) Attach Required Fees

personally to be and appear on  Friday, October 17 _____ , at  2:00 _____  P.M. _____

at   Wyatt, Tarrant & Combs _____

in the City of Memphis, then and there to testify and give evidence on behalf of  Defendant _____  in the case of

Jayme Boyle _____  against  Evolve Bank and Trust, et al. _____

        This you will in no wise omit, under the penalty prescribed by law.

        Herein fail not, and have you then and there this Writ.

Tested and Issued this _____ day of _____, 20_____

                                                          JIMMY MOORE _____ , Clerk

FOR AMERICANS WITH DISABILITIES ACT (ADA)
ASSISTANCE ONLY, CALL (901) 222-2341

                                        By: _____ D.C.

---

**HIPAA NOTICE**

        A copy of this subpoena has been provided to counsel for the patient or the patient by mail or facsimile on the

_____ day of _____ , 20 ____  so as to allow him/her seven (7) days to:

        (A) Serve the recipient of the subpoena by facsimile with a written objection to the subpoena, with a copy of the notice by facsimile to the party that served the subpoena, and

        (B) Simultaneously file and serve a motion for a protective order consistent with the requirements of T.R.C.P. 26.03 and 26.07.

        If no objection is made within seven (7) days of the above date, you shall process this subpoena and produce the documents by the date and time specified in the subpoena. The signature of counsel or party on the subpoena is certification that the above notice was provided to the patient.

                                        _____
                                        Attorney or Party Signature for HIPAA notice

RETURN OF SERVICE OF SUBPOENA

I HEREBY CERTIFY THAT I **HAVE** SERVED THE WITHIN SUBPOENA:

By delivering on the _____ day of _____, 20_____ at _____ M. a copy of the

subpoena to the following Witness _____

at _____

By: _____

_____                    Sheriff or other authorized person to serve process
Signature of person accepting service

RETURN OF NON-SERVICE OF SUBPOENA

I HEREBY CERTIFY THAT I **HAVE NOT** SERVED THE WITHIN SUBPOENA:

To the named Witness _____

because _____ is (are) not to be found in this County after diligent search and inquiry for the following

reason(s): _____

This _____ day of _____, 20_____.

By: _____

Sheriff or other authorized person to serve process

Docket No: CT-002249-14

IN THE
(CIRCUIT/CHANCERY) COURT
OF TENNESSEE
FOR THE
THIRTIETH JUDICIAL
DISTRICT AT MEMPHIS

**SUBPOENA**

Jayme Boyle
Plaintiff

VS

Evolve Bank & Trust, et al.
Defendant

Kate Van Namen
Attorney/Pro Se

(901) 537-1000
Telephone Number

**Exhibit A**
**Documents Requested Pursuant to Tenn. R. Civ. P. 45**

In lieu of personal appearance, you may mail the requested records with the attached Certification of Records (Exhibit B) by certified mail, postmarked by the time to appear to Kate Van Namen at Wyatt, Tarrant & Combs LLP, 1715 Aaron Brenner Drive, Suite 800 Memphis, TN 38120.

1.     Documents constituting, evidencing, relating, or referring to the employment file of Jayme Boyle ("Boyle"), including, but not limited to, any employment application, date of application, date of hire, any performance reviews, any disciplinary actions, any background checks and their results, and any communication from Perl Mortgage ("Perl") to Boyle concerning said application;

2.     For the period beginning October 1, 2012 through the present, documents constituting, evidencing, relating, or referring to any employment agreements, loan officer agreements, and/or manager agreements;

3.     For the period beginning October 1, 2012 through the present, documents sufficient to identify how Boyle's compensation was calculated, including, but not limited to, documents to support any calculations for salary, commission, and bonus structures, as well as a compensation report, including paystubs for each pay period Boyle has been employed by Perl;

4.     For the period beginning October 1, 2012 through the present, documents sufficient to identify a job description and title for Boyle;

5.     For the period beginning October 1, 2012 through the present, documents constituting, evidencing, relating, or referring to any cellular telephone records for Boyle which were paid for by Perl;

6.     Documents constituting, evidencing, relating, or referring to Perl's policy and procedures for hiring personnel, including the recruiting efforts which lead to Boyle's employment with Perl;

7.     Documents constituting, evidencing, relating, or referring to Perl's employee handbook or any other handbook or agreements which govern employee conduct;

8.     Documents constituting, evidencing, relating, or referring to Perl's policies and procedures for the recruitment of employees and/or branches or offices;

9.     Documents constituting, evidencing, relating, or referring to a production report of all loans which Boyle has been the originator, including closed, denied, withdrawn, and files started, including customer names, loan numbers, dates of closing, and dates of application;

10.     Documents sufficient to identify each and every employee for any office which Boyle was employed and/or managed;

11.     Documents sufficient to identify each and every office and employee which Boyle may have been involved in recruiting to Perl;

12.     For the period beginning October 1, 2012 through the present, documents constituting, evidencing, relating, or referring to electronic communications related to Boyle's employment with Perl;

13.     For the period beginning October 1, 2012 through the present, any electronic communications from Boyle's Perl email account to any Evolve current or former employee; and

14.     Documents constituting, evidencing, relating, or referring to loan officer and branch manager compensation policies and procedures for Perl.

61228532.3

**Exhibit B**

**<u>CERTIFICATION OF RECORDS</u>**

DATE:_____

RECORDS OF:    **Perl Mortgage**
ADDRESS:        **6750 Poplar Avenue, Suite 202**
                   **Memphis, TN 38138**

I, _____, swear or affirm that the books, papers, documents, electronically stored information, or tangible things submitted with this Certification are authentic to the best of my knowledge, information, and belief.

I have produced all books, papers, documents, electronically stored information, or tangible things responsive to the subpoena for copying or inspection.

The copies for which this Certification is made are true and complete reproductions of the original financial records which are housed in the offices of Perl Mortgage.

The original records were made at or near the time of the occurrence of the matters set forth by (or the information transmitted by) a person with knowledge of these matters, in the regular course of business, and it was the regular course of this institution to make such records.

I am the duly authorized custodian of records, and I have authority to certify these records.

_____
**Signature**

**Date:**_____

STATE OF _____
COUNTY OF _____

      On this _____ day of _____, 2014, before me personally appeared _____, to me known to be the person described in and who executed the foregoing instrument, and acknowledged that such person executed the same as such person's free act and deed.

_____
Notary Public

My Commission Expires:
_____



**The Shelby County, Tennessee Circuit Court**

| | |
|---|---|
| **Case Style:** | JAYME BOYLE VS EVOLVE BANK AND TRUST |
| **Case Number:** | CT-002249-14 |
| **Type:** | SUBPOENA ISSD TO MISC |

Ms Sheri C Carter, DC

Electronically signed on 09/16/2014 02:37:21 PM

CIRCUIT COURT OF SHELBY COUNTY, TN FILING

# 14

## IN THE CIRCUIT COURT OF SHELBY COUNTY, TENNESSEE
## FOR THE THIRTIETH JUDICIAL DISTRICT AT MEMPHIS

JAYME BOYLE,

     Plaintiff,

v.                   **DOCKET NO:  CT-002249-14**
                                 **Division IV**

EVOLVE BANK & TRUST, and
EVOLVE FINANCIAL GROUP, INC.,

     Defendants.

FILED
SEP 16 2014

CIRCUIT COURT CLERK
BY _____ D.C.

---

### ORDER DENYING DEFENDANTS' MOTION TO DISMISS AND
### GRANTING PLAINTIFF'S MOTION FOR LEAVE TO AMEND COMPLAINT

---

Before the Court on the 5th day of September 2014, the above-styled and numbered matter came on to be heard, on Defendants' Motion to Dismiss pursuant to Tenn. R. Civ. Pro. 12.02(6), and on Plaintiff's Motion for Leave to Amend Complaint, and upon said motions and memoranda filed by the parties, upon agreement of counsel for the parties and upon the record, the Court finds as follows:

The Defendants' Motion to Dismiss is not well taken and should be denied. There are sufficient factual allegations to support Plaintiff's stated claims.  The Court does not weigh evidence.

Plaintiff's Motion for Leave to Amend Complaint should be granted. Amendments to complaints are liberally granted.

**IT IS THERFORE, ORDERED AND ADJUDGED** that Defendants' Motion to Dismiss the Complaint filed by Plaintiff is hereby denied; further, that Plaintiff's

1

Motion for Leave to Amend Complaint is hereby granted.

Gina C. Higgins,
**Circuit Judge, Division 4**

Date: 9-16-14

**APPROVED AS TO FORM:**

KATHLEEN CALDWELL, PLLC

Kathleen L. Caldwell, #9916
2670 Union Avenue Ext., Suite 110
Memphis, TN 38112
Telephone: (901) 458-4035
Facsimile: (901) 458-4037
kathleencaldwell.attorney@gmail.com
*Attorney for Plaintiff*

Robert L. Crawford, #7261
Odell Horton, Jr., #12426
Kathryn K. Van Namen, #31322
Wyatt Tarrant & Combs, LLP
1715 Aaron Brenner Drive, Suite 800
Memphis, TN 38120-4367
Telephone: (901) 537-1000
Facsimile: (901) 537-1010
lcrawford@wyattfirm.com
ohorton@wyattfirm.com
kvannamen@wyattfirm.com
*Attorneys for Defendants*

2

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been mailed by U.S. Mail, postage prepaid to the following:

**Robert L. Crawford, Esq.**
**Odell Horton, Jr., Esq.**
**Kathryn K. Van Namen, Esq.**
**Wyatt Tarrant & Combs, LLP**
**1715 Aaron Brenner Drive, Suite 800**
**Memphis, TN 38120-4367**

This _____ day of September, 2014.

_____
Certifying Attorney

CIRCUIT COURT OF SHELBY COUNTY, TN FILING

# 15

ELECTRONICALLY FILED
2014 Sep 18 AM 10:31
CLERK OF COURT - CIRCUIT

### IN THE CIRCUIT COURT OF SHELBY COUNTY, TENNESSEE
### FOR THE THIRTIETH JUDICIAL DISTRICT AT MEMPHIS

**JAYME BOYLE,**

     **Plaintiff,**

**v.**                 **DOCKET NO:  CT-002249-14**
                          **Division IV**

**EVOLVE BANK & TRUST, and**
**EVOLVE FINANCIAL GROUP, INC.,**

     **Defendants.**

### PLAINTIFF'S FIRST SET OF INTERROGATORIES
### TO DEFENDANTS

Comes now the Plaintiff, by and through his attorney of record, pursuant to Rule 33 of the Tennessee Rules of Civil Procedure, and propounds to the Defendants, the following Interrogatories to be answered under oath within thirty (30) days.

Plaintiff propounds the following interrogatories upon statement that:

(a)    The following Interrogatories are continuing in character and, therefore, require the filing by the Defendants of supplemental answers if other, further or different information is secured or available prior to the above-entitled action;

(b)    With respect to each answer to said Interrogatories made by or on behalf of the Defendants, please state the full name, address, title or capacity of the person or person supplying the information or material upon which the answer is based, as well as the source of his, her or their information or material;

1

(c)     Where knowledge, information or possession by the Defendants is requested, such request includes the knowledge and information of, and possession by the Defendants, their present and former agents and employees, and all other persons acting or purporting to act on their behalf, and, unless privileged, their attorneys;

(d)     Where the name or identity of a person is requested please state to the extent known his or her full name and present home and business address, and telephone numbers, both now and at the time material to the occurrences giving rise to the matters inquired of.  If, after reasonable inquiry, you are unable to ascertain the information requested, please describe the person as completely as possible.

(e)     As used herein "your" and "you" means each of the named Defendants in this case; "Evolve" means Evolve Financial Group, Inc., Evolve Bank & Trust, or any other Evolve subsidiary, including Evolve Mortgage Service, Inc.

(f)     As used herein "plaintiff" means JAYME BOYLE.

(g)     When you are asked to "identify" a document, you are asked to attach a true copy of the document to your answers to these interrogatories without a separately filed request for production.  If you decline to so identify the document, you are asked to provide the following information with respect to each document: (1) the identity of the document, including, if appropriate, its date, author, recipient, and general subject matter; (2) the names and addresses of all persons who received or possess copies of the document; (3) the present location of the document; (4) the present custodian of the document.

(h)     When you are asked to identify a person, you are asked to state the

individual's name, current or last known address, telephone number, and employment, both now and at the time material to the occurrences giving rise to the matters inquired of. If, after reasonable inquiry, you are unable to ascertain the information requested, please describe the person as completely as possible.

(i)    As used herein, "include" or "including" means "include but do not limit" or "including but not limited to."

## INTERROGATORIES

**INTERROGATORY NO. 1:**    Identify the name, address and telephone number of each individual who is responsible for assisting in the preparation of responses to these Interrogatories, and identify each Interrogatory for which each individual assisted in answering and each document relied upon to make said answer.

**ANSWER:**

**INTERROGATORY NO. 2:**    Identify    and    describe    in    detail    all communications (letters, memos, emails, etc.), both written and oral in your custody, control or possession, regarding Plaintiff which are dated anytime from April 2009 to the present.

**ANSWER:**

**INTERROGATORY NO. 3:**    Do you contend that Plaintiff informed Tommy Taylor, Brent Bousson, Jason Brown, Jeff Kuehn or anyone else at Evolve of illegal practices or violations of federal or state law? If so, identify the person who received Boyle's complaint, and state what the complaint consisted of, and describe in detail

3

each action the Defendants took, if any, in investigating Plaintiff's allegations concerning illegal or improper communications, overages and bonuses being paid, or requiring branch managers to make capital contributions, or paying commissions and bonuses to top management, or incentivizing loan officers, or any other illegal practices.

**ANSWER:**

**INTERROGATORY NO. 4:**     Identify any and all persons who participated, in any way, in any investigation conducted by Defendants regarding Plaintiff's complaints of illegal mortgage practices at Evolve.

**ANSWER:**

**INTERROGATORY NO. 5:**     Identify and describe in detail the factual basis for each affirmative defense Defendants assert in their answer to this civil action, and identify each document Defendants contend constitutes evidence of or provides support for each affirmative defense Defendants assert in their answer to this civil action.

**ANSWER:**

**INTERROGATORY NO. 6:**     Please state whether any photographs, motion pictures, audio tapes, or video tapes were taken of the Plaintiff, or any person or thing relevant to the issues in this matter and, if so, state when and where they were taken, the present location of the photographs, motion pictures, audio tapes or video tapes, and the name and address of the person making said recording(s).

**ANSWER:**

**INTERROGATORY NO. 7:**     Identify any and all persons who have given

4

statements or have made any allegations regarding any of the allegations in Plaintiff's Complaint or your defenses thereto.  Include in your answer the substance of said statement, the date given, where it was made and to whom it was given.  If you assert attorney-client privilege, then state the date, where it was made, and to whom it was given.

**ANSWER:**

**INTERROGATORY NO. 8:**     Please identify each and every employee of Evolve who has voluntarily or involuntarily left Evolve's employment from January 1, 2008 to the present.  For each, state the reasons for said termination and/or resignation, the date of termination and/or resignation, and whether a severance agreement was entered into between Evolve and said employee.

**ANSWER:**

**INTERROGATORY NO. 9:**     Please identify each and every LPO branch office operated by Evolve from January 1, 2008 to the present and for each state its physical address, the geographic region covered by said branch, the date it opened, and identify the branch's manager from January 1, 2008 to the present.

**ANSWER:**

**INTERROGATORY NO. 10:**     For the following persons, please state for each all titles, offices or positions held on behalf of Evolve, and the dates of service in said position:  Kenny Lenoir, Tommy Taylor, Scott Stafford, Scott Lenoir, Brent Bousson, Jason Brown, West Beibers, Jim Martin, Sally Wood, Richard Williams, Rebekah Proctor, John Chandler, Candy Deborg, Laurie Kerr, John Clements, Lewis Holland, and Virginia Green.

**ANSWER:**

**INTERROGATORY NO. 11:**   Please identify the persons at Evolve in charge of Information Technology ("IT") for the period January 1, 2008 to the present.

**ANSWER:**

**INTERROGATORY NO. 12:**   Please identify the software used by Evolve for the period January 1, 2008 to the present, which contains loan files for all Evolve facilities and/or branches, and identify all reports which were routinely issued from said software at Evolve.

**ANSWER:**

**INTERROGATORY NO. 13:**   Please identify the accounting software and reports used by Evolve for the period January 1, 2008 to the present, which contains loan files for all Evolve facilities and/or branches, and identify all reports which were routinely issued from said software at Evolve.

**ANSWER:**

**INTERROGATORY NO. 14:**   State each and every position held by Jayme Boyle, and for each state the dates he served in each position; and for each identify his immediate supervisor.

**ANSWER:**

Respectfully submitted,

KATHLEEN CALDWELL, PLLC

By:_____

Kathleen L. Caldwell, #9916
2670 Union Avenue Ext., Site 110
Memphis, TN 38112
Telephone:  (901) 458-4035
Facsimile:  (901) 458-4037
kathleencaldwell.attorney@gmail.com
*Attorney for Plaintiff*


## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been electronically filed and served electronically to the following:

**Robert L. Crawford, Esq.**
**Odell Horton, Jr., Esq.**
**Kathryn K. Van Namen, Esq.**
**Wyatt Tarrant & Combs, LLP**
**1715 Aaron Brenner Drive, Suite 800**
**Memphis, TN 38120-4367**

This ____ day of September, 2014.

_____
Certifying Attorney

CIRCUIT COURT OF SHELBY COUNTY, TN FILING

# 16

ELECTRONICALLY FILED
2014 Sep 18 AM 10:31
CLERK OF COURT - CIRCUIT

## IN THE CIRCUIT COURT OF SHELBY COUNTY, TENNESSEE
## FOR THE THIRTIETH JUDICIAL DISTRICT AT MEMPHIS

---

**JAYME BOYLE,**

     **Plaintiff,**

**v.**                   **DOCKET NO: CT-002249-14**
                             **Division IV**

**EVOLVE BANK & TRUST, and**
**EVOLVE FINANCIAL GROUP, INC.,**

     **Defendants.**

---

### PLAINTIFF'S FIRST REQUESTS FOR PRODUCTION
### OF DOCUMENTS TO DEFENDANTS

---

Comes now Plaintiff, by and through her counsel of record, pursuant to Rule 34 of the Tennessee Rules of Civil Procedure, and propounds to the Defendants, the following Requests for Production to be responded to within thirty (30) days.

### I. DEFINITIONS.

**Please produce the following:**

A.   As used in the below-numbered requests, the terms "document" or "documents" are used in their broad sense, to the full extent permitted by the Tennessee Rules of Civil Procedure, to mean without limitation any original written, recorded, filmed, or graphic matter of every type and description, whether produced or reproduced on paper, cards, tapes, film, electronic facsimile, computer storage disks, tapes, or devices, or any other media, including electronic data; electronic mail; data in any information management system, including indexes to databases;

1

databases themselves, including all records and field and structural information contained therein; logs of activity on any computer that may have processed or stored electronic data containing litigation information; word-processing files and file fragments; data created by financial, accounting, billing and spread-sheet programs; files and file fragments from electronic calendars and scheduling programs, that is in the possession, control, or custody of the Defendant or their present or former attorneys, agents, or representatives, and each copy of each such writing, record, electronic data, film, or graphic matter that is different in any way from the original or where such copy contains any commentary or notation whatsoever that does not appear on the original, whether by interlineations, receipt stamp notation, indication of copies sent or received, inclusion of comments or notations, or otherwise, and drafts. It specifically includes by way of illustration, but not by way of limitation, all letters, notes, diaries, reports studies, charts, graphs, memoranda, instruments, minutes, ledgers, records, recordings, tapes, microfilm, photographs, correspondence, telegrams, diaries, bookkeeping entries, financial statements, tax returns, checks, check stubs, notebook statements, affidavits, agreements, electronic data, applications, books, pamphlets, periodicals, appointment calendars, work papers, etc.

B.    In the event Defendants object or decline to produce any document requested herein on the basis of a claim of privilege or work product protection, or on any other grounds, including relevancy, please identify and describe all such documents not produced (by date, author, addressee, signatory, subject matter, and length); state the privilege relied upon or the grounds for the objection interposed

2

and the facts supporting such privilege or objection; and identify all persons who have or had access to or received a copy of the documents or any portions thereof.

C.  If any documents requested herein are unavailable because they have been destroyed or lost, identify which documents were destroyed or lost (by date, author, addressee, signatory, subject matter, and length); state when the documents were destroyed or lost and why or how; and state further the identify of any persons who may have ordered the documents destroyed together with the reasons for their destruction.

D.  These requests are continuing in nature.  If, after responding to the requests, Defendant obtains or becomes aware of any further documents responsive to these requests, a supplementary response is required.

## REQUESTS FOR PRODUCTION OF DOCUMENTS

**REQUEST NO. 1:**  Any and all documents which support, evidence, relate or otherwise pertain to any and all personnel policies of Defendants in effect during Plaintiff's employment, including but not limited to:

(a)     employee disciplinary policies, including but not limited to, counseling, written warnings, suspension, demotion and termination policies;

(b)     any and all policies regarding whistle blowers, compliance with federal statutes and regulations, compliance with state laws of any type;

(c)     internal complaint procedures;

(d)     commissions and salaries, bonuses, stock options, retirement accounts, and any other benefits relative to persons in management, including loan officers and branch managers, and all criteria for determining same; and

3

(e)     document retention/destruction policy regarding hard copies of documents as well as electronic data.

**RESPONSE:**

**REQUEST NO. 2:**  Any and all documents relating to or evidencing any action and/or investigation by Defendant or any agent or employee of Defendant into Plaintiff's internal complaints of illegal mortgage activities and the results of same, including but not limited to;

(a)     written statements of witnesses;

(b)     notes of interviews with witnesses;

(c)     tape recordings of any and all oral statements and/or interviews of witnesses;

(d)     transcriptions of any tape recordings of any and all oral statements and/or interviews of witnesses;

(e)     reports regarding the results of any and all investigations;

(f)     correspondence received from or sent to Plaintiff;

(g)     correspondence and/or reports received from or sent to the Defendant;

(h)     documents relating to or evidencing discussions between Plaintiff and Defendants and/or their employees;

(i)     documents relating to or evidencing discussions between Defendants and any person, other than Defendants' counsel,  regarding Jayme Boyle; and

(j)     documents received from or sent to any person, other than Defendants' counsel, regarding Jayme Boyle.

**RESPONSE:**

**REQUEST NO. 3:**   Produce each and every organizational chart for Evolve Bank & Trust, Evolve Mortgage Services, Inc., and Evolve Financial Group, Inc. for the period January 1, 2008 to the present.

**RESPONSE:**

**REQUEST NO. 4:**   Produce the personnel files, including performance evaluations, continuing education credits, background checks, licenses, pay history, all contracts (between Evolve and the employee), reports of all loans (credited to said employee), complaints, stock options given, for the following employees:   Jayme Boyle, and all loan originators who worked out of Evolve's Memphis offices from 2008 to the present; Rand Malin, Tommy Taylor, Rebekah Proctor.

**RESPONSE:**

**REQUEST NO. 5:**   For each former employee identified in response to Interrogatory No. 10, please produce all documents evidencing the termination and/or resignation, any severance agreement, any confidentiality agreement (if separate from the severance agreement), and the personnel file of said employee.

**RESPONSE:**

**REQUEST NO. 6:**   Produce profit and loss statements for each branch office for all quarters during which each branch office was open from January 1, 2008 to the present.

**RESPONSE:**

**REQUEST NO. 7:**      For each loan originator working out of the Memphis, Tennessee office, produce the employee's report of all loans originated in said employee's name.

**RESPONSE:**

**REQUEST NO. 8:** Produce a copy of all stock options of any kind given to any officer, director or employee at any time from 2004 to the present, and produce copies of executed and/or signed "plans" for each person holding or entitled to options.

**RESPONSE:**

**REQUEST NO. 9:** Produce all production reports for all loan officers (wherever located) from January 1, 2008 to the present.

**RESPONSE:**

**REQUEST NO. 10:** Produce all documents evidencing any and all personal loans or advances made to officers, directors, or employees from January 1, 2008 to the present.

**RESPONSE:**

**REQUEST NO. 11:** For each person listed in your response to Interrogatory No. 10, produce the licenses held, and for what period; copies of any investigations or complaints from any regulatory government office concerning said person, and if any action has been taken to prohibit said person from engaging in sales or marketing by any regulatory government office, produce all documents concerning said actions.

**RESPONSE:**

**REQUEST NO. 12:** Produce any documents, letters, emails, memos and other documentary evidence concerning Jayme Boyle from January 1, 2008 to the present.

6

**RESPONSE:**

**REQUEST NO. 13:**      Produce the loan packages for all loans produced by or credited to Tommy Taylor, and/or Rebekah Proctor, from January 1, 2008 to the present, and worked on by Debbie Winfield or her successor.

**RESPONSE:**

**REQUEST NO. 14:**      Produce email records from January 1, 2008 to the present, in which Jayme Boyle is mentioned or referenced, or which pertain to compensation for loan officers, or which pertain to any mortgage loans, from or to the following persons:  Tommy Taylor, Candy Deborg, Rebekah Proctor, Chad Irwin, Brent Bousson, Shirley Allen, Debbie Winfield.

**RESPONSE:**

**REQUEST NO. 15:**      Produce all cell telephone records (including billing statements and records of calls) for the persons identified in Request for Production No. 14 above during the period January 1, 2008 to the present, and identify for each employee or officer the cellular company, and the cell telephone number or numbers.

Respectfully submitted,

KATHLEEN CALDWELL, PLLC

By: _____
Kathleen L. Caldwell, #9916
2670 Union Avenue Ext., Site 110
Memphis, TN 38112
Telephone:  (901) 458-4035
Facsimile:   (901) 458-4037
kathleencaldwell.attorney@gmail.com
*Attorney for Plaintiff*

7

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been electronically filed and served electronically to the following:

> **Robert L. Crawford, Esq.**
> **Odell Horton, Jr., Esq.**
> **Kathryn K. Van Namen, Esq.**
> **Wyatt Tarrant & Combs, LLP**
> **1715 Aaron Brenner Drive, Suite 800**
> **Memphis, TN 38120-4367**

This ___8___ day of September, 2014.

Certifying Attorney

CIRCUIT COURT OF SHELBY COUNTY, TN FILING

# 17

ELECTRONICALLY FILED
2014 Sep 16 PM 2:29
CLERK OF COURT - CIRCUIT

| SUBPOENA | STATE OF TENNESSEE | Docket Number |
|---|---|---|
| ☐ to testify   ☒ duces tecum | SHELBY COUNTY | CT-002249-14 |
| ☐ to take deposition  ☐ for medical records* | CIRCUIT COURT | |
| *(see HIPAA requirement below)* | | |

**FILED**

SEP 18 2014

CIRCUIT COURT CLERK
BY_____ D.C.

You are hereby commanded to summon:

Perl Mortgage, Custodian of Records
6750 Poplar Avenue, Suite 202
Memphis, TN 38138

See attached Exhibit A.

Method of Service:

☐ Shelby County Sheriff
☐ Commissioner of Insurance ($)
☐ Secretary of State ($)
☐ Other TN County Sheriff ($)
☑ Private Process Server
☐ Other

($) Attach Required Fees

personally to be and appear on  Friday, October 17 _____, at  2:00 _____ P.M. _____

at  Wyatt, Tarrant & Combs

in the City of Memphis, then and there to testify and give evidence on behalf of  Defendant _____ in the case of

Jayme Boyle _____ against  Evolve Bank and Trust, et al.

This you will in no wise omit, under the penalty prescribed by law.

Herein fail not, and have you then and there this Writ.

Tested and Issued this _____ day of _____, 20 _____

FOR AMERICANS WITH DISABILITIES ACT (ADA)
ASSISTANCE ONLY, CALL (901) 222-2341

JIMMY MOORE _____, Clerk

By: _____ D.C.

**HIPAA NOTICE**

A copy of this subpoena has been provided to counsel for the patient or the patient by mail or facsimile on the

_____ day of _____, 20 ___ so as to allow him/her seven (7) days to:

(A) Serve the recipient of the subpoena by facsimile with a written objection to the subpoena, with a copy of the notice by facsimile to the party that served the subpoena, and

(B) Simultaneously file and serve a motion for a protective order consistent with the requirements of T.R.C.P. 26.03 and 26.07.

If no objection is made within seven (7) days of the above date, you shall process this subpoena and produce the documents by the date and time specified in the subpoena. The signature of counsel or party on the subpoena is certification that the above notice was provided to the patient.

_____
Attorney or Party Signature for HIPAA notice

## RETURN OF SERVICE OF SUBPOENA

I HEREBY CERTIFY THAT I **HAVE** SERVED THE WITHIN SUBPOENA:

By delivering on the ___17___ day of ___Sept.___ , 20_14_ at _10:56 A_ M. a copy of the

subpoena to the following Witness _Perl Mortgage c/o Jeff Kuehn - Mgr._

at _6750 Poplar, Suite 202 Memphis, Tn._

X _____          By: _____
Signature of person accepting service                Sheriff or other authorized person to serve process

## RETURN OF NON-SERVICE OF SUBPOENA

I HEREBY CERTIFY THAT I **HAVE NOT** SERVED THE WITHIN SUBPOENA:

To the named Witness _____

because _____ is (are) not to be found in this County after diligent search and inquiry for the following

reason(s): _____

This _____ day of _____ , 20_____ .

By: _____
Sheriff or other authorized person to serve process

Docket No: CT-002249-14

IN THE
(CIRCUIT/CHANCERY) COURT
OF TENNESSEE
FOR THE
THIRTIETH JUDICIAL
DISTRICT AT MEMPHIS

SUBPOENA

Jayme Boyle
Plaintiff

VS

Evolve Bank & Trust, et al.
Defendant

Kate Van Namen
Attorney/Pro Se

(901) 537-1000
Telephone Number



**The Shelby County, Tennessee Circuit Court**

**Case Style:** JAYME BOYLE VS EVOLVE BANK AND TRUST

**Case Number:** CT-002249-14

**Type:** SUBPOENA ISSD TO MISC

Ms Sheri C Carter, DC

Electronically signed on 09/16/2014 02:37:21 PM

# AFFIDAVIT OF SERVICE

| State of TENNESSEE | County of SHELBY | Circuit Court |
|---|---|---|

Case Number: CT-002249-14   Court Date: 10/17/2014 2:00 pm

Plaintiff:
**JAYME BOYLE**

vs.

Defendant:
**EVOLVE BANK AND TRUST, et al**

For:
Kathryn Van Namen
WYATT, TARRANT & COMBS, LLP
1715 Aaron Brenner Drive
Suite 800
Memphis, TN 38120

Received by RELIABLE PROCESS SERVICE to be served on **PERL MORTGAGE CUSTODIAN OF RECORDS, 6750 POPLAR, SUITE 202, MEMPHIS, TN**.

I, Alfred Neely, being duly sworn, depose and say that on the **17th day of September, 2014 at 10:56 am, I:**

served an **AUTHORIZED** entity by delivering a true copy of the **Subpoena Duces Tecum for Production of Documents** with the date and hour of service endorsed thereon by me, to: **JEFF KUEHN** as **MANAGER** at the address of: **PERL MORTGAGE, 6750 POPLAR, SUITE 202, MEMPHIS, TN**, who stated they are authorized to accept service for **PERL MORTGAGE**, and informed said person of the contents therein, in compliance with state statutes.

I am over the age of 18 and have no interest in the above action.

Subscribed and Sworn to before me on the 17th day
of September, 2014 by the affiant who is personally
known to me.

NOTARY PUBLIC

**Alfred Neely**
Process Server

**RELIABLE PROCESS SERVICE**
**4410 Ross Road**
**Memphis, TN 38141**
**(901) 502-7696**

Our Job Serial Number: UAR-2014000400
Ref: CT-002249-14

Copyright © 1992-2011 Database Services, Inc. - Process Server's Toolbox V6.5n

CIRCUIT COURT OF SHELBY COUNTY, TN FILING

# 18

ELECTRONICALLY FILED
2014 Oct 02 AM 10:48
CLERK OF COURT - CIRCUIT

## IN THE CIRCUIT COURT OF SHELBY COUNTY, TENNESSEE
## FOR THE THIRTIETH JUDICIAL DISTRICT AT MEMPHIS

**JAYME BOYLE,**

      **Plaintiff,**

**v.**                               **No. CT-002249-14**

**EVOLVE BANK & TRUST, and**
**EVOLVE FINANCIAL GROUP, INC.,**

      **Defendants.**

## ANSWER TO AMENDED COMPLAINT

      Defendants, Evolve Bank & Trust and Evolve Financial Group, Inc. ("Evolve") submit the following as their Answer to the Amended Complaint in this case.

### <u>AFFIRMATIVE DEFENSES</u>

### <u>FIRST DEFENSE</u>

The Amended Complaint fails to state a claim upon which relief can be granted.

### <u>SECOND DEFENSE</u>

      Evolve is not liable to Plaintiff because Evolve was not involved in any illegal activity, as alleged in the Amended Complaint, or otherwise.

### <u>THIRD DEFENSE</u>

      Evolve's acts were at all times done in good faith with respect to each and every purported cause of action in Plaintiff's Amended Complaint.

### <u>FOURTH DEFENSE</u>

      Evolve hereby give notices that it intends to rely upon such other affirmative defenses as may become apparent during the course of discovery.

## FIFTH DEFENSE

Evolve fulfilled any and all legal duties owed by it, if any, to the Plaintiff.

## SIXTH DEFENSE

Plaintiff failed to mitigate his alleged damages, the entitlement to which he is denied.

## SEVENTH DEFENSE

At all times while Plaintiff was employed by Evolve, Plaintiff was an at-will employee.

## EIGHTH DEFENSE

Legitimate reasons exist for all employment actions at issue in this case.

Evolve hereby specifically pleads that if the allegations of the Amended Complaint are true, Plaintiff is or may be guilty of either contributory negligence or affirmative conduct in connection with the events about which he complains. To the extent events that form the subject matter of Plaintiff's Amended Complaint and Plaintiff's alleged damages, if any, were caused by the actions or omissions of Plaintiff, any recovery by Plaintiff must be reduced accordingly under principles of comparative fault.

Having set forth certain preliminary defenses, Evolve now responds to the Plaintiff's Amended Complaint paragraph by paragraph, as follows:

## I.   **PARTIES**

1.     Upon information and belief, admitted.

2.     Admitted.

## II   **FACTS**

3.     Evolve generally admits the allegations contained in the first two sentences of paragraph 3 of Plaintiff's Amended Complaint.  Evolve admits Plaintiff resigned from his job. Evolve is without knowledge or information sufficient to admit or deny the allegations

2

contained in the last sentence of paragraph 3 of Plaintiff's Amended Complaint and therefore denies the same.

4.      Evolve denies that Boyle returned to Evolve in April 2009.  Boyle returned to Evolve in March 2009 to serve as a loan originator. Evolve admits that it entered into an employment contract with Boyle and states that the contract, and any other contracts, speak for themselves. Evolve denies any implied duties of good faith and fair dealing in any employment contract and denies breach of its contractual relationship with Boyle. Evolve is without knowledge or information sufficient to admit or deny the remaining allegations contained in paragraph 4 of Plaintiff's Complaint and therefore denies the same.

5.      Admitted.

6.      Evolve generally admits Boyle received a monthly salary of approximately $4,000 and assisted in compliance.  Evolve denies the remaining allegations contained in paragraph 6 of Plaintiff's Amended Complaint.

7.      Evolve denies any and all allegations pertaining to any alleged illegal activities.

8.      Evolve specifically denies any allegations of illegal activity by Evolve's CEO and/or upper management.

9.      Evolve denies any and all allegations pertaining to any alleged illegal activities, including, but not limited to Boyle's allegations that he reported any such illegal activity.  The changing nature of the laws in the financial services industry and the implementation of many new regulations impact regularly-conducted banking activities.

10.      Evolve admits that Boyle met with certain members of Evolve's management to discuss various issues in October 2012, including Boyle's poor performance. The remaining allegations contained in paragraph 10 of Plaintiff's Amended Complaint are denied.

11.     Evolve denies any and all allegations pertaining to any alleged illegal activities.

12.     Evolve admits that Boyle accepted different employment in February 2013, but this was based on his poor performance as a co-manager with Jeff Kuehn.  Evolve denies that any change in employment was in retaliation. Evolve further denies the alleged demotion is a breach of contract and a violation of any implied duties of good faith and fair dealing. Evolve is without knowledge or information sufficient to determine Boyle's reasons for accepting the position, and therefore, denies same.

13.     Denied.

14.     Denied.  Boyle was provided with the option to resign or accept continued employment as a loan officer due to his poor management performance.

15.     Evolve generally admits that it was involved in some preliminary discussions regarding deposition testimony with Boyle.

16.     Evolve admits Plaintiff gave a deposition.  Evolve is without knowledge or information sufficient to admit or deny the remaining allegation contained in paragraph 16 of Plaintiff's Amended Complaint and therefore denies the same.

17.     Evolve admits that Boyle reported to Chad Irwin in his position as loan officer. Evolve denies any allegations of wrongdoing by Tommy Taylor.  Evolve is without knowledge or information sufficient to admit or deny the remaining allegations contained in paragraph 17 of Plaintiff's Amended Complaint and therefore denies the same.

18.     Evolve denies any allegations of a severe and pervasive hostile work environment, or any demeaning or embarrassing activities.  Evolve further denies Boyle was demoted based on his complaints of alleged illegal activities.  Evolve is without knowledge or

information sufficient to admit or deny the remaining allegations contained in paragraph 18 of Plaintiff's Amended Complaint and therefore denies the same.

19.    Evolve admits the allegations contained in the first sentence of paragraph 19. However, Evolve denies the remaining allegations contained in paragraph 19 of Plaintiff's Amended Complaint.

20.    Denied.

21.    Evolve denies that it did not provide continuing education for its loan originators. Evolve admits the changing landscape of the financial regulations in 2010 and 2011, but denies that it did not inform and adequately train employees regarding such laws. Evolve further denies any relevance of the allegations contained in the last sentence of paragraph 21.

22.    Evolve is without knowledge or information sufficient to admit or deny the allegations contained in paragraph 22 of Plaintiff's Amended Complaint and therefore denies the same.

23. Evolve generally admits the changes in the financial lending industry, including Consumer Financial Protection Act of 2010, 12 U.S.C. § 5536(a)(1)(A), and states that the laws speak for themselves. Evolve is without knowledge or information sufficient to admit or deny the remaining allegations contained in paragraph 23 of Plaintiff's Amended Complaint and therefore denies the same.

24.    Evolve is without knowledge or information sufficient to admit or deny the allegations contained in paragraph 24 of Plaintiff's Amended Complaint and therefore denies the same.

25.    Evolve is without knowledge or information sufficient to admit or deny the allegations contained in paragraph 25 of Plaintiff's Amended Complaint and therefore denies the same.

26.    Evolve is without knowledge or information sufficient to admit or deny the remaining allegations contained in paragraph 26 of Plaintiff's Amended Complaint and therefore denies the same. Evolve denies any allegations of a hostile work environment.

27.    Evolve is without knowledge or information sufficient to admit or deny the remaining allegations contained in paragraph 27 of Plaintiff's Amended Complaint and therefore denies the same.

28.    Evolve is without knowledge or information sufficient to admit or deny the remaining allegations contained in paragraph 28 of Plaintiff's Amended Complaint and therefore denies the same.

29.    Evolve is without knowledge or information sufficient to admit or deny the remaining allegations contained in paragraph 29 of Plaintiff's Amended Complaint and therefore denies the same.

30.    Evolve admits that Boyle resigned on May 21, 2013, but is without knowledge or information sufficient to admit or deny the remaining allegations contained in paragraph 30 and therefore denies the same.

31.    Evolve denies all allegations of a hostile work environment and intolerable working conditions. Evolve further denies any and all allegations of illegal activities and/or illegal business practices and policies. Evolve is without knowledge or information sufficient to admit or deny the allegations contained in paragraph 31 of Plaintiff's Amended Complaint and therefore denies the same.

32.     Evolve denies all allegations of a hostile work environment and intolerable working conditions.  Evolve further denies any and all allegations of illegal activities and/or illegal business practices and policies.  Evolve is without knowledge or information sufficient to admit or deny the allegations contained in paragraph 32 of Plaintiff's Amended Complaint and therefore denies the same.

33.     Denied.  Evolve further denies any and all allegations of illegal activities and/or illegal business practices and policies.  Evolve is without knowledge or information sufficient to admit or deny the allegations contained in paragraph 33 of Plaintiff's Amended Complaint and therefore denies the same.

34.     Evolve denies Plaintiff's claims of wage loss, loss of stock options, physical pain and suffering, emotional pain and suffering, and other injuries because Boyle was not constructively discharged; he voluntarily resigned.

35.     Denied.

### III.    CAUSES OF ACTION

36.     Denied.

37.     Denied.  Plaintiff was an at-will employee.

### IV.    PRAYER FOR RELIEF

1.-5. Evolve denies that it is liable to Plaintiff's for any compensatory damages or punitive damages.

WHEREFORE, having fully answered Plaintiff's Amended Complaint, Evolve that it be dismissed.

Respectfully submitted,

_____
Robert L. Crawford (#7216)
Odell Horton, Jr. (#12426)
Kathryn K. Van Namen (#31322)
Wyatt Tarrant & Combs, LLP
1715 Aaron Brenner Drive, Suite 800
Memphis, Tennessee  38120-4367
(901) 537-1000 telephone
(901) 537-1010 facsimile
lcrawford@wyattfirm.com
ohorton@wyattfirm.com
kvannamen@wyattfirm.com

*Counsel for Evolve Bank & Trust and*
*Evolve Financial Group, Inc.*

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing has been served upon the

following, via U.S. Mail, postage prepaid, on this the 2nd day of October, 2014:

Kathleen L. Caldwell
KATHLEEN CALDWELL, PLLC
2670 Union Avenue Ext., Suite 110
Memphis, TN  38112

_____
Kathryn K. Van Namen

61234911.4

8

CIRCUIT COURT OF SHELBY COUNTY, TN FILING

19

ELECTRONICALLY FILED
2015 Jan 07 PM 2:34
CLERK OF COURT - CIRCUIT

## IN THE CIRCUIT COURT OF SHELBY COUNTY, TENNESSEE
## FOR THE THIRTIETH JUDICIAL DISTRICT AT MEMPHIS

**JAYME BOYLE,**

     **Plaintiff,**

**v.**                      **No. CT-002249-14**

**EVOLVE BANK & TRUST, and**
**EVOLVE FINANCIAL GROUP, INC.,**

     **Defendants.**

## DEFENDANTS' RESPONSES TO PLAINTIFF'S FIRST SET OF INTERROGATORIES

Pursuant to Rule 33 of the Tennessee Rules of Civil Procedure, Defendants Evolve Bank & Trust, and Evolve Financial Group, Inc. ("Evolve") submits the following responses and objections to the First Set of Interrogatories propounded by Plaintiff Jamie Boyle ("Plaintiff"). These responses are made upon information available to Evolve as of the date of these responses. In the event Evolve discovers additional information responsive to Plaintiff's requests, Evolve will supplement these responses as required by the Tennessee Rules of Civil Procedure.

### GENERAL OBJECTIONS

1.     Evolve objects to Plaintiff's interrogatories to the extent they seek information protected from disclosure by the attorney-client privilege, the work product doctrine, and/or any other applicable privilege.

2.     Evolve objects to Plaintiff's interrogatories to the extent they attempt to impose obligations other than those affirmatively required by the Tennessee Rules of Civil Procedure or Local Rules.

3.      Evolve objects to the instructions and definitions supplied by Plaintiff to the extent that they are overbroad, vague, and inconsistent with the normal usage and meanings of the words used therein.  Evolve also objects to the instructions and definitions supplied by Plaintiff to the extent that they are overly burdensome and constitute an unreasonable expansion of the discovery requests themselves.  Evolve gives notice that it does not consider itself bound by the instructions and definitions propounded by Plaintiff.  Instead, Evolve answers these discovery requests in a manner consistent with a normal understanding of the language used therein and to the extent necessary to fairly and fully answer the discovery requests pursuant to the Tennessee Rules of Civil Procedure.

4.      Evolve's responses are made without waiving: (1) the right to object on the grounds of competency, relevancy, and materiality, hearsay, or any other proper ground to the use of any such information, for any purpose, in whole or in part, in any action, and (2) the right to object on any and all grounds, at any time, to any other discovery procedure involving or relating to the subject matter of Defendants' interrogatories.

5.      Subject to the foregoing general objections, Evolve provides the following specific answers, objections, and responses.  Objections, answers, and responses to each interrogatory are based upon information presently known to Evolve, and discovery and investigation may yield further information.  Accordingly, Evolve reserves the right to supplement or correct its responses in accordance with the Tennessee Rules of Civil Procedure.

Without waiving those objections, Evolve responds as follows:

## RESPONSES TO FIRST SET OF INTERROGATORIES

**INTERROGATORY NO. 1:**      Identify the name, address and telephone number of each individual who is responsible for assisting in the preparation of responses to these

Interrogatories, and identify each Interrogatory for which each individual assisted in answering and each document relied upon to make said answer.

**ANSWER:**   Jason Brown, Chief Compliance Officer for Evolve, and Brent Bousson, Human Resources Director for Evolve, generally worked with undersigned counsel to prepare responses to the interrogatories.  Each may be contacted through counsel for Evolve.

**INTERROGATORY NO. 2:**   Identify and describe in detail all communications (letters, memos, emails, etc.), both written and oral in your custody, control or possession, regarding Plaintiff which are dated anytime from April 2009 to the present.

**ANSWER:**   Evolve objects to this Interrogatory because it is temporally overbroad, unduly burdensome, appears to seek inadmissible, irrelevant information regarding Plaintiff in any capacity, between or among any number of Evolve employees, and is not reasonably calculated to lead to the discovery of admissible evidence. Should Plaintiff wish to clarify this request, undersigned counsel will consult with counsel for the Plaintiff concerning an appropriate scope for this request.

**INTERROGATORY NO. 3:**   Do you contend that Plaintiff informed Tommy Taylor, Brent Bousson, Jason Brown, Jeff Kuehn or anyone else at Evolve of illegal practices or violations of federal or state law? If so, identify the person who received Boyle's complaint, and state what the complaint consisted of, and describe in detail each action the Defendants took, if any, in investigating Plaintiffs allegations concerning illegal or improper communications, overages and bonuses being paid, or requiring branch managers to make capital contributions, or paying commissions and bonuses to top management, or incentivizing loan officers, or any other illegal practices.

**ANSWER:**   Evolve denies that any such illegal practices or violations of federal or state law occurred. Evolve further denies Plaintiff informed Evolve of any such illegal practices or violations of federal or state law.

**INTERROGATORY NO. 4:**   Identify any and all persons who participated, in any way, in any investigation conducted by Defendants regarding Plaintiff's complaints of illegal mortgage practices at Evolve.

**ANSWER:**   Evolve states that because there were no illegal mortgage practices at Evolve, there were no investigations regarding Plaintiff's alleged complaints. Evolve further denies Plaintiff informed Evolve of any such illegal practices or violations of federal or state law.

**INTERROGATORY NO. 5:**   Identify and describe in detail the factual basis for each affirmative defense Defendants assert in their answer to this civil action, and identify each document Defendants contend constitutes evidence of or provides support for each affirmative defense Defendants assert in their answer to this civil action.

**ANSWER:**   Evolve objects to the interrogatory as premature since discovery has just commenced in the captioned matter.  Evolve's affirmative defenses were pled in response to the information contained in Plaintiff's Complaint and evidence in support of these defenses will be furnished as discovery proceeds.

**INTERROGATORY NO. 6:**   Please state whether any photographs, motion pictures, audio tapes, or video tapes were taken of the Plaintiff, or any person or thing relevant to the issues in this matter and, if so, state when and where they were taken, the present location of the photographs, motion pictures, audio tapes or video tapes, and the name and address of the person making said recording(s).

**ANSWER:**   Evolve is not aware of any such, photographs, motion pictures, audio tapes, or video tapes, other than a headshot of Plaintiff, which was taken while he was an employee and which is currently being used by Plaintiff on his LinkedIn account page, and a photo including Plaintiff at a ribbon cutting ceremony, which will be produced.

**INTERROGATORY NO. 7:**   Identify any and all persons who have given statements or have made any allegations regarding any of the allegations in Plaintiff's Complaint or your defenses thereto. Include in your answer the substance of said statement, the date given, where it was made and to whom it was given. If you assert attorney-client privilege, then state the date, where it was made, and to whom it was given.

**ANSWER:**   Evolve is not aware of any such statements.

**INTERROGATORY NO. 8:**   Please identify each and every employee of Evolve who has voluntarily or involuntarily left Evolve's employment from January 1, 2008 to the present. For each, state the reasons for said termination and/or resignation, the date of termination and/or resignation, and whether a severance agreement was entered into between Evolve and said employee.

**ANSWER:**   Evolve objects to this Interrogatory because it is temporally overbroad, appears to seek information regarding former employees of Evolve  that is neither relevant to a claim or defense in this case, nor reasonably calculated to lead to the discovery of admissible evidence., who are not parties to this action, and is not reasonably calculated to lead to the discovery of admissible evidence.  Evolve further objects that this request is unduly burdensome as numerous employees of Evolve have either been terminated or resigned in the six year period identified.  Should Plaintiff wish to clarify this request, undersigned counsel will consult with counsel for the Plaintiff concerning an appropriate scope for this request.

**INTERROGATORY NO. 9:**    Please identify each and every LPO branch office operated by Evolve from January 1, 2008 to the present and for each state its physical address, the geographic region covered by said branch, the date it opened, and identify the branch's manager from January 1, 2008 to the present.

**ANSWER:**    Evolve objects to this Interrogatory because it is temporally overbroad, unduly burdensome, and appears to seek irrelevant information in its request for all LPO branch offices over the past six years.  Many branches have been opened and closed by Evolve during the six year period of time identified, and each branch may have had numerous managers during that period.    Additionally, Evolve objects to this Interrogatory to the extent it requests information regarding geographic regions covered by each branch, as Evolve is a nationwide lender.

**INTERROGATORY NO. 10:**   For the following persons, please state for each all titles, offices or positions held on behalf of Evolve, and the dates of service in said position: Kenny Lenoir, Tommy Taylor, Scott Stafford, Scott Lenoir, Brent Bousson, Jason Brown, West Beibers, Jim Martin, Sally Wood, Richard Williams, Rebekah Proctor, John Chandler, Candy Deborg, Laurie Kerr, John Clements, Lewis Holland, and Virginia Green.

**ANSWER:**    Evolve objects to this Interrogatory because it is temporally overbroad, unduly burdensome, and appears to seek irrelevant information in its request for all titles, offices, or positions held for the various individuals named, as well as the dates of service for all of the individuals in their various positions at Evolve. Subject to this objection, and those stated hereinabove, Evolve identifies the current titles and/or last known positions of the following individuals:

| Kenny Lenoir | Executive Vice President Trust Division |
| Tommy Taylor | Chief Executive Officer, Evolve Bank & Trust: Mortgage Services |
| Scott Stafford | President, CEO and Director of Evolve Bank & Trust |
| Scot Lenior | President and Chief Executive Officer of Evolve Bancorp, Inc. |
| Brent Bousson | Human Resources Director, Evolve Bank & Trust |
| Jason Brown | Chief Compliance Officer Chief Auditor, Evolve Bank & Trust |
| West Beibers | Director of Mortgage Operations |
| Jim Martin | Underwriter; Secondary Market Manager, Temporary Memphis Office Manager, former LPO Manager |
| Sally Wood | LPO Supervisor |
| Richard Williams | Secondary Market Manager |
| Rebekah Proctor | Investor relations; Executive Assistant to Tommy Taylor |
| John Chandler | Executive Vice President Mortgage Division and Chief Operating Officer, Evolve Bank & Trust |
| Candy Deborg | There are no Evolve employees by that name. However, Candy Debord – Mortgage Comptroller |
| Laurie Kerr | Former Chief Compliance Officer |
| John Clements | There are no Evolve employees by that name. However, John Clement – Former Chief Financial Officer |
| Lewis Holland | Director |
| Virginia Green | Former President of Evolve Mortgage Services, Inc. |

**INTERROGATORY NO. 11:**   Please identify the persons at Evolve in charge of

Information Technology ("IT") for the period January 1, 2008 to the present.

**ANSWER:**   Evolve objects to this Interrogatory because it appears to seek irrelevant

information regarding current and former employees of Evolve, which is neither relevant to a

claim or defense in this case, nor reasonably calculated to lead to the discovery of admissible

claim or defense in this case, nor reasonably calculated to lead to the discovery of admissible evidence.  Subject to these objections, and those stated hereinabove, Chris Gully and Hank Word have served as IT directors for Evolve.

**INTERROGATORY NO. 12:**  Please identify the software used by Evolve for the period January 1, 2008 to the present, which contains loan files for all Evolve facilities and/or branches, and identify all reports which were routinely issued from said software at Evolve.

**ANSWER:**  Evolve objects to this Interrogatory because it appears to seek information regarding software used by Evolve since 2008 which is neither relevant to a claim or defense in this case, nor reasonably calculated to lead to the discovery of admissible evidence. Without waiving these objections, Evolve has previously used and/or is currently using software from Ellie Mae called Encompass 360 and Encompass Banker.  Daily, monthly, and weekly reports are generated from information generally collected from such databases.

**INTERROGATORY NO. 13:**  Please identify the accounting software and reports used by Evolve for the period January 1, 2008 to the present, which contains loan files for all Evolve facilities and/or branches, and identify all reports which were routinely issued from said software at Evolve.

**ANSWER:**  Evolve objects to this Interrogatory because it appears to seek irrelevant information regarding accounting software used by Evolve since 2008 beyond any allegations in Plaintiff's Complaint, and is not reasonably calculated to lead to the discovery of admissible evidence. Without waiving these objections, Evolve has previously used and/or is currently using Banktel and/or Accounting for Mortgage Bankers.

**INTERROGATORY NO. 14:**   State each and every position held by Jayme Boyle, and for each state the dates he served in each position; and for each identify his immediate supervisor.

**ANSWER:**   Based on the titles as identified in Plaintiff's email history, the following chart identifies Plaintiff's dates of positions, titles, and immediate supervisor.

| December 2009 | Manager/Loan Officer | Jeff Kuehn |
| July 2010 | Manager | Jeff Kuehn |
| November 2010 | Direct Lending LPO Manager/Loan Compliance Manager | Jeff Kuehn |
| February 2011 | Direct Lending Manager | Jeff Kuehn |
| December 2011 | Internet Lending Manager | Jeff Kuehn |
| June 2012 | Mortgage Banker/Sales Manager | Jeff Kuehn |
| February 2013 | Mortgage Banker | Chad Irwin |

## DECLARATION

Jason Brown states that he is Chief Compliance Officer and Chief Auditor at Evolve Bank & Trust, and although he does not have personal knowledge of all of the information set forth in the answer portions of Evolve Bank & Trust's Responses to Plaintiff's First Set of Interrogatories, such information is true and correct upon his information and belief. The information contained in the answer portions of these interrogatory responses was collected and assembled by authorized employees of Evolve Bank & Trust. The information was collected in accordance with the customary process for collecting and assembling such information employed by Evolve Bank & Trust. Pursuant to the Tennessee Rules of Civil Procedure, Jason Brown hereby declares under penalty of perjury that the answer portions of these interrogatory answers are true and correct on behalf of Evolve Bank & Trust.

Signed, this __6th__ day of January, 2015.

Jason Brown
Chief Compliance Officer, Chief Auditor

Respectfully submitted,

_____

Robert L. Crawford (#7276)
Odell Horton, Jr. (#12426)
Kathryn K. Van Namen (#31322)
Wyatt Tarrant & Combs, LLP
1715 Aaron Brenner Drive, Suite 800
Memphis, Tennessee  38120-4367
(901) 537-1000 telephone
(901) 537-1010 facsimile
lcrawford@wyattfirm.com
ohorton@wyattfirm.com
kvannamen@wyattfirm.com

*Counsel for Evolve Bank & Trust and
Evolve Financial Group, Inc.*

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing has been served upon the

following, via U.S. Mail, postage prepaid, on this the ____ day of January, 2015:

Kathleen L. Caldwell
KATHLEEN CALDWELL, PLLC
2670 Union Avenue Ext., Suite 110
Memphis, TN  38112

Kathryn K. Van Namen

61257541.1

11

CIRCUIT COURT OF SHELBY COUNTY, TN FILING

# 20

ELECTRONICALLY FILED
2015 Jan 07 PM 2:34
CLERK OF COURT - CIRCUIT

## IN THE CIRCUIT COURT OF SHELBY COUNTY, TENNESSEE
## FOR THE THIRTIETH JUDICIAL DISTRICT AT MEMPHIS

JAYME BOYLE,

      **Plaintiff,**

v.                                  **No. CT-002249-14**

EVOLVE BANK & TRUST, and
EVOLVE FINANCIAL GROUP, INC.,

      **Defendants.**

## DEFENDANTS' RESPONSES TO PLAINTIFF'S FIRST REQUESTS FOR PRODUCTION OF DOCUMENTS

Pursuant to Rule 34 of the Tennessee Rules of Civil Procedure, Defendants Evolve Bank & Trust, and Evolve Financial Group, Inc. ("Evolve") submits the following responses and objections to the First Set of Interrogatories propounded by Plaintiff Jamie Boyle ("Plaintiff"). These responses are made upon information available to Evolve as of the date of these responses. In the event Evolve discovers additional information responsive to Plaintiff's requests, Evolve will supplement these responses as required by the Tennessee Rules of Civil Procedure.

### GENERAL OBJECTIONS

1.      Evolve objects to Plaintiff's requests to the extent they seek information that is protected from disclosure by the attorney-client privilege, the work product doctrine, and/or any other applicable privilege.

2.      Evolve objects to Plaintiff's requests to the extent they attempt to impose obligations other than those affirmatively required by the Tennessee Rules of Civil Procedure or Local Rules.

3.     Evolve objects to the instructions and definitions supplied by Plaintiff to the extent that they are overbroad, vague, and inconsistent with the normal usage and meanings of the words used therein.  Evolve also objects to the instructions and definitions supplied by Plaintiff to the extent that they are overly burdensome and constitute an unreasonable expansion of the discovery requests themselves.  Evolve gives notice that it does not consider itself bound by the instructions and definitions propounded by Plaintiff.  Instead, Evolve answers these discovery requests in a manner consistent with a normal understanding of the language used therein and to the extent necessary to fairly and fully answer the discovery requests pursuant to the Tennessee Rules of Civil Procedure.

4.     Evolve's responses are made without waiving: (1) the right to object on the grounds of competency, relevancy, and materiality, hearsay, or any other proper ground to the use of any such information, for any purpose, in whole or in part, in any action, and (2) the right to object on any and all grounds, at any time, to any other discovery procedure involving or relating to the subject matter of Defendants' interrogatories.

5.     Subject to the foregoing general objections, Evolve provides the following specific answers, objections, and responses.  Objections, answers, and responses to each request are based upon information presently known to Evolve, and discovery and investigation may yield further information.  Accordingly, Evolve reserves the right to supplement or correct its responses in accordance with the Tennessee Rules of Civil Procedure.

Without waiving those objections, Evolve responds as follows:

## RESPONSES TO REQUEST FOR PRODUCTION OF DOCUMENTS

**REQUEST NO. 1:**   Any and all documents which support, evidence, relate or otherwise pertain to any and all personnel policies of Defendants in effect during Plaintiff's employment, including but not limited to:

(a)     employee disciplinary policies, including but not limited to, counseling, written warnings, suspension, demotion and termination policies;

(b)     any and all policies regarding whistle blowers, compliance with federal statutes and regulations, compliance with state laws of any type;

(c)     internal complaint procedures;

(d)     commissions and salaries, bonuses, stock options, retirement accounts, and any other benefits relative to persons in management, including loan officers and branch managers, and all criteria for determining same; and

(e) document retention/destruction policy regarding hard copies of documents as well as electronic data.

**RESPONSE:** Evolve objects to this Request because it is overbroad, unduly burdensome, appears to seek inadmissible, irrelevant information regarding Plaintiff in any capacity, and is not reasonably calculated to lead to the discovery of admissible evidence. Should Plaintiff wish to narrow this request, undersigned counsel will consult with counsel for the Plaintiff concerning an appropriate scope for this request.  Subject to these objections, Evolve will produce the employee handbook during the relevant time period for Plaintiff's employment, following entry of an appropriate protective order.  Further, regarding any formal document retention or destruction policy, immediately after commencement of Plaintiff's action, Evolve

properly issued an appropriate litigation hold notice to ensure preservation of potentially relevant documents.

**REQUEST NO. 2:**    Any and all documents relating to or evidencing any action and/or investigation by Defendant or any agent or employee of Defendant into Plaintiff's internal complaints of illegal mortgage activities and the results of same, including but not limited to;

(a)    written statements of witnesses;

(b)    notes of interviews with witnesses;

(c)    tape recordings of any and all oral statements and/or interviews of witnesses;

(d)    transcriptions of any tape recordings of any and all oral statements and/or interviews of witnesses;

(e)    reports regarding the results of any and all investigations;

(f)    correspondence received from or sent to Plaintiff;

(g)    correspondence and/or reports received from or sent to the Defendant;

(h)    documents relating to or evidencing discussions between Plaintiff and Defendants and/or their employees;

(i)    documents relating to or evidencing discussions between Defendants and any person, other than Defendants' counsel, regarding Jayme Boyle; and

(j)    documents received from or sent to any person, other than Defendants' counsel, regarding Jayme Boyle.

**RESPONSE:** Evolve denies that any such illegal practices or violations of federal or state law occurred. Evolve further denies Plaintiff informed Evolve of any such illegal practices or violations of federal or state law.

**REQUEST NO. 3:**   Produce each and every organizational chart for Evolve Bank & Trust, Evolve Mortgage Services, Inc., and Evolve Financial Group, Inc. for the period January 1, 2008 to the present.

**RESPONSE:** Evolve objects to this Request because it is overbroad, unduly burdensome, appears to seek information regarding very detailed descriptions of the various entities for an unreasonable period of time, and is neither relevant to a claim or defense in this matter, nor reasonably calculated to lead to the discovery of admissible evidence. Should Plaintiff wish to narrow this request, undersigned counsel will consult with counsel for the Plaintiff concerning an appropriate scope for this request.

**REQUEST NO. 4:**   Produce the personnel files, including performance evaluations, continuing education credits, background checks, licenses, pay history, all contracts (between Evolve and the employee), reports of all loans (credited to said employee), complaints, stock options given, for the following employees: Jayme Boyle, and all loan originators who worked out of Evolve's Memphis offices from 2008 to the present; Rand Malin, Tommy Taylor, Rebekah Proctor.

**RESPONSE:** Evolve objects to this Request because it is overbroad, unduly burdensome, appears to seek inadmissible, irrelevant information regarding Plaintiff in any capacity as well as other Evolve employees who are not parties to this action, and is not reasonably calculated to lead to the discovery of admissible evidence.   Subject to these objections, Evolve will produce Plaintiff's personnel file following entry of an appropriate protective order.

**REQUEST NO. 5:**   For each former employee identified in response to Request No. 10, please produce all documents evidencing the termination and/or resignation, any severance

agreement, any confidentiality agreement (if separate from the severance agreement), and the personnel file of said employee.

**RESPONSE:** Evolve objects to this Request because it is overbroad, unduly burdensome, and neither relevant to a claim or defense in this case, nor reasonably calculated to lead to the discovery of admissible evidence.

**REQUEST NO. 6:** Produce profit and loss statements for each branch office for all quarters during which each branch office was open from January 1, 2008 to the present.

**RESPONSE:** Evolve objects to this Request because it is overbroad, unduly burdensome, and appears to seek information regarding Evolve's profit and loss statements, which is neither relevant to a claim or defense in this case, nor reasonably calculated to lead to the discovery of admissible evidence.

**REQUEST NO. 7:** For each loan originator working out of the Memphis, Tennessee office, produce the employee's report of all loans originated in said employee's name.

**RESPONSE:** Evolve objects to this Request because it is temporally overbroad, appears to seek inadmissible, irrelevant information regarding all Evolve loan originators, and is not reasonably calculated to lead to the discovery of admissible evidence. Should Plaintiff wish to narrow this request, undersigned counsel will consult with counsel for the Plaintiff concerning an appropriate scope for this request.

**REQUEST NO. 8:** Produce a copy of all stock options of any kind given to any officer, director or employee at any time from 2004 to the present, and produce copies of executed and/or signed "plans" for each person holding or entitled to options.

**RESPONSE:** Evolve objects to this Request because it is temporally overbroad and neither relevant to a claim or defense in this case in its request for information regarding all

Evolve loan originators and loans originated, nor reasonably calculated to lead to the discovery of admissible evidence. Should Plaintiff wish to narrow this request, undersigned counsel will consult with counsel for the Plaintiff concerning an appropriate scope for this request.

**REQUEST NO. 9:** Produce all production reports for all loan officers (wherever located) from January 1, 2008 to the present.

**RESPONSE:** Evolve objects to this Request because it is geographically overbroad, appears to seek inadmissible, irrelevant information regarding all Evolve loan originators, and is not reasonably calculated to lead to the discovery of admissible evidence. Should Plaintiff wish to narrow this request, undersigned counsel will consult with counsel for the Plaintiff concerning an appropriate scope for this request.

**REQUEST NO. 10:** Produce all documents evidencing any and all personal loans or advances made to officers, directors, or employees from January 1, 2008 to the present.

**RESPONSE:** Evolve objects to this Request because it is overbroad, appears to seek inadmissible, irrelevant information regarding all loans to all officers, directors, or employees of Evolve, and is not reasonably calculated to lead to the discovery of admissible evidence. Additionally, the Tennessee Financial Privacy Act prohibits disclosure of such confidential information. See Tenn. Code Ann. §§ 45-10-101, *et. seq.* Should Plaintiff wish to narrow this request, undersigned counsel will consult with counsel for the Plaintiff concerning an appropriate scope for this request.

**REQUEST NO. 11:** For each person listed in your response to Request No. 10, produce the licenses held, and for what period; copies of any investigations or complaints from any regulatory government office concerning said person, and if any action has been taken to prohibit

said person from engaging in sales or marketing by any regulatory government office, produce all documents concerning said actions.

**RESPONSE:** Evolve objects to this Request because it is overbroad, appears to seek inadmissible, irrelevant information regarding all investigations and regulatory involvement, and is not reasonably calculated to lead to the discovery of admissible evidence. Subject to the foregoing objections, Evolve is not aware of any such regulatory investigations or complaints, and Evolve is not aware of any such prohibitions for regulatory issues.

**REQUEST NO. 12:** Produce any documents, letters, emails, memos and other documentary evidence concerning Jayme Boyle from January 1, 2008 to the present.

**RESPONSE:** Evolve objects to this Request because it is overbroad and neither relevant to a claim or defense in this case in its request for "any documents, letters, emails, memos and another documentary evidence," nor reasonably calculated to lead to the discovery of admissible evidence.  Should Plaintiff wish to narrow this request, undersigned counsel will consult with counsel for the Plaintiff concerning an appropriate scope for this request.

**REQUEST NO. 13:** Produce the loan packages for all loans produced by or credited to Tommy Taylor, and/or Rebekah Proctor, from January 1, 2008 to the present, and worked on by Debbie Winfield or her successor.

**RESPONSE:** Evolve objects to this Request as overbroad because it appears to seek inadmissible, irrelevant information regarding Evolve employees beyond the scope of the allegations in Plaintiff's Amended Complaint, and is not reasonably calculated to lead to the discovery of admissible evidence.  Should Plaintiff wish to narrow this request, undersigned counsel will consult with counsel for the Plaintiff concerning an appropriate scope for this request.

**REQUEST NO. 14:** Produce email records from January 1, 2008 to the present, in which Jayme Boyle is mentioned or referenced, or which pertain to compensation for loan officers, or which pertain to any mortgage loans, from or to the following persons: Tommy Taylor, Candy Deborg, Rebekah Proctor, Chad Irwin, Brent Bousson, Shirley Allen, Debbie Winfield.

**RESPONSE:** Evolve objects to this Request as overbroad and neither relevant to a claim or defense in this case nor reasonably calculated to lead to the discovery of admissible evidence. Should Plaintiff wish to narrow this request, undersigned counsel will consult with counsel for the Plaintiff concerning an appropriate scope for this request.

**REQUEST NO. 15:** Produce all cell telephone records (including billing statements and records of calls) for the persons identified in Request for Production No. 14 above during the period January 1, 2008 to the present, and identify for each employee or officer the cellular company, and the cell telephone number or numbers.

**RESPONSE:** Evolve objects to this Request because it is neither relevant to a claim or defense in this case nor reasonably calculated to lead to the discovery of admissible evidence.

Respectfully submitted,

_____

Robert L. Crawford (#7216)
Odell Horton, Jr. (#12426)
Kathryn K. Van Namen (#31322)
Wyatt Tarrant & Combs, LLP
1715 Aaron Brenner Drive, Suite 800
Memphis, Tennessee  38120-4367
(901) 537-1000 telephone
(901) 537-1010 facsimile
lcrawford@wyattfirm.com
ohorton@wyattfirm.com
kvannamen@wyattfirm.com

*Counsel for Evolve Bank & Trust and
Evolve Financial Group, Inc.*

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing has been served upon the

following, via U.S. Mail, postage prepaid, on this the 7th day of January, 2015:

Kathleen L. Caldwell
KATHLEEN CALDWELL, PLLC
2670 Union Avenue Ext., Suite 110
Memphis, TN  38112

_____
Kathryn K. Van Namen

61257552.1

10